# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CHERYL PHIPPS, BOBBI MILLNER, )
AND SHAWN GIBBONS, on behalf of )
themselves and all others similarly situated, )
 )
   *Plaintiffs*, )
 )
v. )   Civil No. 3:12-01009
 )   Judge Trauger
WAL-MART STORES, INC., )
 )
 )
   *Defendant*. )
 )

## DEFENDANT WAL-MART STORES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS IN PART PLAINTIFFS' COMPLAINT OR IN THE ALTERNATIVE TO STRIKE CLASS CLAIMS

# TABLE OF CONTENTS

                                                                                  Page

INTRODUCTION ................................................................................... 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT ......................................................................................... 3

    I.    Plaintiffs' Class Allegations Are Untimely. ................................ 3

    II.   The Class Allegations Also Fail To Cure The Problems Identified By The Supreme Court In The *Dukes* Case .......................................... 6

        A.    This Court has the authority to dismiss or strike class allegations at the pleading stage. ........................................ 8

        B.    Plaintiffs' class allegations do not satisfy Rule 23(a). ...................... 9

        C.    42 U.S.C. § 2000e-2(k)(1)(B)(i) does not excuse commonality. ................... 14

    III.  The Claims Of Those Who Have Not Satisfied Title VII's EEOC Charge Requirement Should Be Dismissed. ....................................... 15

        A.    "Coattailing" is inappropriate in a subsequent class action. .......... 15

        B.    Even if "coattailing" were appropriate, many putative class members have no charge on which they may rely. ....................... 16

    IV.  The Proposed Class Violates Title VII's Particularized Venue Requirements. ....................................................................... 17

CONCLUSION ...................................................................................... 18

Case 3:12-cv-01009   Document 20   Filed 10/25/12   Page 2 of 21 PageID #: 109

# INTRODUCTION

Each of the named plaintiffs in this case was a member of the putative class in *Dukes v. Wal-Mart Stores, Inc.*, in which the plaintiffs asserted the same sex-discrimination claims advanced here and sought certification of a nationwide class of current and former Wal-Mart employees. The Supreme Court ultimately held that the proposed class was premised on a fundamentally flawed theory and could not be certified for lack of Rule 23(a)(2) commonality. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). The complaint filed in the present case is one of several follow-on putative class actions by former members of the *Dukes* class. *See* Declaration of Catherine Conway in Support of Wal-Mart Stores, Inc.'s Request for Judicial Notice [hereinafter "Conway Decl."], Ex. 1, Complaint, *Odle v. Wal-Mart Stores, Inc.*, No. 3:11-cv-2954-O (N.D. Tex. Oct. 28, 2011); Conway Decl., Ex. 2, Complaint, *Love v. Wal-Mart, Inc.*, No. 0:12-cv-61959-RNS (S.D. Fl. filed Oct. 4, 2012). The class claims should be dismissed with prejudice.

The class claims brought by the named plaintiffs are time-barred. Every federal circuit to address the issue, including the Sixth Circuit, has held that where (as here) a class is decertified due to structural deficiencies plaintiffs may not revive stale class claims by invoking the tolling provided to individual claims under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553 (1974). Otherwise, class counsel could extend the statute of limitations perpetually, a result no federal appellate court has permitted. For this reason, the class claims presented here "are barred by the statute of limitations, and should be dismissed." Conway Decl., Ex. 3, *Odle v. Wal-Mart Stores, Inc.*, No. 3:11-cv-02954-O, slip op. at 12 (N.D. Tex. Oct. 15, 2012).

Even if the class claims were not untimely, the class proposed by Ms. Phipps and the other named plaintiffs would fail for the same reasons that the class was decertified in *Dukes*. As

1

in *Dukes*, the plaintiffs here fail to allege any discrete, actionable employment practice that affected all members of the still-sprawling proposed class in a common fashion. This Court should also dismiss or strike the class claims on this ground.

Finally, the named plaintiffs have failed to comply with Title VII's charge-filing and special venue provisions, and the class claims should be dismissed on that basis.

