# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CHERYL PHIPPS, BOBBI MILLNER, AND SHAWN GIBBONS, On Behalf of Themselves and all Others Similarly Situated, | ) ) ) ) ) | |
| | | CLASS ACTION |
| *Plaintiffs,* | ) ) | CASE NO. 3:12-cv-01009 |
| v. | ) ) | JUDGE TRAUGER |
| WAL-MART STORES, INC. | ) ) | JURY TRIAL DEMANDED |
| *Defendant.* | ) ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS IN PART PLAINTIFFS' COMPLAINT OR IN THE ALTERNATIVE TO STRIKE CLASS CLAIMS

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................iii

INTRODUCTION .........................................................................................................1

FACTUAL AND PROCEDURAL HISTORY .................................................................2

PLAINTIFFS' COMPLAINT.........................................................................................3

ARGUMENT.................................................................................................................4

   I. PLAINTIFFS' CLASS ALLEGATIONS ARE TIMELY ......................................4

      A.  Supreme Court jurisprudence has long supported the tolling of class claims. .....................4

      B.  Pursuant to *Smith v. Bayer*, Plaintiffs' class allegations are not time-barred.......................5

         1. *Smith v. Bayer* permits successive class actions ..............................................5

         2. *Bayer* rejects the grounds on which courts have relied to bar plaintiffs from retaining *American Pipe* tolling rights for class claims ................................................6

         3. *Shady Grove* clarifies that Rule 23 alone governs whether plaintiffs may pursue claims on a class basis ................................................................11

         4. Plaintiffs Phipps and Millner illustrate that *Bayer* and *Shady Grove* extend *American Pipe* tolling to absent class members' successive class allegations .................................12

   II. PLAINTIFFS ASSERT LEGALLY COGNIZABLE CLAIMS...............................14

      A. Wal-Mart's Motion is a premature attempt to prevent class certification...........................14

      B. Plaintiffs' class allegations comply with the Supreme Court's new certification standards and provide fair notice of the claims alleged ................................................17

         1. Plaintiffs' disparate treatment claims could satisfy commonality ....................................17

         2. Plaintiffs' disparate impact claims could satisfy commonality .......................................22

   III. THE SINGLE FILING RULE APPLIES............................................................25

      A. The single filing rule permits absent class members who have not filed EEOC charges to rely on Plaintiffs' charges to exhaust their administrative remedies....................................25

B. The putative class may "coattail" on Stephanie Odle's EEOC charge to pursue class-wide claims dating back to December 26, 1998.................................................................28

IV. ONLY NAMED PLAINTIFFS NEEDS SATISFY THE TITLE VII VENUE RULE ............29

CONCLUSION ...........................................................................................................................30

Case 3:12-cv-01009   Document 35   Filed 11/29/12   Page 3 of 40 PageID #: 700

# TABLE OF AUTHORITIES

**Cases**

*American Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974).................................................................................. 2, 3, 5, 27

*Amochaev v. Citigroup Global Mkts. Inc.,*
   No. C-05-1298, 2007 WL 484778 (N.D. Cal. Feb. 12, 2007) ................................. 29

*Andrews v. Orr*
   851 F.2d 146 (6th Cir. 1988) ............................................................................. 6, 7

*Angles v. Dollar Tree Stores, Inc.,*
   No. 10-1723, 2012 WL 4017391 (4th Cir. Sept. 13, 2012) ...................................... 7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................................... 15

*Astiana v. Ben & Jerry's Homemade, Inc.,*
   No. C 10-4387 PJH, No. C 10-4937 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011)....... 16

*Barghout v. Bayer Healthcare Pharm.,*
   No. 11-cv-1576 (DMC) (DAD), 2012 WL 1113973 (D.N.J. Mar. 30, 2012) .................. 16, 20

*Barnes v. GenCorp, Inc.,*
   896 F.2d 1457 (6th Cir. 1990) ........................................................................... 22

*Bearden v. Honeywell Inern., Inc.,*
   720 F. Supp. 2d 932 (M.D. Tenn. 2012)................................................................ 16

*Bell v. Lockheed Martin Corp.,* Civ.
   No. 08-6292, 2011 WL 1467365 (D.N.J. Apr. 18, 2011)........................................ 29

*Bell v. Providence Cmty. Corrs., Inc.,*
   No. 3:11-203, 2011 WL 2218600 (M.D. Tenn. June 7, 2011) ................................. 15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................... 15

*Brown v. Am. Airlines, Inc.,*
   CV 10-8431 AG PJWx, 2011 WL 9131817 (C.D. Cal. Aug. 29, 2011) ..................... 9

*Brown v. Williamson Tobacco Corp.,*
   201 F.2d 819 (6th Cir. 1953) ............................................................................. 15

iii

*Calibuso v. Bank of Am. Corp.*,
  No. 10-CV-1413 (JFB) (ETB), 2012 WL 4458404 (E.D.N.Y. Sept. 27, 2012) ................ 16, 22

*Chen-Oster v. Goldman, Sachs & Co.*,
  No. 10 Civ. 6950, 2012 WL 205875 (S.D.N.Y. Jan. 19, 2012) ................................. 16

*Chen-Oster v. Goldman, Sachs & Co.*,
  No. 10 Civ. 6950, 2012 WL 2912741 (S.D.N.Y. July 17, 2012) ...................................... 16, 22

*City of Memphis v. Wells Fargo Bank, N.A.*,
  09-2857-STA, 2011 WL 1706756 (W.D. Tenn. May 4, 2011) ......................................... 12, 21

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
  CIV.A. 11-2658 JBS, 2012 WL 426267 (D.N.J. Feb. 7, 2012) ................................. 12

*Cook v. UBS Fin. Servs., Inc.*,
  No. 05 Civ. 8842, 2006 WL 760284 (S.D.N.Y. Mar. 21, 2006) ............................................ 29

*Cronas v. Willis Group Holdings Ltd.*,
  06 Civ. 15295, 2007 WL 2739769 (S.D.N.Y. Sept. 17, 2007) ................................. 26

*Crown, Cork & Seal Co., Inc., v. Parker*,
  462 U.S. 345 (1983) ........................................................................... 5-8, 27

*Dukes v. Wal-Mart Stores, Inc.*,
  131 S. Ct. 2541 (2011) ................................................................... *passim*

*Dukes v. Wal-Mart Stores, Inc.*,
  222 F.R.D. 137 (N.D. Cal. 2004) ...................................................... 2, 3

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010) (en banc) ................................................... 2

*Dukes v. Wal-Mart Stores, Inc.*,
  No. 3: 01–02252 MJJ, Dkt. 16, Defendant's Motion to Dismiss, or in the alternative, Motion
  to Transfer Case (N.D. Cal. Aug. 10, 2001) ................................................... 30

*Dukes v. Wal-Mart Stores, Inc.*,
  No. C 01–02252 MJJ, Dkt. 36, Order Granting in Part and Denying in Part Defendant's
  Motion to Dismiss, or in the alternative, Motion to Transfer Case (N.D. Cal. Dec. 3, 2001) ... 30

*Dukes v. Wal-Mart Stores, Inc.*,
  No. C 01-02252, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012). ................................ 16, 17, 28

*E.E.O.C. v. Ball Corp.*,
  661 F.2d 531 (6th Cir. 1981) ......................................................... 22

iv

*E.E.O.C. v. Steven T. Cox, Inc.*,
   3:99-1184, 2002 WL 32357095 (M.D. Tenn. July 19, 2002) ................................. 26

*E.E.O.C. v. Wilson Metal Casket Co.*,
   24 F.3d 836 (6th Cir. 1994) ....................................................................... 26

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................... 22

*Ellis v. Costco Wholesale Corp.*,
   No. C-04-3341 EMC, 2012 WL 4371817 (N.D. Cal. Sept. 25, 2012) .................... 22

*Eubanks v. CBSK Fin. Group, Inc.*,
   385 F.3d 894 (6th Cir. 2004) ..................................................................... 30

*Gomez v. St. Vincent Health, Inc.*,
   622 F. Supp. 2d 710 (S.D. Ind. 2008) .......................................................... 5, 7

*Gor v. Holder*,
   607 F.3d 180 (6th Cir. 2010) ....................................................................... 8

*Grant v. Metro. Gov't of Nashville & Davidson Cnty.*,
   446 F. App'x. 737 (6th Cir. 2011) ............................................................... 24

*Grogan v. Holder*,
   No. 1:08-cv-01747(BJR) (D.D.C. Sept. 27, 2012) ........................................... 16

*Heibel v. U.S. Bank Nat. Ass'n*,
   2:11-CV-00593, 2012 WL 4463771 (S.D. Ohio Sept. 27, 2012) ........................... 9

*Hershey v. Exxon Mobil Oil Corp.*,
   278 F.R.D. 617 (D. Kan. Dec. 22, 2011) ...................................................... 12

*Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*,
   343 F.3d 897 (7th Cir. 2003) ..................................................................... 27

*Howlett v. Holiday Inns, Inc.*,
   49 F.3d 189 (6th Cir. 1995) ....................................................................... 26

*In re Higgins*,
   159 B.R. 212 (S.D. Ohio 1993) ................................................................... 10

*In re Sears, Roebuck & Co.*,
   No. 05 C 4742, 2011 WL 2745772 (N.D. Ill. July 11, 2011) ............................... 9

*In re Toys "R" Us - Delaware, Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   MDL 08-01980 MMM, 2010 WL 5071073 (C.D. Cal. Aug. 17, 2010) .................... 12

v

*International Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977) .................................................................................................. 18, 22

*Keys v. Humana, Inc.*,
    684 F.3d 605 (6th Cir. 2012) ............................................................................................ 15

*Laffey v. Nw. Airlines*,
    567 F.2d 429 (D.C. Cir. 1976) .......................................................................................... 27