## STATEMENT OF FACTS

The *Dukes* plaintiffs filed their first class action complaint on June 8, 2001, asserting that Wal-Mart Stores, Inc. had discriminated against female employees in pay and promotion decisions nationwide since December 1998. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 577 & n.2 (9th Cir. 2010) (en banc). The district court and the Ninth Circuit Court of Appeals approved certification of a class comprising some 1.5 million current and former Wal-Mart employees. *Dukes*, 131 S. Ct. at 2546. The Supreme Court reversed, holding that the class could not proceed under Rule 23 because plaintiffs had failed to "establish the existence of any common question." *Id.* at 2556–57.

The only difference between *Dukes* and the present suit is that plaintiffs now propose a narrower geographic class. Plaintiffs seek to certify a "regional" class comprising parts of Alabama, Arkansas, Georgia, Mississippi and Tennessee. Compl. ¶ 5. Importantly, however, this proposed class continues to span 74 stores across 12 districts involving hundreds of decisionmakers, not to mention five states. *Id*. ¶ 31. In total, the expansive proposed class, given the 14-year period covered by the complaint, would include tens of thousands of women.

2

**I.  Plaintiffs' Class Allegations Are Untimely.**

The class claims asserted in the complaint are barred by the statute of limitations.  While under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the pendency of the *Dukes* class action might have tolled the statute of limitations for the claims of the individual named plaintiffs, the Sixth Circuit has held that "the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class." *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988).  *Andrews* is, of course, binding on this Court and mandates dismissal of the class claims here.  *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 97 (M.D. Tenn. 2004) ("In *Andrews*, the Sixth Circuit endorsed the view of other circuits that, once class certification has been denied, although putative class members may file individual suits or intervene as plaintiffs in the pending litigation, they may not take advantage of the *American Pipe* tolling rule to file *additional* class suits.") (emphasis in original), *vacated on other grounds*, 296 F.3d 443 (6th Cir. 2002); *see also Brabant v. Saginaw Cnty.*, No. 05-10030, 2007 WL 2080422 at *3 (E.D. Mich. July 19, 2007);[1] *Abner v. Cnty. of Saginaw*, 496 F. Supp. 2d 810, 822 (E.D. Mich. 2007).

In *Odle v. Wal-Mart Stores, Inc.*, another *Dukes* follow-on action, the Northern District of Texas recently dismissed the substantively identical class claims filed by former *Dukes* named plaintiff Stephanie Odle and others for that very reason.  In granting Wal-Mart's motion to dismiss, the court in *Odle* held that follow-on class claims advanced by members of the *Dukes* class "do not benefit from *American Pipe* tolling, are barred by the statute of limitations and

---

[1]  Pursuant to Local Rule 7.01(e)(5), all decisions cited in this brief not reported in one of the publications of the West Publishing Company are filed contemporaneously in Appendix 1 to this brief.

should be dismissed."  Conway Decl., Ex. 3, *Odle*, slip op. at 16.  The *Odle* court rejected the

argument—likely to be repeated here—that the rule against seriatim tolling of class claims had

been undermined by recent Supreme Court decisions on other subjects, reasoning that it

remained bound by Fifth Circuit precedent.  *Id.* at 12.  While plaintiffs' argument regarding the

effect of recent Supreme Court decisions is misplaced for various reasons, this Court, likewise,

remains bound by Sixth Circuit precedent.  *See Rodriguez de Quijas v. Shearson/Am. Express*,

490 U.S. 477, 484 (1989).

In *American Pipe*, the Supreme Court held that "the commencement of the original class

suit tolls the running of the statute for all purported members of the class who make timely

motions to intervene after the court has found the suit inappropriate for class action status."  414

U.S. at 533; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) (extending tolling

to former class members who, instead of intervening, filed their own individual claims in another

forum).  However, every court of appeals to consider the issue, including the Sixth Circuit, has

held that this tolling does not extend to subsequently filed class allegations after the denial (or

reversal) of class certification for failure to meet the requirements of Rule 23(a) and (b).