*Marquis v. Tecumseh Prods. Co.*,
    206 F.R.D. 132 (E.D. Mich. 2002) .................................................................................... 27

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012) ............................................................................................ 22

*Mitchell v. Acosta Sales, LLC*,
    841 F. Supp. 2d 1105 (C.D. Cal. 2011) .............................................................................. 9

*Norris v. U.S.*,
    687 F.2d 899 (7th Cir. 1982). ............................................................................................. 8

*Nuchols v. Berrong*,
    141 F. App'x 451 (6th Cir. 2005) ...................................................................................... 15

*Odle v. Wal-Mart Stores, Inc.*,
    No. 3:11-cv-02954-O, 2012 WL 5292957 (N.D. Tex. Oct. 15, 2012) ................................. 9, 10

*Phillips v. Cohen*,
    400 F.3d 388 (6th Cir. 2005) ............................................................................................ 24

*Phillips v. Gates*,
    329 F. App'x 577 (6th Cir. 2009) ...................................................................................... 25

*Quarles v. Gen. Inv. & Dev. Co.*,
    260 F. Supp. 2d 1 (D.D.C. 2003) ...................................................................................... 29

*Rehberger v. Honeywell Intern., Inc.*,
    No. 3:11-0085, 2011 WL 780681 (M.D. Tenn. Feb. 28, 2011) ............................................ 16

*Ring v. Roto-Rooter Servs. Co.*,
    1:10-CV-179, 2010 WL 3825390 (S.D. Ohio Sept. 28, 2010) ............................................ 29

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
    490 U.S. 477 (1989).................................................................................................... 8, 10

Case 3:12-cv-01009   Document 35   Filed 11/29/12   Page 7 of 40 PageID #: 704

*Ruehl v. Viacom,*
    500 F.3d 375 (3d Cir. 2007)...................................................................................... 28

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.,*
    642 F.3d 560 (7th Cir. 2011) ................................................................................... 11

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
    130 S. Ct. 1431 (2010)........................................................................... 1, 4, 11, 14

*Sliger v. Prospect Mortg., LLC,*
    789 F. Supp. 2d 1212 (E.D. Cal. 2011 ..................................................................... 16

*Smith v. Bayer,*
    131 S. Ct. 2368 (2011) ................................................................................ 1, 4, 6-10

*Sperberg v. Firestone Tire & Rubber Co.,*
    61 F.R.D. 70 (N.D. Ohio 1973) ................................................................................. 29

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002)................................................................................................... 15

*Teledyne Insus., Inc. v. NLRB,*
    911 F.2d 1214 (6th Cir. 1990) .................................................................................. 30

*Thompson v. Northstar Cos.,*
    No. 10CV1044-BTM (JMA), 2011 U.S. Dist. LEXIS 100830 (S.D. Cal. Sept. 7, 2011).......... 9

*Thorogood v. Sears, Roebuck & Co.,*
    131 S. Ct. 3060 (2011)................................................................................................. 6

*Thorogood v. Sears, Roebuck & Co.,*
    624 F.3d 842 (7th Cir. 2010) ...................................................................................... 6

*Thorogood v. Sears, Roebuck & Co.,*
    678 F.3d 546 (7th Cir. 2012) ...................................................................................... 6

*Turnley v. Bank of Am. Inv. Servs. Inc.,*
    576 F. Supp. 2d 204 (D. Mass. 2008) ..................................................................... 29

*Tyler v. Univ. of Louisville,*
    No. 3:06-cv-151-R, 2006 WL 3412273 (W.D. Ky. Nov. 27, 2006)......................... 21

*Valerino v. Holder,*
    Civ. No. 10-0123, 2011 WL 3918085 (D.V.I. Sept. 6, 2011) ................................. 29

*Villanueva v. Davis Bancorp, Inc.,*
    No. 09 C 7826, 2011 U.S. Dist. LEXIS 103473 (N.D. Ill. Sept. 13, 2011)............... 9

Case 3:12-cv-01009   Document 35   Filed 11/29/12   Page 8 of 40 PageID #: 705

*Villanueva v. Davis Bancorp, Inc.*,
No. 09 CV 7826, 2011 WL 2745936 (N.D. Ill. July 8, 2011) ................................................. 12

*Watson v. Fort Worth Bank and Trust*,
487 U.S. 977 (1988)................................................................................................... 22, 25

*Williams v. Richland County Children Servs.*,
No. 11-4205, 2012 WL 2874041 (6th Cir. July 13, 2012)...................................................... 15

*Witte v. Rippe & Kingston Sys., Inc.*,
358 F. Supp. 2d 658 (S.D. Ohio 2005). .................................................................. 21

## Statutes

28 U.S.C. § 1400 .................................................................................................... 29

28 U.S.C. § 2071, 2072.......................................................................................... 14

42 U.S.C. § 2000e-2(k)(1)(B)(i) ............................................................................ 24, 25

28 U.S.C. §§ 1332(d), 1453 .................................................................................... 8

## Other Authorities

Moore's Federal Practice, § 110.07, at 110-48 (3d ed. 2010). ...................................... 29

Wright, Miller, Kane & Marcus, 7A Fed. Prac. & Proc. Civ. 3d § 1757 .................................... 29

## Rules

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Case 3:12-cv-01009   Document 35   Filed 11/29/12   Page 9 of 40 PageID #: 706

# INTRODUCTION

Wal-Mart's motion to dismiss or strike Plaintiffs' class claims critically fails to account for the fact that the class allegations set forth in Plaintiffs' complaint vary substantially, and meaningfully, from the class allegations underlying the complaint in *Dukes v. Wal-Mart Stores, Inc.*, 131 S. Ct. 2541 (2011). Notably, Plaintiffs' class allegations concern one Wal-Mart region, as opposed to the 41 regions at issue in *Dukes*, and the discrete group of managers who made, and were responsible for, the employment decisions within that one region. This critical difference, which Wal-Mart attempts to dismiss as mere geography, addresses and cures one of the Supreme Court's principal concerns in *Dukes* — namely, that the class allegations in *Dukes* encompassed "a variety of regional policies that all differed." *Id.* at 2557 (internal quotation omitted). Moreover, Plaintiffs' complaint alleges a more refined statistical analysis than the analysis disfavored by the Supreme Court, and provides new evidence of bias by core decisionmakers within the region at issue. Given these differences, and the factual disputes underlying them, it would be premature to dismiss Plaintiffs' class allegations at this stage before Plaintiffs have conducted any class discovery.

Wal-Mart's Motion[1] should be also denied because the procedural defects Wal-Mart asserts are either inapplicable or unsupported by any precedent. As detailed below, Wal-Mart's assertion that Named Plaintiffs' class claims must be dismissed as untimely relies on superseded authority. Recent Supreme Court precedent establishes that absent class members retain their rights to bring a second class action based on the tolling of the statute of limitations that began with the filing of the initial case. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010). Similarly, the single filing

---

[1] As used herein, "Wal-Mart's Motion" shall refer to Wal-Mart's Motion to Dismiss in Part Plaintiffs' Complaint or in the Alternative to Strike Class Claims (Doc. No. 19.), and all citations thereto (cited as "Mot.") shall refer to the Memorandum filed by Wal-Mart in support of such motion (Doc. No 20.).

1

rule applies here where the Named Plaintiffs seek to certify a second class. Thus, absent class members may rely on the charges the Named Plaintiffs filed with the Equal Employment Opportunity Commission ("EEOC") and are not required to file individual charges. Finally, Wal-Mart's novel claim that each absent class member must satisfy Title VII's venue provision is contrary to all authority. Only the Named Plaintiffs need to satisfy Title VII's venue provisions. For these reasons, Wal-Mart's Motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

On October 2, 2012, Named Plaintiffs Cheryl Phipps, Bobbi Millner, and Shawn Gibbons (collectively, "Plaintiffs") filed a complaint alleging discrimination against women working in the region Wal-Mart defines as Region 43 ("Region 43").[2] Doc. No. 1 (hereinafter "Compl."). Each Named Plaintiff worked for Wal-Mart during the period from December 26, 1998 through the present, and Named Plaintiff Gibbons is a current Wal-Mart employee. Compl. ¶¶ 11-13.

Plaintiffs filed this case in the wake of the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). In the *Dukes* litigation, the District Court for the Northern District of California first certified a nationwide class of female retail sales employees with pay or promotion claims arising on or after December 26, 1998. *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 188 (N.D. Cal. 2004). On interlocutory appeal, the Ninth Circuit Court of Appeals affirmed in significant part the district court's class order. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 628 (9th Cir. 2010) (en banc). Then, on June 20, 2011, the Supreme Court reversed the Ninth Circuit's certification ruling. *Dukes*, 131 S. Ct. at 2561.

Following the Supreme Court's decision, the district court issued an order temporarily extending the tolling period awarded to former class members under *American Pipe and*

---

[2]      Plaintiffs believe Wal-Mart's Region 43 is largely based in central and western Tennessee, with a few Region 43 stores in northern Georgia, northern Alabama, northern Mississippi, and eastern Arkansas. Compl. ¶ 5.

*Construction Co. v. Utah*, 414 U.S. 538, 554 (1974). Compl., Ex. 9. The district court's order permitted former class members to benefit from *American Pipe* tolling if they filed charges of discrimination with the EEOC on or before January 27, 2012, in non-deferral states, and on or before May 25, 2012, in deferral states. *Id.*

Plaintiffs would have been absent class members in the national class, had the Supreme Court upheld the lower courts' certification rulings. Plaintiffs each timely filed EEOC charges pursuant to the district court's tolling ruling. Compl. ¶¶ 118, 130, 144. All of Plaintiffs' charges extend back to December 26, 1998, the start of the class period. Compl. ¶¶ 11-13.