*Andrews*, 851 F.2d at 149 (noting that the "courts of appeals that have dealt with this issue

appear to be in unanimous agreement" (collecting cases)).[2]  The *American Pipe* doctrine is,

---

[2]  *See, e.g.*, *Angles v. Dollar Tree Stores, Inc.*, No. 10-1723, 2012 WL 4017391, at *4 n.10 (4th
Cir. Sept. 13, 2012) ("Courts have consistently concluded that *American Pipe/Crown, Cork
& Seal* do not permit class actions to toll the statute of limitations for additional classes to be
stacked upon them"); *Yang v. Odom*, 392 F.3d 97, 104 (3d Cir. 2004) ("American Pipe
tolling will not apply to sequential class actions where the earlier denial of certification was
based on a Rule 23 defect in the class itself"); *Basch v. Ground Round, Inc.*, 139 F.3d 6, 11
(1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to
toll the statute of limitations indefinitely"); *Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir.
1994); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) ("The Supreme Court in *American
Pipe* and *Crown, Cork* certainly did not intend to afford plaintiffs the opportunity to argue
and reargue the question of class certification by filing new but repetitive complaints");

4

therefore, a judicially created rule balancing the competing interests of repose advanced by statutes of limitation and interests of efficiency advanced by Rule 23. *See American Pipe*, 414 U.S. at 555. The courts have uniformly struck the balance at the point of permitting tolling of individual, but not class claims.

This consensus "reflect[s] the concern expressed by Justice Powell, concurring separately in *Crown, Cork & Seal*: 'The tolling rule of *American Pipe* . . . is a generous one, inviting abuse.'" *Andrews*, 851 F.2d at 149 (internal citations omitted). Heeding Justice Powell's warning, courts of appeals have been careful not to stretch the bounds "of the *American Pipe* doctrine . . . beyond its carefully crafted parameters into the range of abusive options." *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987); *see also, e.g.*, *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985) (tolling for subsequent class actions presents "dangers" of abuse); *Yang v. Odom*, 392 F.3d 97, 113 (3d Cir. 2004) (Alito, J., concurring and dissenting) (absent the "restriction on tolling [for subsequent class claims], lawyers seeking to represent a plaintiff class could extend the statute of limitations almost indefinitely"). For this reason, courts of appeals, including the Sixth Circuit, have declined to allow tolling in subsequent class actions where, as here, the prior class was denied certification based on its failure to meet the requirements of Rule 23. *Andrews*, 851 F.2d at 149.

This rule, which prohibits the stacking of class actions, is not just good policy and settled Circuit law, but also required by the Rules Enabling Act, which provides that Rule 23 may not be used to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. Because tolling of subsequent class claims is inconsistent "*both* with the procedures of Rule 23 and with the proper

---

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985) ("putative class members may [not] piggyback one class action onto another and thus toll the statute of limitations indefinitely").

function of the limitations statute," it is prohibited by the Rules Enabling Act. *American Pipe*, 414 U.S. at 555 (emphasis added); *see also id.* at 557–58 ("tolling the limitation in a given context" must be "consonant with the legislative scheme").

Permitting plaintiffs to stack one class action onto another, thereby tolling the limitations period indefinitely, eviscerates important statutory goals under Title VII. *See, e.g.*, *Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980) (Title VII's limitation provisions "protect employers from the burden of defending claims arising from employment decisions that are long past"). This is particularly true where, as here, the court has found that the initially proposed class failed to satisfy the requirements of Rule 23 due to a lack of commonality between the putative plaintiffs. *Compare American Pipe*, 414 U.S. at 555 n.25 (finding that the problem of unfair surprise is "minimized when, as here, the District Court has already found that the named plaintiffs' claims typify those of the class"), *with Dukes*, 131 S. Ct. at 2557 (holding that the putative *Dukes* class members had "little in common but their sex and this lawsuit") (internal quotation marks omitted). Tolling cannot be used to revive plaintiffs' stale class claims here; they should be dismissed.

## II.   The Class Allegations Also Fail To Cure The Problems Identified By The Supreme Court In The *Dukes* Case.

Plaintiffs' class allegations should also be dismissed or stricken for failure to state a plausible claim for classwide relief under the Supreme Court's decision in *Dukes*.