## PLAINTIFFS' COMPLAINT

Plaintiffs' complaint differs significantly from the complaint in the *Dukes* litigation. First, Plaintiffs' proposed class encompasses just one Wal-Mart region, in contrast to the 41 Wal-Mart regions represented within *Dukes*' proposed nationwide class.[3] *Compare* Compl. ¶ 15, *with Dukes*, 222 F.R.D. at 145. Within Wal-Mart's Region 43, Plaintiffs challenge the decisions of the discrete group of managers who made, and were responsible for, the discriminatory pay and promotion decisions at issue in this litigation. *See, e.g.*, Compl. ¶¶ 39, 41, 43. These managers "have ultimate authority over whether, and by how much, to adjust the pay of all hourly employees" and have "long known about gender disparities," yet have failed to take remedial action. Compl. ¶¶ 43, 61.

Second, even without the benefit of discovery specific to Region 43, Plaintiffs' complaint attributes specific evidence of gender bias to some of the managers involved in the contested decisions. Compl. ¶¶ 71-94. Third, Plaintiffs allege disparities in pay and promotion decisions adverse to women derived from analyses substantially more refined than those the nationwide

---

[3]     The Region 43 class will have a monetary relief sub-class and an injunctive relief sub-class. Compl. ¶ 15.

3

class employed in *Dukes*.  Compl. ¶¶ 49, 50, 59, 60.  Fourth, Plaintiffs contend that Wal-Mart's personnel processes are "not capable of separation for analysis" and therefore may be analyzed as a functionally integrated practice.  Compl. ¶¶ 50, 70, 152.  Finally, Plaintiffs allege monetary relief claims that satisfy Rule 23(b)(3), or (c)(4) as an alternative, rather than Rule 23(b)(2), under which the district court had certified the nationwide class.  Compl. ¶¶ 22-23.

## ARGUMENT[4]

## I.     PLAINTIFFS' CLASS ALLEGATIONS ARE TIMELY.

Wal-Mart's claim that Plaintiffs' class allegations are untimely should be rejected because the Supreme Court has recently held that absent class members may pursue successive class actions and that Rule 23 alone controls whether individuals may pursue their claims on a class-wide basis.  Last term, in *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011), the Supreme Court held that absent class members are not bound by a court's denial of class certification, and, therefore, reversed a district court's injunction barring an absent class member's successive class action.  Also, in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), the Supreme Court recently held that only Rule 23 — and not any other law or policy — controls whether an individual may pursue his or her claims as a class action.

In light of these recent decisions, Wal-Mart's reliance on the Sixth Circuit's 1988 decision in *Andrews v. Orr* is misplaced.  Plaintiffs' class allegations are timely, and Wal-Mart's Motion should be denied.

### A.  Supreme Court jurisprudence has long supported the tolling of class claims.

Prior to 2011, the Supreme Court had twice addressed the tolling rights class members acquire when a class action is filed and that the class members then retain after certification is

---

[4]          Pursuant to the Court's Local Rule 7.01(e)(5), all decisions cited in this brief not reported in one of the publications of the West Publishing Company are contemporaneously filed in Appendix 1 to this brief.

4

denied.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co., Inc., v. Parker*, 462 U.S. 345 (1983).  In *American Pipe*, the Court established that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class," and held that absent class members may intervene in an individual action after denial of class certification.  414 U.S. at 554.  Then, in *Crown, Cork*, the Court clarified that *American Pipe* tolling is not limited to intervention, but also permits class members to file new actions following denial of class certification.  462 U.S. at 353-54.  Thus, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action." *Id.* at 354.

Since the plaintiff in *Crown, Cork* filed a new individual action following the court's denial of class certification, the Court's opinion did not address whether class members who retain *American Pipe* tolling rights as individuals may pursue their claims in a successive class action.  *Id.* at 347.  However, as subsequent cases have recognized, *Crown, Cork*'s reasoning supports the position that *American Pipe* tolling should apply to absent class members whether they choose to file separate individual claims or choose to unite in a class action.  *See, e.g., Gomez v. St. Vincent Health, Inc.*, 622 F. Supp. 2d 710, 716-723 (S.D. Ind. 2008) (permitting tolling in second class action consistent with reasoning in *American Pipe*).

**B.  Pursuant to *Smith v. Bayer*, Plaintiffs' class allegations are not time-barred.**

1.  <u>*Smith v. Bayer* permits successive class actions.</u>

Given the ambiguity in the *Crown, Cork* decision, many Courts of Appeals — including the Sixth Circuit — went on to develop their own rules on the scope of *American Pipe* tolling.  In *Andrews v. Orr*, for example, the Sixth Circuit defined the scope of this tolling narrowly, stating that "the pendency of a previously filed class action does not toll the limitations period for

5

additional class actions by putative members of the original asserted class." 851 F.2d 146, 149 (6th Cir. 1988). In reaching this decision, the court relied heavily on the decisions of other circuit courts, and on Justice Powell's *Crown, Cork* concurrence, which cautioned that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse." 462 U.S. at 354 (Powell., J. concurring); *see also Andrews*, 851 F.2d at 149 (quoting Justice Powell).

In 2011, however, the Supreme Court gave its own answer to the lingering questions from *Crown, Cork* in its *Smith v. Bayer* decision, 131 S. Ct. 2368 (2011), unequivocally holding that absent class members **may** pursue successive class actions after the denial of class certification. Citing the longstanding bar against nonparty preclusion, the Court held that one court's denial of class certification cannot bar absent class members from pursuing the same claims in a second class action, and that, therefore, a federal court cannot enjoin another court from considering the second class action. *Id.* at 2379-80.[5] The Court further explained that unless a class is properly certified, absent class members are not parties before the initial court and cannot be collaterally estopped from pursuing class relief in a subsequent proceeding. *Id.* at 2380-81.

2. *Bayer* rejects the grounds on which courts have relied to bar plaintiffs from retaining *American Pipe* tolling rights for class claims.

In *Smith v. Bayer*, 131 S. Ct. 2368 (2011), the Supreme Court squarely rejected the two main arguments lower courts have raised when prohibiting successive class actions by absent

---

[5] The holding in *Bayer* was not limited to federal court injunctions of state court proceedings (the specific posture of *Bayer*), as the Supreme Court has applied the same principle where both tribunals were federal courts. In *Thorogood v. Sears, Roebuck & Co.*, 624 F.3d 842, 852-54 (7th Cir. 2010), the Seventh Circuit had ordered a district court to enjoin another federal court from allowing a successive class action to proceed after the first district court denied certification of a similar class. The Supreme Court vacated the Seventh Circuit's ruling and remanded "in light of *Smith v. Bayer Corp.*" *Thorogood v. Sears, Roebuck & Co.*, 131 S. Ct. 3060, 3061 (2011). Subsequently, the Seventh Circuit ordered the district court to vacate the injunction and permit the successive class action to proceed. *Thorogood v. Sears, Roebuck & Co.*, 678 F.3d 546, 551-52 (7th Cir. 2012).

6

class members who possess *American Pipe* tolling rights.[6] Specifically, the *Bayer* Court determined that (1) permitting successive attempts at class certification is not an abuse of the class action device, and that (2) the initial court's denial of class certification does not preclude the filing of a subsequent class action by putative members of original proposed class.

***Abuse of the Class Action Device.*** In *Bayer*, the Supreme Court expressly rejected the abuse-of-process argument the Sixth Circuit relied on in *Andrews v. Orr*, and which Wal-Mart now cites as the "good policy" reason to bar Plaintiffs' class allegations. As noted above, the *Andrews* decision relied almost entirely on the decisions of its sister circuit courts, and on Justice Powell's concern that such tolling would "invit[e] abuse." 851 F.2d 146, 149 (6th Cir. 1988) (citations omitted).[7] Now, Wal-Mart cites *Andrews* and this exact same language as support for its claim that Plaintiffs' class allegations are-time barred. Mot. at 5.

The defendant in *Bayer* raised a similar argument, but the Supreme Court found it unpersuasive. 131 S. Ct. at 2381. Specifically, the Court explained that successive class actions need not be barred to avoid abuse, as "our legal system generally relies on principles of *stare decis* and comity among courts to mitigate the sometimes substantial costs of similar litigation

---

[6]  All but one authority upon which Wal-Mart relies in support of its position that courts do not permit tolling rights to apply to a successive class action predate *Smith v. Bayer.* The one case decided subsequently, *Angles v. Dollar Tree Stores, Inc.*, No. 10-1723, 2012 WL 4017391 (4th Cir. Sept. 13, 2012), never addressed the applicability of these superseding cases and is also inapposite. The court in *Angles* ruled that "[e]ven assuming *American Pipe/Crown, Cork, & Seal* applied to a separate class action in a different venue, the rule still requires the actual filing of an action in the first instance, which never occurred in this case with respect to the Title VII claims." *Id.* at *4. Therefore, the language quoted by Wal-Mart is inapposite dicta.

[7]  Justice Powell's specific concern was that a subsequent case taking advantage of *American Pipe* tolling might raise substantially different claims from those of the original case, such that the defendant would not have been put on notice by the first suit. He noted that the notice provided by the first suit means that "defendant normally is not prejudiced by tolling of the statute of limitations." *Crown, Cork,* 462 U.S. at 355. The abuse Justice Powell was concerned about was the subsequent "assertion of claims that differ from those raised in the original class suit," of which defendant was not reasonably placed on notice. *Id.* Subsequent courts have noted the relatively narrow scope of Justice Powell's concern. In *Gomez v. St. Vincent Health, Inc.*, for example, the Southern District of Indiana explained that "[t]he abuse he was concerned with was a plaintiff bringing ***new and different claims*** after the statute of limitations had passed."). 622 F. Supp. 2d 710, 720 (S.D. Ind. 2008) (emphasis supplied). Indeed, Justice Powell's recognition that a defendant is not prejudiced by a court's tolling of the statute of limitations as long as the defendant has been put on notice of the claims against it vitiates the concern expressed by Defendant, Mot. at 6, that it not have to defend claims arising long ago.