The complaint here, filed by three former members of the *Dukes* class, brings substantively similar class claims to those rejected by the Supreme Court. The *Dukes* plaintiffs alleged that Wal-Mart engaged in unlawful discrimination by delegating decisionmaking authority to managers and allowing those managers to rely upon "unweighted, arbitrary and subjective criteria," including "gender stereotypes," when "making employment decisions such

as assignments, promotions, pay and training." Conway Decl., Ex. 4, *Dukes* Third Am. Compl. ¶ 29. Specifically, the *Dukes* plaintiffs, represented by the same counsel as plaintiffs here, alleged: (1) that the challenged pay and promotion decisions at Wal-Mart are made in the first instance by Store Managers who have "substantial discretion" in making hourly pay decisions, (2) that any pay increase above a certain percentage is "automatically reported to higher management and requires special approval," (3) that "pay rates are set . . . primarily by District Managers . . . and their superiors, the . . . Regional Managers," and (4) that "[r]egional and district managers . . . make *all* promotion decisions for *all* store management positions." Conway Decl., Ex. 5, Brief of Resp'ts at 18, *Dukes*, 131 S. Ct. 2541 (No. 10-277), 2011 WL 686407 at *17–18 [hereinafter "Br. of Resp'ts"]. The *Dukes* plaintiffs did not allege, however, that these decisions were made pursuant to an explicit policy of sex discrimination—nor could they have, since "Wal-Mart's announced policy forbids sex discrimination . . . [and] imposes penalties for denials of equal employment opportunity." *Dukes*, 131 S. Ct. at 2553. Instead, "[t]he basic theory of [the *Dukes* plaintiffs'] case [was] that a strong and uniform 'corporate culture' permit[ted] bias against women to infect . . . the discretionary decisionmaking of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory practice." *Dukes*, 131 S. Ct. at 2548.

The complaint here is substantively identical. *See* Conway Decl., Ex. 6., chart comparing the allegations made in the plaintiffs' complaint in this case with those made in respondents' brief in the Supreme Court case *Wal-Mart Stores, Inc. v. Dukes.*, No. 10-277 (U.S.). Plaintiffs allege that female employees were denied equal pay and promotion opportunities through the delegation of discretionary authority to lower-level management. Compl. ¶¶ 39–41, 43, 45–48, 51–55, 70–71, 151, 153. Again, as in 2001, they allege: (1) that the "Store Manager has the

initial responsibility to set pay rates for individual hourly employees" with oversight from the District Manager and Regional Vice President (*id.* ¶ 39), (2) that all pay increases above a certain percentage are "automatically reported to the District Manager who may approve or disapprove such exceptions" (*id*. ¶ 41), (3) that "minimum pay levels" are set by the District Manager and Regional Vice President (*id*. ¶ 38), and (4) that the Regional Vice President and District Manager also make or approve compensation decisions regarding pay and promotion (*id*. ¶¶ 30, 32).

As in *Dukes*, plaintiffs here do not allege that Wal-Mart had an explicit policy of sex discrimination. Instead, they again allege that "[i]n the absence of job-related compensation and promotion criteria, Wal-Mart's managers rely on discriminatory stereotypes and biased views about women in making pay and promotion decisions within each Region." *Id.* These are the selfsame theories advanced by the same attorneys in *Dukes* and rejected by the Supreme Court in that case. *Compare id*. ¶¶ 47, 50 with Br. of Resp'ts at 1.

## A.     This Court has the authority to dismiss or strike class allegations at the pleading stage.

Rule 23 provides that a court shall rule on class certification "[a]t an early practicable time after a person sues or is sued as a class representative," Fed. R. Civ. P. 23(c)(1)(A). The Supreme Court has recognized that class claims may be resolved at the pleading stage where it is "plain enough from the pleadings" that the class cannot be certified. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Courts may also consider motions to dismiss or strike class allegations under the authority of Rules 12(f) and 23(d)(1)(D). *See Rehberger v. Honeywell Int'l, Inc.*, No. 3:11-0085, 2011 WL 780681, at *8 (M.D. Tenn. Feb. 28, 2011).

Under Rule 12(b)(6), district courts must assess the sufficiency of a plaintiff's allegations before opening the doors to costly discovery. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 558 (2007). As numerous courts have recognized, a district court has no less a duty to examine the

sufficiency of plaintiff's pleadings where the plaintiff seeks the keys to costly class discovery. *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Schilling v. Kenton Cnty.*, No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011) (granting motion to dismiss class allegations); *Rehberger*, 2011 WL 780681. To survive a motion to dismiss either individual or class allegations, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## B. Plaintiffs' class allegations do not satisfy Rule 23(a).