7

brought by different plaintiffs." *Id.* In addition, the Court cited the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 (2006 ed. and Supp. III), as well as the availability of consolidated multi-district litigation, as further protections against potential abuse. *Id.* at 2381-82.

This result upends the Sixth Circuit's *Andrews* decision, and is fully consistent with the holding in *Crown, Cork*.[8] There, the Court explained that "[t]olling the statute of limitations" after a prior class action was filed "creates no potential for unfair surprise, *regardless of the method class members choose to enforce their rights* upon the denial of class certification," as the defendant was already notified of potential plaintiffs and their substantive claims. *Crown, Cork*, 462 U.S. at 353 (emphasis added). Like the *Bayer* Court, the *Crown, Cork* Court flatly rejected the argument that a defendant might have to "defend against multiple actions in multiple forums once a class has been decertified," by stating that "this is not an interest that statutes of limitations are designed to protect," and noting there are "[o]ther avenues" to avoid the burdens of successive lawsuits. *Id.*

**Preclusion.** The *Bayer* court also squarely rejected many courts' claims that successive class actions by absent class members are barred by the preclusive effect of a prior court's denial of class certification. In no uncertain terms, the Supreme Court stated: "Neither a proposed class action nor a rejected class action may bind nonparties." *Bayer*, 131 S. Ct. at 2380. Thus, an

---

[8]     Wal-Mart erroneously cites *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989), for the proposition that this Court remains bound by the *Andrews* decision, even though the *Rodriguez* decision stands for the proposition that circuit courts should not decide that one Supreme Court decision has implicitly overruled a prior Supreme Court decision. Mot. at 4; 490 U.S. at 484.

        As the Sixth Circuit has noted, decisions of that court remain controlling authority unless an inconsistent decision of the United States Supreme Court "requires modification of the decision" or unless the Sixth Circuit, sitting en banc, overrules the decision. *See, e.g.*, *Gor v. Holder*, 607 F.3d 180, 188 (6th Cir. 2010). In light of the intervening Supreme Court authority cited and discussed herein, this Court should disavow *Andrews* as stale law. As Judge Posner once wrote on this issue, "to continue to follow the earlier case blindly until it is formally overruled is to apply the dead, not the living, law." *Norris v. U.S.*, 687 F.2d 899, 904 (7th Cir. 1982).

absent class member following a court's denial of class certification cannot be precluded from filing a second class action on the same issue. *Id.*

Taken together, these *Bayer* holdings make clear that courts cannot deny tolling and refuse to hear successive class actions either to forestall abuse of the class action device or because class members are precluded from proceeding by the prior court's denial of certification. *See Villanueva v. Davis Bancorp, Inc.*, No. 09 C 7826, 2011 U.S. Dist. LEXIS 103473, at *7-8 (N.D. Ill. Sept. 13, 2011) ("the way in which courts analyze successive class action suits brought under . . . Rule . . . 23 is evolving," citing *Bayer* and finding tolling permitted in a second class case). Thus, as many courts have since ruled, courts may not bar putative members of a failed class action from pursuing a successive class action.[9]

Plaintiffs are aware that the Northern District of Texas recently reached a different conclusion with respect to *Bayer*, and dismissed the class claims of several post-*Dukes* Wal-Mart plaintiffs as untimely. *Odle v. Wal-Mart Stores, Inc.*, No. 3:11-cv-02954-O, 2012 WL 5292957, at *6-9 (N.D. Tex. Oct. 15, 2012). Plaintiffs respectfully submit, however, that the court there was mistaken in its holding and that this Court should accordingly not follow it.

In dismissing the class claims in *Odle* as untimely, the Northern District of Texas concluded that it was bound to apply Fifth Circuit precedent limiting the scope of *American Pipe* tolling, despite the Supreme Court's intervening decision in *Bayer*. *Id.* at *6-7. In support of

---

[9]       *In re Sears, Roebuck & Co.*, No. 05 C 4742, 2011 WL 2745772, at *2-5 (N.D. Ill. July 11, 2011) (relying on *Bayer* and rejecting defendant's request that plaintiffs who were unsuccessful in seeking class certification in prior case be enjoined from seeking class certification in the case before it); *Brown v. Am. Airlines, Inc.*, CV 10-8431 AG PJWx, 2011 WL 9131817 (C.D. Cal. Aug. 29, 2011) (relying on *Bayer* and refusing to find denial of class certification in prior case precluded attempt to certify in pending case); *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1116-17 (C.D. Cal. 2011) (rejecting defendant's argument that conditional certification should be denied because similar class was decertified in one case, and dismissed with prejudice in another case, based on *Bayer*); *Heibel v. U.S. Bank Nat. Ass'n*, 2:11-CV-00593, 2012 WL 4463771 (S.D. Ohio Sept. 27, 2012) (same); *Thompson v. Northstar Cos.*, No. 10CV1044-BTM (JMA), 2011 U.S. Dist. LEXIS 100830, at *1-3 (S.D. Cal. Sept. 7, 2011) (denying defendant's motion for summary judgment on plaintiff's claim for class certification based on prior denial of class certification in case where plaintiff would have been class member, citing *Bayer*).

9

that conclusion, the court relied primarily on *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989), which states that "[i]f a precedent of this [Supreme] Court has direct application to a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

Of course, as the Northern District of Texas itself recognized, *Rodriguez de Quijas* instructed **Courts of Appeals** on how to decide between two conflicting **Supreme Court** opinions. *Odle*, 2012 WL 5292957, at *6-7. Accordingly, *Rodriguez de Quijas* rests upon the idea that the Supreme Court has exclusive prerogative to reconcile any inconsistencies in its own decisions. That same logic simply does not apply when a conflict arises between a Supreme Court decision and a Court of Appeals decision. As at least one district court in this circuit has noted, "it goes without saying that a District Court should be extremely careful in concluding that circuit precedent is no longer good law," but may do so if it is "powerfully convinced that the circuit will overrule itself at the next available opportunity." *In re Higgins*, 159 B.R. 212, 216 (S.D. Ohio 1993) (internal quotations omitted).

Furthermore, and again contrary to the Northern District of Texas' holding, the Supreme Court's decision in *Bayer **does*** directly conflict with earlier circuit precedent on class action tolling — including *Andrews v. Orr*. While the *Odle* Court reasoned — incorrectly — that "*Smith* [*v. Bayer*] does not speak beyond the Anti-Injunction Act's relitigation exception," *Odle*, 2012 WL 5292957, at *9, the *Bayer* Court cast its own holding in far broader terms. Specifically, the Court noted that a "basic premise of preclusion law" is that "[n]either a proposed class action nor a rejected class action may bind nonparties." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379-80 (2011). This holding does not depend in any way on the language of the

10

Anti-Injunction Act, and there is no plausible reading of this holding that does not directly conflict with the Sixth Circuit's decision in *Andrews v. Orr*.

Accordingly, the Court should not follow the decision of the Northern District of Texas and should instead follow the clear holding of *Smith v. Bayer* and recognize that *Andrews v. Orr* is no longer good law in this Circuit.

### 3. *Shady Grove* clarifies that Rule 23 alone governs whether plaintiffs may pursue claims on a class basis.

In *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), the Supreme Court made clear that if a plaintiff can pursue a claim individually in federal court, then a group of individuals may pursue a common claim as a class, as long as they can satisfy the requirements of Fed. R. Civ. P. 23. *Id.* at 1437. Specifically, the Court held that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," and "provides a one-size-fits-all formula for deciding the class-action question." *Id.* As Justice Scalia explained on behalf of a unanimous Court, New York could not give individuals a right to obtain statutory penalties but prohibit a class action that aggregates the individual claims. Whatever New York's objective was, the Court held that "it cannot override [Rule 23's] clear text." *Id.* at 1438-40.

In light of *Shady Grove*, it is clear that plaintiffs who retain *American Pipe* tolling rights as individuals must be permitted to aggregate their claims in a class action. The view that "Rule 23 must be set aside when a suit's timeliness depends on a tolling rule . . . cannot be reconciled with the Supreme Court's . . . decision in *Shady Grove Orthopedic Associates*, which holds that Rule 23 applies to *all* federal civil suits, even if that prevents achieving some other objective that a court thinks valuable." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 564 (7th Cir. 2011) (Easterbrook, J.). Other courts have followed *Sawyer* in recognizing this change

11

in law. *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, CIV.A. 11-2658 JBS, 2012 WL 426267, at *3-4 (D.N.J. Feb. 7, 2012); *Villanueva v. Davis Bancorp, Inc.*, No. 09 CV 7826, 2011 WL 2745936 (N.D. Ill. July 8, 2011). Neither a legislature nor a court has the power to trump Rule 23 by barring litigants whose class action otherwise satisfies Rule 23. *See Hershey v. Exxon Mobil Oil Corp.*, 278 F.R.D. 617, 621-23 (D. Kan. Dec. 22, 2011) (noting the trend in federal courts of allowing second class actions to aggregate their *American Pipe* tolling rights is "reflected in" *Shady Grove*); *In re Toys "R" Us - Delaware, Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*, MDL 08-01980 MMM, 2010 WL 5071073, at *15-16 (C.D. Cal. Aug. 17, 2010) (recognizing tolling for successive class actions that were narrower than the initial nationwide class action). The *Shady Grove* decision, therefore, nullifies any prior lower-court rulings that conflict with it, including those on which Wal-Mart relies.