Commonality requires more than allegations that plaintiffs "have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. "[T]he mere claim by employees of the same company that they have suffered a Title VII injury . . . gives no cause to believe that all their claims can productively be litigated at once." *Id.* Rather, plaintiffs must allege facts that plausibly suggest class members "have suffered the same injury" and that class treatment is likely to "generate common answers apt to drive the resolution of the litigation." *Id.* (internal citation omitted); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).[3]

The Supreme Court in *Dukes* identified two ways in which a plaintiff might "bridge[]" the conceptual "gap" between an individual employee's discrimination claims and the existence of a common employment practice that unites all absent class members and satisfies Rule 23(a)(2). First, a plaintiff may establish the requisite commonality by representing a class that has been subject to the same biased "testing procedure or other companywide evaluation method." *Dukes*, 131 S. Ct. at 2553. As in *Dukes*, this method of showing commonality "has no

---

[3] Plaintiffs would also be unable to establish other Rule 23 requirements, but this argument focuses on commonality, which the Supreme Court directly ruled upon in *Dukes* and which is therefore appropriate for resolution on a motion to dismiss or strike. Wal-Mart reserves the right to address other Rule 23 prerequisites if the need arises.

9

application here; Wal-Mart has no testing procedure or other companywide evaluation method that can be charged with bias." *Id.* Second, a plaintiff may introduce "'significant proof' that Wal-Mart 'operated under a general policy of discrimination.'" *Id.* Even if all of plaintiffs' allegations in their complaint are taken as true, they still fall well short of satisfying this standard.

The class claims here fail for a "fundamental" reason. 131 S. Ct. at 2555. "Other than the bare existence of delegated discretion, [plaintiffs] have identified no 'specific employment practice'—much less one that ties all of their [class claims] together." *Id.* at 2555–56. At best, plaintiffs' complaint establishes that Wal-Mart had a "'policy of *allowing discretion* by local supervisors over employment matters," but the *Dukes* plaintiffs also "convincingly established" the existence of this policy. *Id.* at 2554. The Supreme Court held, however, that a policy of delegated decisionmaking cannot support a finding of commonality under Rule 23: This policy is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action," as well as "a very common and presumptively reasonable way of doing business." *Id.*

As the Supreme Court explained, the existence of subjective decisionmaking "does not lead to the conclusion that every employee in a company using a system of discretion has . . . a claim in common. To the contrary, left to their own devices most managers in any corporation— and surely most managers in a corporation that forbids sex discrimination—would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionably disparity at all." *Id.* While "[o]thers may choose to reward various attributes that produce disparate impact . . . [a]nd still other managers may be guilty of intentional discrimination." *Id.* Thus, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate

the invalidity of another's." *Id.* For this reason, numerous courts have held that plaintiffs cannot satisfy the commonality requirement under Rule 23(a) when they challenge a system of delegated decisionmaking across multiple managers or locations. *See Tartt v. Wilson Cnty.*, No. 3:09-01179, 2012 U.S. Dist. LEXIS 7764 at *23–24 (M.D. Tenn. Jan. 24, 2012) (citing *Dukes* and finding no uniform employment practice where government departments have "substantial autonomy" and "are responsible for making hiring, firing and placement decisions within their department"); *Scott, v. Family Dollar Stores Inc.*, No. 3:08-cv-540, 2012 WL 113657, at *5 (W.D.N.C. Jan. 13, 2012) (dismissing class claims prior to discovery because "*Dukes* simply foreclosed" commonality where "defendant's pay decision and/or system includes subjectivity and gender stereotyping that causes disparate impact to compensation paid to female store managers").[4]

Even if a system of delegated decisionmaking could support class certification under certain circumstances, such circumstances are not present at Wal-Mart, as the Supreme Court has already held. The Supreme Court concluded that it was "quite unbelievable that all managers would exercise their discretion in a common way without some common direction." *Dukes*, 131 S. Ct. at 2555. Like in *Dukes*, plaintiffs here "attempt to make that showing by means of statistical and anecdotal evidence, but their evidence falls well short." *Id.*

Nothing alleged in plaintiffs' complaint here could be the basis for a different result. Plaintiffs' alleged statistics, "[e]ven if . . . taken at face value, . . . are insufficient to establish that

---

[4] *See also Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 896 (7th Cir. 2012) (reversing class certification of a race discrimination class of construction workers who worked at 262 different construction sites under different supervisors, policies, and working conditions); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 823 (7th Cir. 2011) (affirming denial of certification of a putative pay and promotion class at a *single* plant where the 500 putative plaintiffs "do different jobs involving different skills and experience," and the challenged job category "covers a multitude of positions differing in authority . . . and responsibility").