    4.  <u>Plaintiffs Phipps and Millner illustrate that *Bayer* and *Shady Grove* extend *American Pipe* tolling to absent class members' successive class allegations.</u>

The procedural histories of Plaintiff Phipps' and Plaintiff Millner's claims illustrate why *Bayer* and *Shady Grove* require applying *American Pipe* tolling to their class claims against Wal-Mart and why any other result would be patently unjust.

Plaintiffs Phipps and Millner are both former Wal-Mart employees. Ms. Phipps worked for Wal-Mart from 1993 to approximately 2003 and again from approximately 2005 to 2006. Compl. ¶ 11. Ms. Millner worked for Wal-Mart from 1980 to 1994 and again from 1995 to 2007. Compl. ¶ 13. Neither Ms. Phipps nor Ms. Millner has worked at Wal-Mart since 2007. As such, but for *American Pipe* tolling, both Ms. Phipps and Ms. Millner would have been time-barred from filing charges of discrimination with the EEOC in early 2012 related to their prior Wal-Mart employment. However, as absent class members in the nationwide class alleged in *Dukes*, Ms. Phipps and Ms. Millner benefitted from *American Pipe* tolling during the pendency

of the *Dukes* class certification process and were permitted to file EEOC charges related to their prior employment with Wal-Mart until May 25, 2012. Compl. ¶ 147.

Now, Plaintiffs Phipps and Millner are properly before this Court pursuant to *American Pipe* and *Crown, Cork*, but Wal-Mart contends that they cannot pursue their individually tolled claims on a class basis. Yet, the *Bayer* decision makes clear that the Supreme Court's *Dukes* decision cannot preclude Ms. Phipps and Ms. Millner from filing a class case against Wal-Mart, and the *Shady Grove* decision makes clear that Rule 23 alone — and not any other law or policy — governs whether they may pursue their tolled claims on a class basis. Thus, neither the *Dukes* decision nor a stale opinion from the Sixth Circuit may prohibit Ms. Phipps and Ms. Millner from pursuing their claims on a class basis for the entire tolled period. Rather, if Ms. Phipps and Ms. Millner are able to meet the requirements of Rule 23, they should be permitted to pursue their tolled claims, for the entire tolled period, on a class basis.

Any other interpretation of *Bayer* and *Shady Grove* would have absurd and unjust implications for employees — including those in the present case. Ms. Phipps and Ms. Millner, for example, would be punished for failing to predict the future during the late 1990s, specifically for failing to predict that *Dukes* would be decertified — after years as a certified class — and that they would need to have their own class-based EEOC charges on file in order to preserve their right to proceed collectively. This would be the case even though Wal-Mart had notice of Plaintiffs' claims, as absent class members, for the entirety of the *Dukes* litigation. Accordingly, Plaintiffs simply disagree with Wal-Mart that such a reading of the Supreme Court's precedents is "just good policy." Mot. at 5.

Thus, for the above-cited reasons, Plaintiffs' class allegations are timely and should neither be dismissed nor stricken.[10]

## II. PLAINTIFFS ASSERT LEGALLY COGNIZABLE CLASS CLAIMS.

Plaintiffs' class allegations should neither be dismissed nor stricken because Plaintiffs, unlike the plaintiffs in the nationwide *Dukes* litigation, challenge the employment policies of a discrete Wal-Mart management team with responsibility over a single Wal-Mart region. Moreover, Plaintiffs have made allegations that are far more specific than those of *Dukes*, including allegations that the management team for Region 43 intended to discriminate against women. Plaintiffs have also identified specific policies having an adverse impact on women. Thus, the *Dukes* decision does not bar Plaintiffs' class allegations, and Plaintiffs should be allowed to proceed with class discovery and the class certification process.

### A. Wal-Mart's Motion is a premature attempt to prevent class certification.

Wal-Mart's Motion asks this Court to dismiss or strike Plaintiffs' class allegations based solely on the complaint, before the parties have engaged in class discovery. Such premature

---

[10]    Wal-Mart's argument with respect to the Rules Enabling Act is similarly meritless. First, Defendant's assertion that tolling subsequent class claims is inconsistent with Fed. R. Civ. P. 23, Mot. at 7-8, has nothing to do with the Rules Enabling Act. That act, by its own terms, requires judicially established rules to "be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title." 28 U.S.C. § 2071(a). Section 2072, in turn, provides that "rules shall not abridge, enlarge or modify any substantive right." However, because Rule 23 is procedural, it does not confer any substantive rights and is accordingly outside the scope of the Rules Enabling Act. Notably, *Shady Grove* addresses – and soundly rejects – a similar argument based on the Rules Enabling Act. 130 S. Ct. at 1442-44 (holding that permitting plaintiffs to pursue their claims through a class action rather than individually did not alter substantive rights in a manner inconsistent with the Rules Enabling Act). If anything, tolling is a substantive right of plaintiffs, recognized by *American Pipe* and *Crown, Cork*, and it is Defendant that seeks to use the fact that the tolling arises here from a second Rule 23 action to take away Plaintiffs' substantive rights, in contravention of the Rules Enabling Act.
        Wal-Mart's Rules Enabling Act argument is similarly off-base with respect to Title VII. Plaintiffs do not dispute that one of the statutory goals of that title — though certainly **not** the primary one — is to protect employers from having to defend against stale claims. However, the issue now before the Court is not the age of Plaintiffs' claims, but rather whether Plaintiffs may pursue them in a single action under Rule 23. Accordingly, if this Court decides that *Andrews v. Orr* is still good law despite the *Bayer* decision, the result will not be an outright dismissal of these allegedly "stale" claims. Instead, Defendants will simply have to litigate these claims on a plaintiff-by-plaintiff basis, rather than collectively. In light of this fact, Defendant cannot credibly claim that denial of class tolling is necessary to effectuate its Title VII interests.

14

attempts to forestall class certification are disfavored and should be denied where, as here, plaintiffs assert cognizable legal claims based on facts that plausibly support class certification.

"A motion to dismiss under Rule 12(b)(6) is disfavored and rarely granted." *Nuchols v. Berrong*, 141 F. App'x 451, 453 (6th Cir. 2005) (citations omitted). Under this strict standard, the reviewing court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Williams v. Richland County Children Servs.*, No. 11-4205, 2012 WL 2874041, at *3 (6th Cir. July 13, 2012) (citations omitted).

To survive a motion to dismiss, a complaint need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility" requirement "does not impose a probability requirement," however, as "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Further, no "heightened pleading standard" exists for Title VII claims, and thus, ordinary notice pleading standards apply. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (plaintiffs need not plead prima facie case of discrimination as *Swierkiewicz* remains applicable after *Iqbal*).

Just as motions to dismiss are disfavored, it is also "well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown v. Williamson Tobacco Corp.*, 201 F.2d 819, 822 (6th Cir. 1953); *see also Bell v. Providence Cmty. Corrs., Inc.*, No. 3:11-203, 2011 WL 2218600, at *7 (M.D. Tenn. June 7, 2011) ("[C]ourts generally look with disfavor on Motions to

15

Strike."). Thus, although "there is precedent for treating a Rule 12(f) motion to strike class allegations as a motion to deny class certification under Rule 23," a court may only do so if "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23." *Rehberger v. Honeywell Intern., Inc.*, No. 3:11-0085, 2011 WL 780681, at *8-9 (M.D. Tenn. Feb. 28, 2011) (quoting *Bearden v. Honeywell Inern., Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2012)).

Since the Supreme Court issued its *Dukes* decision, courts have frequently rejected similar premature efforts to dismiss class claims premised on *Dukes* where, as here, factual issues central to certification are disputed and class discovery has not yet taken place.[11] Most notably, the district court overseeing the continuation of the *Dukes* litigation recently denied Wal-Mart's similar motion to dismiss or strike class allegations. *Dukes v. Wal-Mart Stores, Inc.*, No. C01-02252, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012). There, the plaintiffs filed a Fourth Amended Complaint following the Supreme Court's ruling, seeking to represent current and former female Wal-Mart employees in just four Wal-Mart regions largely based in California. *Id.* at *2. In rejecting Wal-Mart's request to dismiss or strike the *Dukes* plaintiffs' class allegations, the district court noted that the plaintiffs brought a "narrower class-action

---

[11]     *See, e.g., Barghout v. Bayer Healthcare Pharm.*, No. 11-cv-1576 (DMC)(DAD), 2012 WL 1113973, at *11 (D.N.J. Mar. 30, 2012) (finding applicability of *Dukes* "tenuous at this stage of litigation" and denying motion to dismiss, finding arguments concerning class deficiencies premature); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2012 WL 205875, at *6-8, 10 (S.D.N.Y. Jan. 19, 2012), *Report and Recommendation adopted in relevant part*, 2012 WL 2912741 (July 17, 2012) (denying motion to strike Title VII class allegations as premature where plaintiffs may establish commonality with further discovery); *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1218 (E.D. Cal. 2011) (accord); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, No. C 10-4937 PJH, 2011 WL 2111796, at *13-15 (N.D. Cal. May 26, 2011) (accord); *Calibuso v. Bank of Am. Corp.*, No. 10-CV-1413 (JFB) (ETB), 2012 WL 4458404, at *15-16 (E.D.N.Y. Sept. 27, 2012) (denying defendant's motion to dismiss, finding that although lower level supervisors exercised some level of discretion, "*Dukes* did not foreclose all class action claims where there is a level of discretion afforded to individual managers and supervisors," finding it plausible that plaintiffs could demonstrate commonality consistent with *Dukes* at the class certification stage, and noting that "other federal courts in analogous contexts have refrained from dismissing a class action case at the motion to dismiss stage when the defendants have challenged the class on *Dukes* grounds."); *Grogan v. Holder*, No. 1:08-cv-01747(BJR), Dkt. 106, at *7 (D.D.C. Sept. 27, 2012) included in Appendix 1 (denying motion to dismiss class claims, finding that under *Dukes*, plaintiffs' challenge to the promotion and internal investigatory policies were not immunized from a Title VII class suit simply because they were highly subjective).