[plaintiffs'] theory can be proved on a classwide basis." *Id.* at 2555. Plaintiffs allege, for example, that "Wal-Mart has a significantly lower percentage of female managers in Region 43 compared to its largest competitors" (Compl. ¶ 58), and that there are gender pay differences in "each of the Districts within Region 43" (*id.* ¶ 48). On its face, however, this statistical evidence "cannot by itself establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends." *Dukes*, 131 S. Ct. at 2555. As the Supreme Court held, "[m]erely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice." *Id.* at 2556.

The anecdotal evidence in plaintiffs' complaint is similarly "too weak to raise any inference that all the individual, discretionary personal decisions [within each region] are discriminatory." *Id.* First, plaintiffs assert that the Regional Vice President for Region 43 is "charged with *ultimate responsibility* to ensure that personnel decisions in his Region are made in a consistent and lawful manner and has the authority to direct changes to personnel decisions." Compl. ¶ 32 (emphasis added). Yet, in alleging anecdotal incidents of discrimination, the plaintiffs do not allege a single discriminatory act or decision by a Regional Vice President or, for that matter, any act or decision made at the regional level. *See* Compl. ¶¶ 76–94, 99–144. They similarly allege that District Managers "have made or approved compensation and promotion decisions for the stores." In fact, however, excluding the named plaintiffs, only one of the anecdotal allegations in the complaint relates to a decision made by a District Manager— or any employee above the level of store manager for that matter. *Id.* ¶ 92 (alleging that a District Manager told store employees that female employees were not allowed to handcuff shoplifting suspects).

12

Instead, the complaint relies heavily on a relative handful of anecdotes of allegedly biased decisionmaking at the hands of various Store, Department, and Assistant Managers. *See* Compl. ¶¶ 71–94, 99–144. These allegations are not enough. "Even if every single one of these accounts is true, that would not demonstrate [by significant proof] that the entire [Region] 'operate[d] under a general policy of discrimination,' . . . which is what [plaintiffs] must show to certify [region-wide] class[es]." *Dukes*, 131 S. Ct. at 2556 (quoting *Falcon*, 457 U.S. at 159 n.15). Indeed, these allegations only highlight that plaintiffs continue to challenge the individual decisions made by hundreds of different managers. *See* Compl. ¶¶ 39, 41, 45, 46, 53, 54. As if to avoid any doubt that decisions about pay in particular are left to the sole discretion of individual managers, the complaint alleges that "[t]he Regional Vice President and District Managers *do not hold the [store] managers in Region 43 accountable* for the factors the managers use in making pay decisions" *Id*. ¶ 47 (emphasis added). "Without some glue holding the alleged *reasons* for all [the challenged] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I* disfavored." *Dukes*, 131 S. Ct. at 2552. Plaintiffs here wholly fail to allege any such glue.

While the plaintiffs may have reduced the number of class members to a (still expansive) "thousands" of women spanning five states (Compl. ¶¶ 5, 17), they continue to rely on a flawed theory of commonality rejected by the Supreme Court. "Because [plaintiffs] provided no convincing [allegations] of a [region-wide] discriminatory pay and promotion policy," they have failed to establish the "existence of any common question," and their class claims must be dismissed. *Dukes*, 131 S. Ct. at 2556–57.

**C.     42 U.S.C. § 2000e-2(k)(1)(B)(i) does not excuse commonality.**

In an apparent (albeit implicit) acknowledgment that they have failed to identify "the specific employment practice that is challenged," 131 S. Ct. at 2555, plaintiffs attempt to invoke 42 U.S.C. § 2000e-2(k)(1)(B)(i), under which "the elements of a respondent's decisionmaking process [that] are not capable of separation for analysis . . . may be analyzed as one employment practice." *See* Compl. ¶¶ 50, 70, 152. Plaintiffs' reliance on 42 U.S.C. § 2000e-2(k)(1)(B)(i) for this purpose is misplaced. While the provision offers an alternative method of establishing a prima facie case of disparate-impact discrimination, it does not relieve plaintiffs of their duty to plead adequate facts showing that their claims are appropriate for class treatment. *Dukes*, 131 S. Ct. at 2554. "Title VII contains no special provision relieving the plaintiffs of the burden of satisfying Rule 23 prerequisites." *O'Neal v. Wackenhut Servs., Inc.*, No. 3:03-cv-397, 2006 WL 1469348 at *18 (E.D. Tenn. May 25, 2006) (*quoting Falcon*, 457 U.S. at 157); *Garcia v. Johanns*, 444 F.3d 625, 634 n.10 (D.C. Cir. 2006) ("[T]he 'one employment practice' notion . . . does not alter the required commonality showing under Federal Rule of Civil Procedure 23(a)(2)."); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572 (6th Cir. 2004).