16

claim, which the Supreme Court has yet to consider and did not foreclose," and stated that "so long as discovery might permit them to meet the Rule 23 obligations clarified by the Supreme Court's ruling, this Court is not prepared to deny them an opportunity to marshal and present evidence in support of their class allegations." *Id.* at *3, *5. For the same reasons, this Court should not dismiss or strike Plaintiffs' class allegations at this early stage.

**B. Plaintiffs' class allegations comply with the Supreme Court's new certification standards and provide fair notice of the claims alleged.**

Plaintiffs' complaint alleges a class that is substantially narrower and reconfigured as compared to the nationwide class. With the benefit of discovery, these new claims could satisfy Rule 23's commonality requirement.[12] In rejecting nationwide certification, the Supreme Court found the record presented was insufficient to sustain "one of the most expansive class actions ever." *Dukes*, 131 S. Ct. at 2547, 2556. Unlike the national class, which the Court faulted for encompassing "a variety of regional policies that all differed," *Dukes*, 131 S. Ct. at 2557 (quoting *Dukes*, 603 F.3d at 652 (Kozinski, C.J., dissenting)), the pending class challenges policies and practices in a single region, where a discrete group of managers made, and were responsible for, the challenged employment decisions. Plaintiffs have thus satisfied their burden at this juncture: to *plead* class claims that provide Wal-Mart with fair notice of class claims amenable to certification on an appropriate record.

1. Plaintiffs' disparate treatment claims could satisfy commonality.

The Supreme Court recognized that class claims may challenge discretionary decisionmaking where Plaintiffs identify a "common mode of exercising discretion," such as through "significant proof" of "a general policy of discrimination." *Dukes*, 131 S. Ct. at 2554-55.

---

[12]     Such discovery would include, but not necessarily be limited to, an examination of pay and promotion practices in place in Region 43, criteria used in making pay and promotion decisions, the role of managers in making, reviewing, and approving such decisions, and views of managers about the suitability of women to serve in management and be paid comparably to men.

Wal-Mart's erroneous assertion that a class may not challenge discrimination perpetrated through discretionary personnel decisions, Mot. at 10, is at odds with the Court's decision. Indeed, the Supreme Court reaffirmed that under *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977), a plaintiff may establish liability by showing that "discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *Dukes*, 131 S. Ct. at 2552 n.7 (quoting *Teamsters*, 431 U.S. at 336). Thus, the Court's decision permits Plaintiffs to pursue certification of a class that, with the benefit of a developed record, will rest on "significant proof" of a "general policy of discrimination," perpetuated by a discrete group of managers related to a considerably narrowed class. *See id.* at 2553. Here, Plaintiffs' complaint alleges class claims consistent with the Court's new guidance and provides more than sufficient factual allegations to provide fair notice of the class claims alleged.

*(1) Narrower Class.* The Supreme Court faulted the *Dukes* plaintiffs for seeking to represent 1.5 million women without providing sufficient evidence that the women's many managers, spread across 41 separately-managed regions, were engaged in uniform discriminatory conduct. *Dukes*, 131 S. Ct. at 2547, 2555-56. Plaintiffs here have addressed this concern by structuring the much narrower proposed class around the single group of decisionmakers whose discriminatory decisions affected them. Within Region 43, the challenged decisions were made, reviewed, and approved by a discrete group of managers, including the Regional Vice President with ultimate responsibility over all employment decisions. Thus, the proposed class has the homogeneity that the Court found lacking in the national class.[13]

*(2) Core Group of Decisionmakers.* The Supreme Court also rejected the nationwide

---

[13] In addition, to avoid any risk of internal conflict within the proposed class, Plaintiffs have excluded female Store Managers from the proposed class. Compl. ¶ 15.

class on grounds that Plaintiffs had not "identified a common mode of exercising discretion that pervades the entire company." *Dukes*, 131 S Ct. at 2548, 2554-55. The Court explained that to satisfy commonality, Plaintiffs' "claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor." *Id*. at 2551. Applying this guidance, Plaintiffs focus their challenge not on a varied group of decisionmakers spread across the country, but rather on the discrete group of supervisors in Region 43 who participated in, and were ultimately responsible for, region-wide discriminatory decisions.

Wal-Mart's assertion that Plaintiffs bring "substantially similar class claims to those rejected by the Supreme Court" through a complaint that is "substantively identical" to the *Dukes* complaint grossly misses the mark on this pivotal issue. Mot. at 7. Unlike *Dukes*, which concerned multiple Wal-Mart regions supervised by separate regional management teams, Plaintiffs' complaint focuses on one Wal-Mart region, alleges that the Regional Vice President, Regional Personnel Manager, and District Managers in that region have ultimate authority over the challenged decisions, Compl. ¶¶ 43, 45-46, 53-54, and alleges that managers in the region employ a common mode of making decisions that discriminates against women. Compl. ¶¶ 30, 32-33, 39, 41-43, 45-46, 48-49, 53-54, 59-64.

*(3) New Evidence of Overt Bias by Core Decisionmakers.* The Supreme Court also noted that Rule 23 commonality could not be established merely by showing that the exercise of discretion by Wal-Mart managers was "vulnerable" to bias. *Dukes*, 131 S. Ct. at 2553. Plaintiffs' complaint addresses this concern by setting forth specific allegations of gender bias by Region 43 managers, which could support a pattern or practice claim in Region 43. *See Dukes*, 131 S. Ct. at 2552 n.7. These allegations include:

- Evidence of Biased Attitudes Against Women: New evidence obtained from a District Managers' meeting with Wal-Mart then-CEO Thomas Coughlin where

19

District Managers were instructed that the key to success was "single focus to get the job done. . . . *Women tend to be better at information processing. Men are better at focus* single objective." Compl. ¶ 74 (emphasis added). At the meeting, District Managers were directed to select "[f]uture leaders" to create a "culture of execution." *Id.* Similarly, managers in Region 43 repeatedly justified disparate treatment because certain departments were "men's" departments, Compl. ¶¶ 75, 78, because certain jobs were "men's" jobs, Compl. ¶¶ 79-80, because men are the family breadwinners, Compl. ¶ 82, because women should stay home to cook "quality meals for their husbands," Compl. ¶ 83, because women "cannot perform their duties as well as men," Compl. ¶ 84, and because men are the "head of the household," Compl. ¶ 85.

- Evidence of Pay Discrimination: Managers repeatedly justified paying women less than men on the expressed belief that male employees had families to support. *See, e.g.*, Compl. ¶¶ 77, 85, 90. In one example, a female employee who transferred to a Cookeville, Tennessee Wal-Mart from a Sam's Club in Indiana was told by her manager that she had to take a $4.00 per hour pay cut because women do not make "that kind of money" in Tennessee since they are not the family breadwinners. Compl. ¶ 82.

- Evidence of Promotion Discrimination: One manager denied a promotion to a female associate based upon a belief that she would not return to Wal-Mart after her pregnancy, Compl. ¶ 76, while another manager denied a female associate a promotion because he believed a man could do a better job than a woman, Compl. ¶ 87.

Plaintiffs' complaint also alleges that Wal-Mart endorsed this bias against Region 43 women and ignored reports of discrimination against female employees. *See, e.g.*, Compl. ¶¶ 49, 61-66, 71-94. Further, Plaintiffs allege that Wal-Mart had no meaningful anti-discrimination policies, Compl. ¶¶ 95-98. Thus, Wal-Mart cannot rely on the existence of a mere written policy, when the *de facto* unwritten policy was one of discrimination.

Whether Rule 23 commonality can ultimately be satisfied will turn on disputed factual issues that cannot be resolved on a motion to dismiss. *See, e.g., Barghout v. Bayer Healthcare Pharm.*, No. 11-cv-1576 (DMC) (DAD), 2012 WL 1113973, at *9, 11 (D.N.J. Mar. 30, 2012) (finding arguments that "highly individualized and fact specific claims" precluded certification are inappropriate on a motion to dismiss). Accordingly, Plaintiffs have provided more than

sufficient factual allegations to support their claims that Wal-Mart, through its managers, followed a general policy of discrimination against its female employees in Region 43.

(4) *Refined Analysis of Workforce Patterns.* The Supreme Court faulted the statistical analysis the *Dukes* plaintiffs presented in support of their nationwide class because the national and regional disparities observed "may be attributable to only a small set of Wal-Mart stores, and cannot by itself establish the uniform, store-by-store disparity upon which plaintiffs' theory of commonality depends." *Dukes*, 131 S. Ct. at 2555. To address this, Plaintiffs' complaint alleges a pattern of disparities in pay and promotions adverse to women drawn from analyses conducted at the Store, District, and Regional levels to demonstrate a common practice consistent throughout Region 43.[14] Compl. ¶¶ 48-49, 59. These refined statistical analyses reflect that women in Region 43 have regularly been paid less on average than similarly-situated men, in each of the Districts, and in the vast majority of the stores, in Region 43. Compl. ¶ 48.

(5) *Plaintiffs Allege Common Questions.* Plaintiffs have thus alleged common questions. After discovery, Plaintiffs will, for example, seek to demonstrate that: (1) Wal-Mart provided common direction to managers within Region 43 to deny women the same pay and promotion opportunities as similarly-situated men; and/or (2) Wal-Mart implemented "a common mode of exercising discretion," which consistently disfavored women in pay and promotion decisions made within Region 43. *See Dukes*, 131 S. Ct. at 2554-55. Plaintiffs will rely on common evidence, such as evidence of statistically-significant disparities in pay and promotion rates between men and women, to establish a pattern or practice of discriminatory decisions. As the *Teamsters* Court explained, "at the liability stage of a pattern-or-practice trial

---

[14]     It is well established that plaintiffs need not detail in their complaint specific statistical results they will rely upon to establish their case on the merits. *See City of Memphis v. Wells Fargo Bank, N.A.*, 09-2857-STA, 2011 WL 1706756, at *12-13 (W.D. Tenn. May 4, 2011); *Tyler v. Univ. of Louisville*, No. 3:06-cv-151-R, 2006 WL 3412273, at *5 (W.D. Ky. Nov. 27, 2006); *Witte v. Rippe & Kingston Sys., Inc.*, 358 F. Supp. 2d 658, 669-70 (S.D. Ohio 2005).