Moreover, section 2000e-2(k) is inapplicable in this case. This provision only applies where plaintiffs challenge a standard or test consisting of two or more interconnected components. *See* 137 Cong. Rec. S15,276 (daily ed. Oct. 25, 1991) (Title VII's official "Interpretive Memorandum") (explaining that "[w]hen a decision-making process includes particular, functionally-integrated practices which are components of the same criterion, standard, method of administration, or test, such as the height and weight requirements designed to measure [the] strength [of an applicant] in *Dothard v. Rawlinson*, 433 U.S. 321 (1977)," this

14

provision allows "the particular, functionally-integrated practices [to] be analyzed as one employment practice"). Plaintiffs make no such claim here. *Dukes*, 131 S. Ct. at 2553.

## III. The Claims Of Those Who Have Not Satisfied Title VII's EEOC Charge Requirement Should Be Dismissed.

### A. "Coattailing" is inappropriate in a subsequent class action.

Even if they could overcome their other substantial challenges, plaintiffs' allegations on behalf of those who have not met Title VII's charge-filing requirements must be dismissed. Title VII claimants must first file an EEOC "charge" before filing a complaint in federal court. 42 U.S.C. § 2000e-5(e)(1), (f)(1). Failure to exhaust this administrative procedure precludes a lawsuit. *See Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984) ("It is, of course, firmly established that a Title VII plaintiff must, as a prerequisite to suit, (1) file a timely charge of employment discrimination with the EEOC, and (2) receive and act upon the Commission's statutory notice of the right to sue.").

As a preliminary matter, coattailing is wholly inappropriate in a subsequent class action where class certification has already been denied in a previous class due to a lack of commonality. *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3d Cir. 2007). Any rationale for applying coattailing evaporates after decertification, particularly for lack of commonality, because "dissimilarity frustrates the EEOC's goals of notice and conciliation." *Id.* at 389.[5]

Moreover, the Sixth Circuit has held that in order to "piggy back" on a timely EEOC charge, the challenged claims must all be "substantially related" and arise "out of discriminatory treatment occurring in the same time frame." *Scarborough v. Brown Grp., Inc.*, 972 F. Supp. 1112, 1117 (W.D. Tenn. 1997) (citing *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 840

---

[5] The Supreme Court has never decided whether the coattailing doctrine is consistent with the statutory text and purposes of Title VII (*see Lewis v. City of Chicago*, 130 S. Ct. 2191, 2197 n.4 (2010)), and Wal-Mart reserves the right to argue at the appropriate stage that it violates Title VII and the Rules Enabling Act.

15

(6th Cir. 1994)).  This is not the case here.  Plaintiffs allege discriminatory treatment by hundreds of managers in five states over 14 years.  Claims by Wal-Mart employees performing different jobs, in different stores, for different supervisors spanning more than a decade can hardly be considered "substantially related."  As the Supreme Court pointedly explained, the putative members in the *Dukes* class had nothing in common but "their sex and [the *Dukes*] lawsuit."  131 S. Ct. at 2557 (internal quotation marks omitted).

**B.**    **Even if "coattailing" were appropriate, many putative class members have no charge on which they may rely.**

Even if the putative class may coattail on the EEOC complaints of the named plaintiffs in this case, the EEOC complaints filed by the three named plaintiffs cannot cover the alleged class period commencing on December 26, 1998.  Compl. ¶ 6.  Each of the named plaintiffs was a member of the national class in *Dukes* and none filed an EEOC charge until after the Supreme Court reversed the certification order.  *See* Compl. Exs. 1–8.  To the extent that the statute of limitations for the putative class members was tolled for individual claims, that tolling began as of the commencement of the *Dukes* class action, not the earliest EEOC claim filed by a member of the *Dukes* class.  *American Pipe*, 414 U.S. at 533.  Therefore, the claims of the named plaintiffs are only timely with respect to the time period beginning August 12, 2000—300 days prior to the date the first *Dukes* class complaint was filed.