21

the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." *Teamsters*, 431 U.S. at 360 n.46. Such suits "have more commonly involved proof of the expected result of a regularly followed discriminatory policy," *id.*, and "[s]tatistical analyses have served and will continue to serve an important role in cases in which the existence of discrimination is a disputed issue." *Id.* at 339 (citation and internal quotes omitted).[15]

> 2. Plaintiffs' disparate impact claims could satisfy commonality.

Furthermore, and again contrary to Wal-Mart's assertion, Mot. at 10, the Supreme Court's decision in *Dukes* did not foreclose the Plaintiffs' theories of disparate **impact** liability any more than it foreclosed Plaintiffs' disparate **treatment** allegations. Indeed, the Supreme Court reaffirmed that "an employer's undisciplined system of subjective decisionmaking" may still provide the basis for a Title VII disparate impact claim "in appropriate cases." *Dukes*, 131 S. Ct. at 2554 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990-91 (1988) (holding that undisciplined personnel decisions can be challenged under disparate impact theory of discrimination)). Not surprisingly, therefore, courts since *Dukes* have recognized that challenges to discretionary decisions may be made on a classwide basis where plaintiffs identify a common mode of exercising discretion.[16]

---

[15]     The Sixth Circuit has long recognized that statistical disparities may justify an inference of discriminatory motive in a class disparate treatment action. *See, e.g., E.E.O.C. v. Ball Corp.*, 661 F.2d 531, 537 (6th Cir. 1981) (The plaintiffs' "showing of statistical disparity in the promotions and transfer practices was sufficient by itself to establish a prima facie case of disparate treatment"); *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990).

[16]     *See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (reversing denial of certification of disparate impact class claims challenging centrally adopted practices that authorized discretionary decisionmaking); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 974 (9th Cir. 2011) (declining to hold that *Dukes* precludes certification of Title VII disparate impact claims challenging subjective decisionmaking and remanding to consider certification under 23(b)(3)); *Ellis v. Costco Wholesale Corp.*, No. C-04-3341 EMC, 2012 WL 4371817, at *25-28, 55-56 (N.D. Cal. Sept. 25, 2012) (finding a collective mode of exercising discretion occurred "under the rubric of a company-wide employment practice" despite subjective decisionmaking, and granting class certification); *Calibuso v. Bank of Am. Corp.*, No. 10-CV-1413 (JFB) (ETB), 2012 WL 4458404, at *15-16 (E.D.N.Y. Sept. 27, 2012) (finding that although lower level supervisors exercised some level of discretion, "*Dukes* did not foreclose all class action claims where there is a level of discretion afforded to individual managers and supervisors,"); *Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 2912741, at *2-3 (S.D.N.Y. July 17, 2012) (denying motion to strike class claims on grounds of commonality, finding that individual managers have

22

The *Dukes* Court rejected certification of the plaintiffs' disparate impact claims based on the record presented primarily for three reasons: (1) plaintiffs had not identified a "common mode of exercising discretion" across a national class, *id*. at 2554; (2) the national and regional statistical analyses plaintiffs offered were not sufficiently tied to the level at which the challenged decisions were made and, therefore, did not eliminate the possibility that pay disparities were attributed to a skewed subgroup of the stores, *id*. at 2555-56; and (3) plaintiffs had not identified a "specific employment practice" that was the subject of the disparate impact claim. *Id*. Plaintiffs' complaint addresses each of these concerns.

First, rather than simply challenging the "bare existence of delegated discretion provided to lower level managers," which the Court viewed as insufficient to establish commonality, *id*. at 2555-56, Plaintiffs' complaint challenges the role of a discrete group of managers in Region 43 who engaged in a "common mode of exercising discretion" and failed to ensure that pay and promotion decisions were based on job-related criteria, such as particular experience or documented performance. Compl. ¶¶ 47, 50, 55, 70. Plaintiffs' complaint also alleges that other policies are not job-related, such as Wal-Mart's failure to consistently post management job openings, Compl. ¶¶ 51-52, 54, 66, and its practice of expecting candidates for promotion into and within management to be willing to relocate their residences. Compl. ¶ 67. These allegations state claims amenable to certification on an appropriate record.

Second, the Supreme Court explained that the *Dukes* plaintiffs' statistical analyses, conducted nationally and by region, were insufficient to infer that the challenged practices adversely affected members throughout the nationwide class. *Dukes*, 131 S. Ct. at 2555. Plaintiffs' complaint here addresses this concern by relying on analyses conducted at a narrower

discretion, "but this, as the Supreme Court made clear in *Dukes*, does not doom a class, since this discretion would have been exercised under the rubric of a company-wide employment practice" plaintiffs had identified including a "tap on the shoulder" system for promotion).

23

and more refined level than that presented in support of the nationwide class, including promotion data analyzed according to the regional structures in which promotion decisions are made, as well as statistics reflecting pay disparities at the vast majority of stores. Compl. ¶¶ 48-49, 59-60.

Third, while in the nationwide action the Supreme Court found that plaintiffs had not identified a specific employment practice, Plaintiffs' complaint alleges that particular components of Wal-Mart's policy of declining to require managers to base pay and promotion decisions on job-related criteria are not capable of being analyzed separately. Therefore, the Civil Rights Act of 1991 relieves Plaintiffs from identifying a specific employment practice with greater particularity. Compl. ¶¶ 50, 70, 152. Here, Plaintiffs' complaint alleges Wal-Mart's failure to require managers to document the reasons for pay or promotion decisions or "maintain records which identify the impact of separate components" of its pay and promotion practices, may foreclose the ability to identify the particular employment practice that caused the observed disparities adverse to women. Compl. ¶ 70. As such, the Civil Rights Act of 1991 would, as Plaintiffs' complaint alleges, relieve Plaintiffs of the obligation to identify the specific facets of these practices that caused the disparities, thereby permitting analysis of the decisions as a single, unified employment practice. 42 U.S.C. § 2000e-2(k)(1)(B)(i); Compl. ¶ 152.

Since *Dukes*, the Sixth Circuit has continued to recognize that subjective decisionmaking may be challenged as a single practice where plaintiffs demonstrate "subjective decision-making" is incapable of separation for analysis. *Grant v. Metro. Gov't of Nashville & Davidson Cnty.*, 446 F. App'x. 737, 740 (6th Cir. 2011) (unpublished) (citing 42 U.S.C. § 2000e–2(k)(1)(B)(i) and *Phillips v. Cohen*, 400 F.3d 388, 398 (6th Cir. 2005)). Yet, ignoring this authority, and citing none of its own, Wal-Mart incorrectly asserts that the interpretive guidance

24

Congress provided for this provision limits its applicability to tests and specific evaluation criteria. *See* Mot. at 14-15. Indeed, the plain language of the statute contradicts Wal-Mart's reading. The Act states that where "the elements of a respondent's *decisionmaking process* are not capable of separation for analysis, the *decisionmaking process* may be analyzed as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i) (emphasis supplied). Nothing in the provision renders it inapplicable here.

Plaintiffs' complaint, therefore, presents several questions common to the class that arise from the disparate impact claims pled. Those questions include whether statistical disparities exist between men and women in pay and promotion rates, *see Phillips v. Gates*, 329 F. App'x 577, 581 (6th Cir. 2009) (noting that "'sufficiently substantial' statistical disparities raise an inference of disparate impact") (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994-95 (1988)), and whether the practice or practices giving rise to such disparities can be justified by business necessity. Even the allegation that the subjective decisionmaking practices are "not capable of separation for analysis" presents a question common to the class. Compl. ¶ 152. As such, Plaintiffs have alleged class claims that present common questions capable of adjudication "in one stroke." *Dukes*, 131 S. Ct. at 2551.

## III.    THE SINGLE FILING RULE APPLIES.

### A. The single filing rule permits absent class members who have not filed EEOC charges to rely on Plaintiffs' charges to exhaust their administrative remedies.

Wal-Mart asserts that the absent class members in this putative class action, most of whom have not filed EEOC charges, cannot rely on Plaintiffs' timely filed EEOC charges to exhaust their administrative remedies.[17] Mot. at 15. This claim should be rejected both because

---

[17]    Plaintiffs have each timely filed EEOC charges, upon which the putative class may rely. *See supra* at 3. All three Plaintiffs' charges extend back to the beginning of the class period of December 26, 1998 under the *American Pipe* tolling doctrine. *See* Section III.B, *infra*.

25

the Sixth Circuit has consistently applied the single filing rule to Title VII cases and because the only authority Wal-Mart cites for this proposition neither addresses Rule 23 class actions nor mentions the single filing rule's application to successive Rule 23 class actions.

The Sixth Circuit first recognized the "single filing rule" in the context of a Title VII case nearly twenty years ago. *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 839-840 (6th Cir. 1994). Under this rule, "where a substantially related non-filed claim arises out of the same time frame as a timely filed claim, the complainant need not satisfy Title VII's filing requirement to recover." *Id.* at 840; *see also E.E.O.C. v. Steven T. Cox, Inc.*, 3:99-1184, 2002 WL 32357095, at *2 (M.D. Tenn. July 19, 2002) ("The rationale behind the single filing rule is the belief that it would be wasteful for numerous employees with the same grievances to file identical complaints with the EEOC.").[18]

Since *Wilson Casket*, the Sixth Circuit has clarified that "a charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995).