The plaintiffs suggest that they may coattail on the earliest EEOC claim filed by a member of the *Dukes* class—an October 22, 1999 complaint filed by Stephanie Odle.  Compl. ¶ 6.  But Ms. Odle has no timely EEOC claim on which to coattail.  The statute of limitations for her claim expired after she was ejected from the *Dukes* class in 2010 and took no action to pursue her rights.  Conway Decl., Ex. 3, *Odle*, slip op. at 18 ("Odle was required to file a new lawsuit in order to protect her claims, and her failure to do so within the statute of limitations

16

now bars her claims."). Since Ms. Odle was time-barred from filing suit in her own right, others cannot coattail on her now expired charge. *See Wilson Metal Casket Co.*, 24 F.3d at 840 ("single filing rule" applies to a "timely" claim).[6]

## IV.     The Proposed Class Violates Title VII's Particularized Venue Requirements.

Even if a class could be maintained, it should consist only of those individuals who meet Title VII's venue requirements.  Title VII plaintiffs may pursue their claims only in certain districts.  42 U.S.C. § 2000e-5(f)(3); *Downing v. Foley & Lardner LLP*, No. 09-14351, 2010 WL 1494767 at *3 (E.D. Mich. Apr. 9, 2010); *Whipstock v. Raytheon Co.*, No. 07-11137, 2007 WL 2318745 (E.D. Mich. Aug. 10, 2007).  Under this provision, venue is proper in Tennessee only if the alleged unlawful employment practice was committed in the State, "the employment records relevant to such practices are maintained or administered" in Tennessee, or the putative class members would have worked in Tennessee "but for the alleged unlawful practice."  § 2000e-5(f)(3).  Nevertheless, the complaint's proposed class appears to be designed to include many individuals who have no connection to this judicial district or to Tennessee.  Compl. ¶ 5 (proposed class includes "portions of Alabama, Arkansas, Georgia and Mississippi").  Claimants outside of Tennessee could not bring their own claims in this judicial district under Title VII's special venue requirements, and they should not be included in the present case merely because it is styled as a class action.  *See Sperberg v. Firestone Tire & Rubber Co.*, 61 F.R.D. 70, 73–77 (D. Ohio 1973) (refusing to allow absent class members to avoid a federal statute's special venue provision, noting it was the legislature's province—not the court's—to "enlarge" venue

---

[6]  Plaintiffs do not identify Ms. Odle by name, but instead reference the "earliest EEOC charge filed by a former national class member."  Wal-Mart believes this to be Stephanie Odle.  *See* Conway Decl., Ex. 4, *Dukes* Third Am. Compl. ¶ 97 (alleging that Ms. Odle's EEOC complaint was filed on or about October 22, 1999, or 300 days after December 26, 1998).

provisions). Accordingly, claims of non-Tennessee putative class members should not be included in any class that otherwise survives this motion.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed or stricken to the extent it seeks to have this Court resolve claims of persons other than the named plaintiffs.


Dated: October 25, 2012        Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**


By: _/s/Theodore J. Boutrous, Jr._

Theodore J. Boutrous, Jr.
Catherine Conway
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
tboutrous@gibsondunn.com
cconway@gibsondunn.com

Aubrey B. Harwell, Jr. (BPR #2559)
Gerald D. Neenan (BPR #6710)
NEAL & HARWELL, PLC
150 4th Avenue North, Suite 2000
Nashville, TN 37219-2498
Telephone: 615.244.1713
Facsimile: 615.726.0573
aharwell@nealharwell.com
gneenan@nealharwell.com

_Attorneys for Defendant Wal-Mart Stores, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 25th day of October, 2012, the foregoing was filed

electronically with the Clerk of the Court and served via ECF on the following:

Scott P. Tift
George E. Barrett
David. W. Garrison
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
*Attorneys for Plaintiffs*

Joseph Sellers
Christine Webber
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave NW, Suite 500 West
Washington, DC 20005
*Attorneys for Plaintiffs*

Brad Seligman
IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
*Attorney for Plaintiffs*

/s/*Gerald D. Neenan*

101383056.19

19