The single filing rule applies to the putative class members here because, contrary to Wal-Mart's assertion, each member of the putative class asserts substantially related claims of region-wide gender discrimination arising out of the same time frame as Plaintiffs' charges. *Wilson Metal Casket*, 24 F.3d at 840. First, Plaintiffs were absent class members in the *Dukes* litigation, received *American Pipe* tolling for their individual claims back to December 26, 1998, and timely filed their charges of discrimination with the EEOC, all of which allege gender

---

[18] The single filing rule has been applied to a second class case, permitting reliance on a charge filed by a plaintiff in a prior class case. *See, e.g., Cronas v. Willis Group Holdings Ltd.*, 06 Civ. 15295, 2007 WL 2739769, at *2-3, *6-9 (S.D.N.Y. Sept. 17, 2007).

26

discrimination on a class-wide basis throughout Region 43. *See e.g., Marquis v. Tecumseh Prods. Co.*, 206 F.R.D. 132, 151 (E.D. Mich. 2002) (noting that individual class members need not file their own charges with the EEOC as long as there is "at least one representative charge, timely brought by one of the named plaintiffs, which adequately identifies the collective, class-wide nature of the claimed discrimination"). Second, the claims of each putative class member are substantially related to Plaintiffs' claims, as well as to the broader claim of Stephanie Odle, as they all seek to redress region-wide gender discrimination with respect to pay and promotions in Region 43. Third, Wal-Mart has been on notice of its potential liability for systemic discrimination against women on a nationwide basis, including in Region 43, since Stephanie Odle filed her charge in October 1999.

Applying the single filing rule here is also fully consistent with the rule's secondary purpose of facilitating conciliation. *See Laffey v. Nw. Airlines*, 567 F.2d 429, 472 (D.C. Cir. 1976); *Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003) (Posner, J.). Wal-Mart had ample opportunity to conciliate and resolve these claims during the past decade. Wal-Mart's failure to do so creates a strong inference that renewed efforts to conciliate class or individual claims would be futile and create an unnecessary burden on the parties and the EEOC. *See Horton*, 343 F.3d at 900. Indeed, Wal-Mart's contention that each putative class member must file her own charge directly contravenes the purpose of *American Pipe* tolling, and the single filing doctrine would "frustrate the principal function of the class suit," *American Pipe*, 414 U.S. at 551, and render Rule 23's opt-out procedure a nullity. *Cf. Crown*, 462 U.S. at 351 (Rule 23 and tolling rule of *American Pipe* were designed to avoid "a needless multiplicity of actions" and cannot be interpreted to render Rule 23's opt-out procedure meaningless).

Finally, the only case Wal-Mart cites for the proposition that "coattailing is wholly inappropriate in a subsequent class action where class certification has already been denied in a previous case due to a lack of commonality" is inapposite. Mot. at 15. In *Ruehl v. Viacom,* 500 F.3d 375 (3d Cir. 2007), the Third Circuit held that the single filing rule did not apply in individual actions after decertification of an ADEA collective action under § 216(b), but expressed "no opinion" on its applicability to a Rule 23 action. *Id.* at 390 n.19.

## B. The putative class may "coattail" on Stephanie Odle's EEOC charge to pursue class-wide claims dating back to December 26, 1998.

Wal-Mart's argument that the putative class may not "coattail" on Stephanie Odle's EEOC charge ignores the fact that Ms. Odle's claim, whether it was later dismissed or not, put Wal-Mart on notice of class-based, nationwide discrimination allegations extending back to December 26, 1998 and provided Wal-Mart with ample opportunity to conciliate the class claims.

The district court overseeing the continuation of the *Dukes* litigation succinctly addressed and dismissed this same argument from Wal-Mart. There, the court stated:

> This court ruled some ten years ago that absent class members and other named plaintiffs who had not filed individual administrative complaints could rely on the timely charge filed by Odle. At the time of that ruling, Odle had been dismissed as a named plaintiff for venue reasons but remained a member of the putative class.

> The purpose of the filing requirement is to give prompt notice to the employer of the nature and scope of potential liability and to allow the EEOC to attempt to conciliate with the wrongdoer rather than go to court. The Court's prior ruling reasoned that the notice provided to Wal-Mart by Odle's charge was not negated by her later dismissal as a named plaintiff; likewise, where other named plaintiffs filled in and continued to press the class claims in court, no conciliatory purpose would be served by adopting a rule encouraging abundant EEOC filings regarding class members' claims.

*Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 4329009, at *9 (N.D. Cal. Sept. 21, 2012).

For these same reasons, the Court should reject Wal-Mart's argument and, instead, should allow the putative class to pursue class claims in Region 43 dating back to December 26, 1998.

## IV.    ONLY NAMED PLAINTIFFS NEED SATISFY THE TITLE VII VENUE RULE.

"The law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." *Ring v. Roto-Rooter Servs. Co.*, 1:10-CV-179, 2010 WL 3825390, at *4 (S.D. Ohio Sept. 28, 2010) (quoting *Cook v. UBS Fin. Servs., Inc.*, No. 05 Civ. 8842, 2006 WL 760284, at *3, 6 n.2 (S.D.N.Y. Mar. 21, 2006)); *see also* Wright, Miller, Kane & Marcus, 7A Fed. Prac. & Proc. Civ. 3d § 1757 ("The general rule is that only the residence of the named parties is relevant for determining whether venue is proper.  Thus, intervening and absent class members need not independently satisfy the applicable venue provision.").  Courts uniformly follow this rule.  *See, e.g., Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 9-10 (D.D.C. 2003) (noting that the law is clear that courts look only to named plaintiffs in considering venue) (citations omitted); *Turnley v. Bank of Am. Inv. Servs. Inc.*, 576 F. Supp. 2d 204, 212 (D. Mass. 2008) (accord).[19]

Wal-Mart's Motion to Dismiss fails to address any of these cases.  Instead, Wal-Mart asks the Court to diverge from the consensus of its sister courts in reliance on a *single* patent case, *Sperberg v. Firestone Tire & Rubber Co.*, 61 F.R.D. 70, 73-77 (N.D. Ohio 1973), which applies the patent-specific venue statute, 28 U.S.C. § 1400(b), to a named representative of a defendant class.  This case, which addresses neither Title VII, nor its venue requirements, nor their application to absent members of a plaintiff class, bears no relation to the instant case and

---

[19]     *See, also, Valerino v. Holder*, Civ. No. 10-0123, 2011 WL 3918085, at *1 (D.V.I. Sept. 6, 2011); *Bell v. Lockheed Martin Corp.*, Civ. No. 08-6292, 2011 WL 1467365, at *8 (D.N.J. Apr. 18, 2011); *Amochaev v. Citigroup Global Mkts. Inc*., No. C-05-1298, 2007 WL 484778, at *1 (N.D. Cal. Feb. 12, 2007); 17 Moore's Federal Practice, § 110.07, at 110-48 (3d ed. 2010).

should not be relied upon to upend decades of settled law.[20]

**CONCLUSION**

For the above reasons, Wal-Mart's Motion must be denied in its entirety.


Dated: November 29, 2012            Respectfully submitted,


          /s/ Scott P. Tift
          George E. Barrett (BPR # 2672)
          David W. Garrison (BPR # 24968)
          Scott P. Tift (BPR # 27592)
          BARRETT JOHNSTON, LLC
          217 Second Avenue North
          Nashville, TN  37201
          Telephone: (615) 244-2202
          Facsimile: (615) 252-3798
          gbarrett@barrettjohnston.com
          dgarrison@barrettjohnston.com
          stift@barrettjohnston.com


          Joseph Sellers (admitted *pro hac vice*)
          Christine Webber (admitted *pro hac vice*)
          COHEN MILSTEIN SELLERS & TOLL, PLLC
          1100 New York Ave NW, Suite 500 West
          Washington, DC 20005
          Telephone: (202) 408-4600
          Facsimile: (202) 408-4699
          JSellers@cohenmilstein.com
          CWebber@cohenmilstein.com

---

[20]     Moreover, Wal-Mart itself has previously taken the position that in class actions, courts examine only the named parties to determine whether venue is proper, and the Northern District of California agreed. *See* Defendant's Motion to Dismiss, or in the alternative, Motion to Transfer Case at 5 (Dkt. 16), and Order Granting in Part and Denying in Part that Motion at 3-5 (Dkt. 36), *Dukes v. Wal-Mart Stores, Inc.*, No. 3:01-cv-02252-MJJ, (N.D. Cal.) (included in Appendix 1).  As the *Dukes* district court explained, "the status of absent class members [is] not material to [] venue," as absent class members do not personally appear before a court.  *Id.*  Judicial estoppel bars Wal-Mart's attempt to re-litigate this issue and change its position.  *See Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) ("The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'") (quoting *Teledyne Insus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

30

Brad Seligman (admitted *pro hac vice*)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone: (510) 845-3473
Facsimile: (510) 845-3645
BSeligman@impactfund.org

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of November, 2012, the foregoing *Plaintiffs' Response to Defendant's Motion to Dismiss in Part Plaintiffs' Complaint or in the Alternative to Strike Class Claims* was filed electronically with the Clerk of the Court and served via ECF on the following:

Theodore J. Boutrous, Jr.
Catherine Conway
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
tboutrous@gibsondunn.com
cconway@gibsondunn.com

Aubrey B. Harwell, Jr. (BPR # 2559)
Gerald D. Neenan (BPR # 6710)
NEAL & HARWELL
150 4th Avenue North, Suite 2000
Nashville, TN  37219-2498
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
aharwell@nealharwell.com
gneenan@nealharwell.com

/s/ Scott P. Tift
SCOTT P. TIFT
BARRETT JOHNSTON, LLC

31