# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CHERYL PHIPPS, BOBBI MILLER,     )
AND SHAWN GIBBONS, on behalf of   )
themselves and all others similarly situated,  )
                           )
     Plaintiffs,           )
                           )     **Case No. 3:12-cv-1009**
v.                          )     **Judge Aleta A. Trauger**
                           )
WAL-MART STORES, INC.,       )
                           )
     Defendant.          )

## MEMORANDUM

The defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), has filed a Motion to Dismiss in Part Plaintiffs' Complaint or in the Alternative to Strike Class Claims (Docket No. 19) ("Partial Motion to Dismiss"), to which the plaintiffs have filed a Response in opposition (Docket No. 35), and the defendants have filed a Reply (Docket No. 39). The court heard oral argument on the motion on January 30, 2013. For the reasons set forth herein, the motion will be granted and the court will dismiss the class claims with prejudice.

## BACKGROUND

I.   **Procedural History**

    A.    *Dukes* **(N.D. Cal.),** *Odle* **(N.D. Tex.),** *Love* **(S.D. Fla.), and** *Phipps* **(M.D. Tenn.)**[1]

---

[1]Without converting the pending motion into a motion for summary judgment, the court takes judicial notice of materials attached to or incorporated by reference into the Complaint in this case (Docket No. 1). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). In briefing the merits of Wal-Mart's Partial Motion to Dismiss, the parties have also filed and relied upon various materials from other similar lawsuits against Wal-Mart, including orders, opinions, pleadings, and legal briefs, of which this

1

This case has its origins in the federal district court for the Northern District of California (hereinafter "California district court"), where several named plaintiffs brought a putative national class action against Wal-Mart (*Dukes v. Wal-Mart Stores, Inc.* ("*Dukes*")) in June 2001 on behalf of themselves and others similarly situated, alleging that Wal-Mart had systematically discriminated against female employees nationwide with respect to pay and promotion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e).[2]

After extensive class discovery and briefing, the district court, pursuant to Fed. R. Civ. P. 23, certified a nationwide class consisting of all current and former female Wal-Mart employees who had worked at Wal-Mart during a specified time frame.[3] *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 188 (N.D. Cal. 2004). On appeal, after rehearing *en banc*, the Ninth Circuit substantially affirmed the district court's certification order. *See Dukes v. Wal-Mart Stores, Inc.*, 474 F.3d 1214 (9th Cir. 2007) (panel decision affirming in full); *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (*en banc* decision affirming in part and remanding in part).

---

court also takes judicial notice without converting the motion. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); *see also* Docket No. 28 in this case.

[2]To be more specific, the *Dukes* action was originally filed as a *pro se* complaint by Betty Dukes alleging California state law claims, which she subsequently amended to add a sex discrimination and retaliation claim under Title VII. *See Dukes v. Wal-Mart Stores, Inc.*, No. C01-2252 MJJ, 2001 WL 1902806, at *1 (N.D. Cal. Dec. 3, 2001). Thereafter, Dukes filed a First Amended Complaint that added five named plaintiffs, including Stephanie Odle, and formally asserted a putative nationwide class action against Wal-Mart for violations of Title VII. *Id.* The California district court then dismissed four of the named plaintiffs for failure to meet Title VII's special venue requirements (*id.* at *9-*10), after which it granted leave for the remaining plaintiffs to file further amended complaints that added several additional named plaintiffs to the case caption. *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-2252 MJJ, 2002 WL 32769185, at *1 (N.D. Cal. Sept. 9, 2002).

[3]For reasons not relevant here, the California district court limited the requested nationwide class in certain respects.

2

However, in a landmark decision concerning the standards of Rule 23, the United States Supreme Court reversed the Ninth Circuit, holding that, for purposes of certifying a nationwide class, the plaintiffs had failed to demonstrate the requisite commonality under Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, — U.S. — , 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).

Following the Supreme Court's decision in *Dukes*, the parties continued to litigate before the California district court. Pursuant to the United States Supreme Court decision in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), the California district court issued an opinion tolling the statute of limitations applicable to sex discrimination claims by the former class members, with respect to whom the court set deadlines for filing EEOC charges and/or lawsuits concerning their discrimination charges. (*See* Docket No. 1, Compl., Ex. 9, July 25, 2011 order.)

Following that order, certain former nationwide class members filed EEOC charges (to the extent that they had not done so already) and, ultimately, filed three putative class action lawsuits in other jurisdictions: (1) *Odle v. Wal-Mart Stores, Inc.*, No. 3:11-cv-2954-O (N.D. Tex. filed Oct. 28, 2011) ("*Odle*") (relating to "Wal-Mart's regions located in whole or in part in Texas");[4] (2) *Phipps, et al. v. Wal-Mart Stores, Inc.*, 3:12-cv-1009 (M.D. Tenn. filed Oct. 2,

---

[4]As explained in *Dukes*, 2002 WL 32769185, at *8-*9, Stephanie Odle had filed EEOC charges against Wal-Mart in 1999 and 2000, which collectively charged that Wal-Mart had engaged in a "pattern and practice of discrimination toward females in management positions" and that "[t]he 'glass ceiling' has been the common experience of all women throughout Wal-Mart who want to apply to advance within management, due to Wal-Mart's longstanding practice of not treating women equally." The California district court initially construed Odle's charges as placing Wal-Mart on notice of the nationwide Title VII claims, *see* 2012 WL 4329009, at *9 n.9 (["Having carefully considered the Odle charge, this Court finds that Wal-Mart was notified of the subject matter and the number of potential plaintiffs in the instant suit through Odle's charges . . . . "), a finding it reaffirmed after the Supreme Court decision in *Dukes*. *See Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 4329009, at *8-*9

3

2012) ("*Phipps*") [*i.e.*, this case]; and (3) *Love, et al. v. Wal-Mart Stores, Inc.*, No. 0:12-cv-61959-RNS (S.D. Fla. filed Oct. 4, 2012) ("*Love*"). These three lawsuits broadly share the following characteristics: (1) they were filed by named plaintiffs who purported to have complied with the deadlines set forth in the California district court's July 25, 2011 order concerning *American Pipe* tolling; (2) the named plaintiff(s) in each case filed a class action complaint on behalf of current and former employees within a specific geographic "Region" (or Regions) within Wal-Mart's nationwide network – *i.e.*, a geographic subclass of the nationwide class at issue in *Dukes*; (3) the Title VII claims in each case are broadly similar to those originally asserted in *Dukes*; (4) each complaint contains new Region-specific allegations; and (5) each complaint, in some respects, supplements and/or re-characterizes the allegations that the Supreme Court in *Dukes* had found were insufficient to satisfy Rule 23 as to a nationwide class.

Within the original *Dukes* action, certain California-based plaintiffs also filed a motion for leave to file a Fourth Amended Complaint, which sought to certify a class related only to Wal-Mart's "Region 41," a Region based largely in California. Wal-Mart sought to dismiss or strike the class claims on several grounds. On September 21, 2012, the California district court denied Wal-Mart's motion and permitted class discovery to proceed with respect to Region 41. *See Dukes*, 2012 WL 4329009, at *8-*9. In reaching this holding, the California district court found, *inter alia*, that (1) the Supreme Court's *Dukes* decision merely "rested not on a total rejection of plaintiffs' theories, but on the inadequacy of their proof" with regard to a nationwide class, *id.* at *5; (2) "Plaintiffs now bring a narrower class-action claim, which the Supreme Court has yet to

_____

(N.D. Cal. Sept. 21, 2012) (addressing whether Odle's EEOC charges provided sufficient notice relative to putative subclass of California-based plaintiffs).

4

consider and did not foreclose," *id.* at *6; (3) district courts traditionally retain continuing jurisdiction to revisit the class certification issue, even after a district court's certification of a broader class is overturned on appeal, *id.* at *4-*5; and (4) *American Pipe* tolling extended to the (narrowed) class claims, because the case was not a "new" action, but rather a continuation of the previously filed action.  *Id.* at *8.[5]

Accordingly, as of October 4, 2012 – the date the *Love* complaint was filed – four parallel putative class action lawsuits were proceeding against Wal-Mart, each asserting Region-specific gender discrimination claims under Title VII: (1) *Dukes* (N.D. Cal.), which was a continuation of the original nationwide class action lawsuit; (2) *Odle* (N.D. Tex.); (3) *Love* (S.D. Fl.); and (4) *Phipps* (M.D. Tenn.) – *i.e.*, this case.

## B.    *Phipps* Allegations

As discussed herein, because the court is constrained to find that the putative class members' claims are presumptively barred by the statute of limitations, the court need not address the sufficiency of the *Phipps* complaint under the Rule 23 standard.  However, the *Phipps* complaint allegations are relevant insofar as they demonstrate that the allegations in this lawsuit are substantively similar to those at issue in *Dukes* in certain important respects and different from the allegations in *Dukes* in others.

Broadly, like the complaint the Supreme Court considered in *Dukes*, the *Phipps* Complaint asserts that Wal-Mart systematically discriminated against women in hiring and

_____

[5]The California district court denied Wal-Mart's motion to reconsider and its motion to certify the issue for interlocutory appeal.  *See Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 6115536 (N.D. Cal. Dec. 10, 2012); *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2013 WL 149685 (N.D. Cal. Jan. 14, 2013).

5

promotion. The Complaint also contains some of the same allegations concerning national meetings that involved District Managers. Furthermore, the basic theory of the case is broadly similar to the theory of the case rejected in *Dukes*, albeit with customized allegations specific to Region 43. (*See* Docket No. 25, Conway Decl., Ex. 6 (chart comparing *Phipps* complaint to the plaintiffs' arguments to the Supreme Court in *Dukes*).

However, the Complaint also contains new Region-specific allegations that were not contained in the relevant *Dukes* complaint. The plaintiffs in this case allege that, within Region 43, Wal-Mart denied women (1) equal pay for hourly retail store positions and certain salaried management positions, and (2) equal opportunities for promotion to certain management track positions, in violation of Title VII.[6] In support of these claims, it contains the following types of Region 43-specific information:

- A description of the Region 43 structure, which includes scores of retail stores operated by Wal-Mart and, at least as of 2011, is subdivided into "Districts" of 6-8 stores each.

- Allegations concerning commonalities across retail stores within Region 43, including, *inter alia*, common job titles and job hierarchies, common departments, common management structure in each store, and common District Manager roles in the approval of compensation and promotion decisions in each store.

- Allegations concerning the Region 43 hierarchy, including the roles of a single Regional Vice President and a single Regional Personnel Manager.

- Allegations concerning common forms of pay discrimination within Region 43.

- Anecdotal information relating to the experiences of various employees

---

[6]The Complaint asserts claims under Title VII on the basis that Wal-Mart has engaged in a "pattern or practice of gender discrimination" and/or that Wal-Mart's policies have had a disparate impact not justified by business necessity.

6

within Region 43 that reflect racial stereotyping by supervisors at various levels within Region 43, as well as various examples of discrimination in pay and promotion at retail stores within Region 43.

The Complaint identifies two putative subclasses: (1) an "Injunctive Relief Class" consisting of all women who are currently employed, or will be employed, at any Wal-Mart retail store in Region 43; and (2) a "Monetary Relief Class" consisting of all women employed at any Wal-Mart retail store in Region 43 at any time beginning on December 26, 1998 who have been, or may be, subject to discrimination in pay or promotion for certain job titles. (Compl. ¶ 15.)[7] For ease of reference only, this court will refer to these subclasses collectively as the "Region 43 class" or "Region 43 subclass" of the former nationwide class. Also for ease of reference, the court will at times refer to a follow-on lawsuit seeking to certify a subclass of a previously rejected broader class – such as *Odle*, *Love*, and this case – as a "follow-on subclass action."

### C.    Recent Relevant Developments in the Sister Subclass Actions

On October 15, 2012, the Texas district court issued an opinion in *Odle* dismissing the class allegations and dismissing plaintiff Odle's individual claim.[8] *Odle v. Wal-Mart Stores Inc.*, No. 3:11-CV-2954-O, 2012 WL 5292957 (N.D. Tex. Oct. 15, 2012). In most relevant part, the Texas district court held that, under *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985), which it construed as controlling precedent, it was constrained to find

---

[7]All three named plaintiffs seek to be named as class representatives for the Monetary Relief Class, while only Gibbons seeks to be named as the class representative for the Injunctive Relief class. (*See* Compl. at p. 33, Prayer for Relief ¶ 1.)

[8]In the original class action complaint in *Odle*, Stephanie Odle was the only named plaintiff. Before Wal-Mart answered that complaint, Odle amended the complaint to add six additional named plaintiffs. As this court construes the Texas district court's October 15, 2012 opinion, the court permitted the individual claims of the remaining named plaintiffs in that case to proceed.

7

that the putative class members did not benefit from *American Pipe* tolling of the statute of limitations retroactive to the *Dukes* lawsuit. *Id.* at *9. In reaching this holding, the Texas district court analyzed whether the United States Supreme Court decisions in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, — U.S. —, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) and *Smith v. Bayer*, — U.S. —, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011), impacted *Salazar-Calderon* in such a way as to implicitly overrule it. *Odle*, 2012 WL 5292957, at *6-*9. The court narrowly construed the holdings in *Shady Grove* and *Smith* and found that the *Odle* plaintiffs had not met the high threshold to justify ignoring otherwise controlling Fifth Circuit precedent. *Id.* On January 7, 2013, the *Odle* court granted the plaintiffs' motion to certify the issue of *American Pipe* tolling to the Fifth Circuit for immediate interlocutory review. *See Odle v. Wal-Mart Stores Inc.*, No. 3:11-CV-2954-O, 2013 WL 66035 (N.D. Tex. Jan. 7, 2013).

In the narrowed *Dukes* action, the court has set a future date for the plaintiffs to submit a motion for class certification, which, as of the date of this opinion, has not yet been filed.

In *Love*, Wal-Mart has filed a Motion to Dismiss Class Allegations, which remains pending before the Florida district court.

### D. The Parties' Arguments[9]

---

[9]In support of its Partial Motion to Dismiss, Wal-Mart has filed the following materials: (1) a Memorandum of Law (Docket No. 20) with an associated Appendix of unreported decisions cited therein (Docket No. 21); (2) the Declaration of Catherine Conway (Docket No. 25); (3) a Reply brief (Docket No. 39) with an associated Appendix of unpublished cases cited therein (Docket No. 40; refiled at Docket No. 42); and (4) a second Declaration of Catherine Conway (Docket No. 41). In support of their opposition to the Partial Motion to Dismiss, the plaintiffs have filed the following materials: (1) a Memorandum of Law (Docket No. 35) with an associated Appendix of unpublished decisions cited therein (Docket No. 36); (2) a Notice of Filing of the *Odle* court's January 7, 2013 certification order (Docket No. 43); and (3) a Notice of Filing a copy of *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703 (N.D. Ohio 2010). The Complaint also attaches the EEOC charges filed by, and notice of right to sue issued

8

Here, Wal-Mart's Partial Motion to Dismiss concerns only the viability of the putative class claims, not the named plaintiffs' individual claims. Wal-Mart argues that the class claims are not viable for a host of reasons, including, *inter alia*, that (1) the putative class members' claims are time-barred because, under *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988), *American Pipe* tolling does not extend to follow-on class actions filed by members of a former putative class; (2) the putative class members who have not yet filed EEOC charges cannot "coattail" on otherwise timely charges filed by the named plaintiffs;[10] (3) the Complaint allegations do not satisfy the Rule 23(a)(2) deficiencies identified by the Supreme Court in *Dukes*;[11] and (4) the proposed class violates Title VII's particularized venue requirements. In response, the plaintiffs argue that *Andrews* is no longer good law, that the putative class members should benefit from coattailling, that the Complaint allegations establish a plausible basis that the putative Region 43 class will meet the *Dukes* Rule 23 standard (thereby justifying class discovery), and that only the named plaintiffs must meet Title VII's special venue requirements, which plaintiffs argue they do.

_____

to, each named plaintiff in this case, along with the California District Court's July 25, 2011 order setting forth the limitations deadlines for the former members of the putative nationwide class.

[10]Wal-Mart also argues that the plaintiffs have not identified any timely filed charge on which they can coattail. The dispute essentially concerns whether the plaintiffs may coattail on the administrative charge filed by Stephanie Odle in October 1999. Although the court need not reach the issue, resolving it would involve a sensitive analysis, particularly where the Texas district court recently dismissed Odle's individual claim as time-barred. *See Odle*, 2012 WL 5292957, at *10.

[11]Wal-Mart has only challenged the sufficiency of the Complaint allegations as they relate to Rule 23(a)(2)'s "commonality" requirement. However, Wal-Mart has expressly reserved the right to challenge whether the asserted class claims satisfy any of the other Rule 23 requirements.

9

Were it not for the *American Pipe* tolling issue, the court would address the viability of the Region 43 class allegations – under the relevant Rule 12 legal standard set forth in the next section – and would be disinclined to dismiss those allegations without class discovery and the benefit of a fully briefed Rule 23 motion supported by material evidence. However, for the reasons described herein, the court is constrained by *Andrews* to find that the claims of the putative class members do not benefit from *American Pipe* tolling and, therefore, are time-barred. Accordingly, the court need not reach the merits of the class allegations, whether under the Rule 12 standard now or, if class discovery were justified, the Rule 23 standard later.

Nevertheless, in light of more recent jurisprudential trends, the court believes that *Andrews* merits reconsideration – or at least refinement – to permit follow-on subclass actions to benefit from *American Pipe* tolling under appropriate circumstances, such as those presented here.

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove

10

the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

Rule 23 confers "substantial discretion" on the trial court to decide whether to certify and how to manage a proposed class. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 643 (6th Cir. 2006). A party seeking class certification must first meet all four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – before a class action can be certified. Fed. R. Civ. P. 23(a). "Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011). The Sixth Circuit has recognized that, where there is no reasonable prospect that discovery or additional time would assist the named plaintiffs in demonstrating the potential viability of a proposed class, a court may strike class allegations pursuant to Rule 23(c)(1)(A) and Rule 12(f). *See Pilgrim*, 660 F.3d at 949 (affirming district court dismissal of class claims on the pleadings, where putative class member's claims were "governed by different States' laws, a largely legal determination, and no proffered or

11

potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification"). Nevertheless, absent such a showing, courts will typically address the viability of a class in the context of a fully briefed class certification motion following class discovery. *See, e.g., Allen v. Anderson Windows, Inc.*, — F. Supp. 2d — , 2012 WL 6644387, *21 (S.D. Ohio Dec. 20, 2012).

## ANALYSIS

I. **Early Supreme Court Tolling Cases: *American Pipe* and *Crown, Cork***

In its 1974 decision in *American Pipe*, the Supreme Court articulated a tolling doctrine that has come to be referred to as "*American Pipe* tolling." The threshold question presented here is whether *American Pipe* tolling permits the named plaintiffs in this case to pursue classwide relief on behalf of a subclass, after the Supreme Court in *Dukes* held that certification of the broader class was not appropriate. If they are not, the claims of any putative class members who otherwise failed to file EEOC charges in compliance with the California district court's July 25, 2011 order are time-barred.

A. ***American Pipe***

The *American Pipe* decision addressed the application of the then-recent 1966 amendments to Fed. R. Civ. P. 23. 414 U.S. at 545-46.[12] In *American Pipe*, the state of Utah had

---

[12]Prior to those amendments, Rule 23 did not contain any mechanism for certifying a class before final judgment, which essentially permitted putative class members to await trial developments (or even final judgment) before deciding whether to join the class. *Id.* at 546-48. However, in 1966, Congress amended Rule 23 to require a district court to make a decision on the class certification issue "[a]s soon as practicable after the commencement" of the putative class action and, if certification was granted, to timely notify the class members of their option to "opt out" of the class. *Id.* at 547-49. Thus, at an early stage in the litigation, putative class members of a certified class would be required to opt out (and thereby not be bound by a final judgment and/or share in any recovery) or to remain in the class (and thereby be bound by a final

12

filed a putative class action 11 days before the relevant limitations period expired on a set of price-rigging claims under the federal Sherman Act. *Id.* at 541-42. After consolidation into MDL proceedings, the MDL court held that the suit could not be maintained as a class action because joinder of the putative class members with potentially viable claims was practicable and, therefore, the proposed class did not satisfy Rule 23(a)(1). *Id.* at 541-43. Eight days after that decision by the MDL court, several members of the former putative class filed motions to intervene in the case under Rule 24, *id.* at 543-44, but the MDL court found that Utah's previous lawsuit had not tolled the statute of limitations as to any putative class members, meaning that the statute of limitations had run 11 days after the lawsuit was filed. *Id.* at 544.

On appeal, the Supreme Court found that the trial court had erred in refusing to toll the putative class members' claims during the pendency of Utah's certification motion. The Court expressed concern about frustrating the purposes of Rule 23, particularly where the district court had found that the substantive factors other than numerosity (including commonality, typicality, and adequacy of representation) had been met:

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. In cases such as this one, where the determination to disallow the class action was made upon considerations that may vary with such subtle factors as experience with prior similar litigation or the current status of a court's docket, a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.

*Id.* at 553-54. Thus, the Court was "convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute

_____

judgment and/or share in any recovery). *Id.* at 549.

13

of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554.

Significantly, the Court also rejected the defendants' argument that, because the Sherman Act specified a one-year statute of limitations, tolling the statute of limitations as to the putative class members effectively deprived the defendants of a substantive right conferred by the Sherman Act, in violation of the Rules Enabling Act, 28 U.S.C. § 2072, which provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." *See id.* at 556-559. The Court found that "the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose." *Id.* at 559. Applying these principles, the Court found that, because the original statute of limitations had been tolled as to the putative class members with 11 days to spare, the former putative class members who filed motions to intervene within 11 days of the trial court's ruling denying class certification had done so within the limitations period. *Id.*

In a short concurring opinion, Justice Blackmun expressed concern that the *American Pipe* tolling rule could be abused. *See id.* at 561-62 (Blackmun, J., concurring). He stated that the rule "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." *Id.* at 561. He stressed that "the purpose of statutes of limitations is to prevent surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* (internal quotation marks omitted). He was comforted by the fact that intervenors as of right necessarily "have an

14

interest relating to the property or transaction" that "invariably will concern the same evidence, memories, and witnesses as the subject matter of the original class suit," with respect to which "the defendant will not be prejudiced by later intervention, should class relief be denied." *Id.* at 562. On the other hand, he cautioned district courts to exercise discretion before admitting permissive intervenors after class certification is denied, based on whether their intervention would force the defendants to defend claims with respect to which they had "no prior notice." *Id.*

### B. *Crown, Cork & Seal*

In *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), the Court extended the *American Pipe* tolling rule to former class members who file individual actions after the denial of class certification. There, Parker, a black male employee, had filed an EEOC race discrimination charge against his employer. *Id.* at 347. While that charge was pending, two other employees of the same employer filed a putative class action lawsuit in federal district court ("*Pendleton*"), which included Parker as a member of the putative class. *Id.* Parker received a right to sue letter from the EEOC, but withheld filing suit pending the *Pendleton* court's decision whether to certify the case as a class action. Two years later, the *Pendleton* court declined to certify the class on the basis that it failed to meet Rule 23's typicality, numerosity, and adequacy of representation requirements. *Id.* at 347-48. The *Pendleton* court permitted the named plaintiffs to pursue their individual claims. Rather than moving to intervene in *Pendleton*, Parker filed a separate action ("*Parker*") in federal court on his own behalf (in the same district) within 90 days of that denial, in compliance with the statutory 90-day limitations period to file suit after receiving a right to sue letter. Parker then moved the *Parker* court to consolidate his individual case with the *Pendleton* case. *Id.* at 348. The *Parker* court denied the motion to consolidate and granted judgment to the employer, finding that Parker's claims were

15

time-barred because, following the denial of class certification, *American Pipe* tolling was limited only to intervenors, not individual actions. *Id.*

On appeal, the Supreme Court found that the district court had interpreted *American Pipe* too narrowly. "While *American Pipe* concerned only intervenors, we conclude that the holding of that case is not to be read so narrowly. The filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors." *Id.* (citing *Am. Pipe*, 414 U.S. at 554). In support of this finding, the Court cited the following policy rationale for extending *American Pipe* tolling to former putative class members who file individual actions after the denial of class certification:

> The *American Pipe* Court recognized that unless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights. Only by intervening or taking other action prior to the running of the statute of limitations would they be able to ensure that their rights would not be lost in the event that class certification was denied. Much the same inefficiencies would ensure if *American Pipe*'s tolling rule were limited to permitting putative class members to intervene after the denial of class certification. There are many reasons why a class member, after the denial of class certification, might prefer to bring an individual suit rather than intervene. The forum in which the class action is pending might be an inconvenient one, for example, or the class member might not wish to share control over the litigation with other plaintiffs once the economies of a class action were no longer available. Moreover, permission to intervene might be refused for reasons wholly unrelated to the merits of the claim. *A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations.* The result would be a needless multiplicity of actions – precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id.* at 350-51 (emphasis added).

The Court also expounded upon its previous finding in *American Pipe* that tolling the statute of limitations for putative class members did not frustrate the purposes served by statutes

of limitations:

> Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a class action is commenced. Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; *Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims*. And a class complaint notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise*, regardless of the method class members choose to enforce their rights upon denial of class certification.*

*Id.* at 352-53 (emphases added) (internal citations and quotations omitted). Furthermore, the Court indicated that the use of other procedural means to handle complex actions following the denial of class certification would be appropriate:

> Restricting the rule of *American Pipe* to intervenors might reduce the number of individual lawsuits filed against a particular defendant but, as discussed above, this decrease in litigation would be counterbalanced by an increase in protective filings in all class actions. Moreover, although a defendant may prefer not to defend against multiple actions in multiple forums once a class has been decertified, this is not an interest that statutes of limitations are designed to protect. Other avenues exist by which the burdens of multiple lawsuits may be avoided; the defendant may seek consolidation in appropriate cases, see Fed. Civ. P. 42; 28 U.S.C. § 1404 (change of venue), and multidistrict proceedings may be available if suits have been brought in different jurisdictions, see 28 U.S.C. § 1407.

*Id.* at 353. Thus, ruling on the case before it, the Court held that, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 354.

Justice Powell, joined by Justices Rehnquist and O'Connor, issued a short concurring opinion that expressed concerns about the application of the *American Pipe* rule in future class

action litigation. *Id.* at 354-55 (Powell, J., concurring). Justice Powell stated that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse." *Id.* at 354. Accordingly, "[t]he rule should not be read [] as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Id.* Justice Powell noted that a rationale behind *American Pipe* was that a class action put defendants on notice within the statutory limitations period of the substantive claims being brought against them, along with the generic identities of the potential plaintiffs who could participate in the action. *Id.* at 354-55. However, Justice Powell advised courts as follows:

> . . . [T]o make certain [] that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit . . . [,] when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit, so that the defendant will not be prejudiced. Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.

*Id.* (internal citations and quotation marks omitted). Accordingly, as with Justice Blackmun's concurrence in *American Pipe*, Justice Powell expressed concern that *American Pipe* tolling could be abused to force defendants to defend otherwise untimely claims for which they had never been put on notice. That is, as this court construes Justice Powell's concurrence, he seemed to fear that, after a class was decertified, a district court might permit a putative class member to file an otherwise untimely lawsuit that included causes of action that were not at issue in the prior putative class action.

Following *American Pipe* and *Crown, Cork*, it was clear that the statute of limitations would remain tolled for putative class members who, following decertification, timely sought to file their own individual suits or to intervene as plaintiffs in the pending action. Furthermore,

18

*Crown, Cork* suggested that, following the refusal to certify a class, parties could later seek to consolidate follow-on individual lawsuits under the federal rules and/or MDL procedures. However, neither *American Pipe* nor *Crown, Cork* addressed whether or under what circumstances *American Pipe* tolling could extend to former putative class members who file a follow-on *class action*.

## II.   Pre-*Andrews* Circuit Court Decisions

Prior to the Sixth Circuit decision in *Andrews v. Orr*, 851 F.2d 146, 149 (1988), three circuits addressed the question of extending *American Pipe* tolling to follow-action class actions in particularized procedural contexts. *See Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1349-1351 (5th Cir. 1985); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987); *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987). Because the Sixth Circuit relied on these three cases in reaching its holding in *Andrews*, the court will analyze these cases in detail.

### A.   *Salazar-Calderon* (Fifth Circuit)

In *Salazar-Calderon*, the Fifth Circuit considered whether, after class certification was denied on the merits in an initial case, the statute of limitations would be tolled on the putative class members' individual claims during the pendency of a second action seeking to relitigate the same class certification issue.

In the lower courts, a set of plaintiffs had originally filed one class action in a federal district court in El Paso ("*Lara*") in April 1979, seeking to represent a class of 809 migrant farm workers, but the El Paso court denied the named plaintiffs' motion to certify that putative class on March 30, 1981. *Id.* at 1349-50. Following the El Paso court's class certification denial in *Lara*, 251 members of the former putative class filed two parallel lawsuits in a district court in Pecos

("*Salazar*" and "*Primero*"), both of which sought to certify the *same* class of 809 workers that the El Paso court had rejected in *Lara*.[13]  *Id.* at 1350.  The district court in *Salazar* and *Primero* denied class certification in both cases on February 2, 1982, on essentially the same grounds as the *Lara* court.  *Id.* at 1350.  Thereafter, 235 additional members of the former putative class  – *i.e.*, former members of the *Lara* and *Salazar/Primero* putative classes who had not filed as named plaintiffs in either case – sought to intervene in the *Salazar/Primero* cases, but were denied.  *Id.*  Those 235 individuals then jointly filed a separate action ("*Zuniga*") in the Pecos court, alleging the same two causes of action at issue in *Salazar* and *Primero*, apparently on an individual basis.  *Id.*  All four cases (*Lara, Salazar, Primero*, and *Zuniga*), were consolidated before the *Pecos* court.

The *Zuniga* plaintiffs' individual claims were governed by a two-year statute of limitations.  *Id* at 1351.  The district court reasoned that these plaintiffs, who originally were putative class members in *Lara*, had benefitted from *American Pipe* tolling from the date *Lara* was filed to the date the *Lara* court denied class certification – approximately two years.  *Id.*  Even with the benefit of tolling for two years, the statute of limitations apparently expired at some point between the date on which *Salazar* and *Primero* were filed and the date *Zuniga* was filed.  The Pecos court held that no additional *American Pipe/Crown* tolling applied to the *Zuniga* plaintiffs' individual claims and, therefore, dismissed them as time-barred.  *Id.*

On appeal, the Fifth Circuit found that the Pecos court was correct in denying class certification on the merits in *Salazar/Primero*.  *Id.* at 1350.  As to *Zuniga*, the *Zuniga* plaintiffs argued that their claims were timely because, in addition to extending *American Pipe* tolling

---

[13]The only difference between *Salazar* and *Primero* was that *Salazar* asserted a federal statutory claim, while *Primero* asserted a state law contract claim.

relative to *Lara*, the district court should have tolled their individual claims between the date *Salazar* and *Primero* were filed and the date on which the Pecos court denied certification in *Salazar/Primero*. That is, the *Zuniga* plaintiffs argued that they benefitted from *American Pipe* tolling not just from the *Lara* action (*i.e.*, through the date of class certification denial by the El Paso court in *Lara*), but also from the *Salazar* and *Primero* actions, which sought to relitigate before the Pecos court the same class certification issue that the El Paso court had rejected in *Lara*. That is, the plaintiffs argued that *American Pipe* tolling applied "not only for the first certification petition filed but also for any subsequent petitions involving the same class." *Id.* at 1351.

Under these circumstances, the Fifth Circuit rejected the *Zuniga* plaintiffs' argument, finding that the *Zuniga* plaintiffs only benefitted from *American Pipe* tolling relative to the *Lara* action. The court was "not persuaded" that *American Pipe* tolling applied "not only for the first class certification petition filed but also for any subsequent petitions involving the same class." *Id.* at 1351. The court observed that the plaintiffs had not cited to any authority for the position that they could "piggyback one class action onto another and thus toll the statute of limitations indefinitely." *Id.* The court also cited to Justice Powell's concurrence in *American Pipe* for the proposition that "the tolling rule [in class actions] is a generous one, inviting abuse," (brackets in original), concluding that, "to construe the rule as plaintiffs would have us [do] presents just such dangers." *Id.* Accordingly, the Fifth Circuit held that the individual *Zuniga* plaintiffs did not get a further extension of the statute of limitations from the *Salazar/Primero* lawsuit. *Id.*

Notably, however, the Fifth Circuit did not suggest that the *Salazar/Primero* plaintiffs – *i.e.*, the follow on class-actions following denial of class certification in *Lara* – should not have benefitted from tolling after *Lara*. Indeed, the district court and the Fifth Circuit both addressed

21

the *Salazar/Primero* class certification petitions on the merits.  Moreover, the Fifth Circuit reiterated that the district court in *Salazar/Primero* could revisit the class certification issue on remand: "Although we affirm the district court's refusal to certify the class, *we in no way restrict the court's discretion to change that decision on remand.*  It is well-settled that decisions on class certification are always interlocutory."  *Id.* at 1350 (emphasis added).

Accordingly, as this court construes *Salazar-Primero*, the relevant issue decided by the Fifth Circuit was relatively narrow.  The court seems to have found that: (1) where a district court had held that a particular class did not meet the requirements of Rule 23, former class members could, within the applicable *American Pipe* tolling period, file a second putative class action seeking to relitigate essentially the same class; but (2) remaining former class members could not utilize this second action as an excuse to benefit from *further* tolling of their individual claims.

### B.  *Korwek v. Hunt* (Second Circuit)

Following *Salazar/Calderon*, the next circuit to address the boundaries of *American Pipe* tolling was the Second Circuit in *Korwek v. Hunt*, 827 F.2d 874 (1987).  Like *Salazar-Calderon*, *Korwek* involved a particularized set of circumstances that influenced the case's holding.

*Korwek* concerned allegations that several defendants had conspired to manipulate the silver futures market.  *Id.* at 875.  A named plaintiff, Ronald Gordon, had initially filed a putative class action against these defendants in *Gordon v. Hunt* ("*Gordon*"), in which he moved to certify a broad class.  *Id.*  The district court, however, certified a "drastically" narrower class than Gordon had sought.  *Id*. at 875-76.  Three months after that decision, Gordon moved to expand the class (essentially arguing for the same class the court had rejected), and several putative class members simultaneously filed a motion to intervene.  *Id.* at 876.  The district court in *Gordon* construed Gordon as improperly seeking to relitigate the court's previous denial of class

certification with respect to the broader class and also denied the putative intervenors' motion to intervene, informing them that they could file their own "plenary suit." *Id.* at 876. Three days after the district court contemporaneously issued these decisions, the disappointed putative intervenors filed a separate lawsuit, *Korwek v. Hunt*, asserting "claims virtually identical to those previously asserted in *Gordon v. Hunt*." *Id.* The new lawsuit named nearly all of the same defendants as *Gordon* and sought to certify a nearly identical class to the broad class that the *Gordon* court had previously rejected and refused to reconsider. *Id.* In relevant part, the district court in *Korwek* found that the pendency of the *Gordon* action tolled the statute of limitations on the *Korwek* plaintiffs' individual claims, but did not toll the limitations period for the class claims. *Id.*

On appeal, the Second Circuit stated that "*[t]he specific question presented on this appeal is a narrow one*: whether the tolling rule established by the Supreme Court in its seminal decision, *American Pipe* [], applies to permit the filing by putative class members of a subsequent *class* action nearly identical in scope to the original class action which was denied certification." *Id.* at 876 (internal citation omitted) (emphasis in original). The Second Circuit appropriately observed that *Salazar-Calderon* and several district court decisions each "arose in a slightly different procedural context, making them distinguishable from each other . . . ." *Id.* at 879.[14]

_____

[14]*Korwek* relies in part on the district court decision in *Andrews v. Orr*, 614 F. Supp. 689 (S.D. Ohio 1985), which the Sixth Circuit ultimately vacated on appeal in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). Although the Second Circuit stated that the district court in *Andrews* had granted certification to "a more limited class" than that requested by the original class representative, *see Korwek*, 827 F.2d at 879, no class of any kind was certified in *Andrews* or its predecessor putative class action, as explained herein. Notably, based on its apparent misinterpretation of the procedural history preceding the *Andrews* district court decision, the Second Circuit in *Korwek* characterized *Andrews* as "the most closely analogous" case to the situation presented in *Korwek*. *Korwek*, 827 F.2d at 879. Under this reading of *Andrews*, the Second Circuit appears to have been persuaded by the district court's statement in *Andrews* that

Nevertheless, the Second Circuit found that these cases reflected an "oft-repeated refrain which echoes through these cases []: the tolling rule established by *American Pipe*, and expanded upon by *Crown, Cork*, was not intended to be applied to suspend the running of the statute of limitations for class action suits filed after a *definitive determination of class certification*; such an application of the rule would be inimical to the purposes behind statutes of limitations and the class action procedure." *Id.* at 879 (emphasis added).

Also, in another part of the *Korwek* opinion, the Second Circuit characterized *Salazar-Calderon* (in addition to several district court decisions) as holding that "the *American Pipe* tolling rule does not apply to permit putative class members to a file a subsequent class action." *Id*. at 878. As discussed above, this court at least construes *Salazar-Calderon* as articulating a more case-specific principle than that for which *Korwek* cited it. Notwithstanding its potential over-characterization of the holding in *Salazar-Calderon*, the remainder of the *Korwek* opinion makes clear that the Second Circuit's holding was narrower than the broad language might otherwise indicate.

At any rate, applying the principle that *American Pipe* tolling should not apply to a follow-on action on behalf of the same class that a previous court had definitively rejected on the merits under Rule 23, the *Korwek* court reasoned as follows:

> Appellants filed a complaint alleging class claims identical theoretically and temporally to those raised in a previously filed class action suit which was denied class certification mainly because of overwhelming manageability difficulties. Appellants ignored the district court's express finding that the original action was unwieldy, first when attempting to intervene and expand the *Gordon* class, and again when filing [] *what was essentially a duplicate of the original complaint* [in *Gordon*]. The Supreme Court in *American Pipe* and *Crown, Cork* certainly did

"'perpetual tolling of the statute of limitations by the filing of repeated class actions' is impermissible." *Id.* at 879 (quoting *Andrews*, 614 F. Supp. at 692).

not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing *new but repetitive complaints*. While appellants are correct in noting that appellees were apprised fully of the pending adverse claims, this fact alone is insufficient to justify filing a class action of a nature already determined to be unmanageable.

*Id.* (emphases added).

Finally, in language that is crucial to the question presented in the instant case, the Second Circuit explicitly stated that "it leaves for another day the question of whether *the filing of a potential proper subclass would be entitled to tolling under* American Pipe." *Id.* (emphasis added). Thus, the Second Circuit explicitly left open the possibility that, if certification of a broad class were denied in Putative Class Action 1, former putative class members could file Putative Class Action 2 and seek certification of a "proper subclass" – *i.e.*, a narrower class – than that rejected in Putative Class Action 1.

### C. *Robbin* (**Ninth Circuit**)

The last circuit to address the potential extension of *American Pipe* tolling to follow-on class actions before the Sixth Circuit *Andrews* decision was the Ninth Circuit in *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987). There, a set of named plaintiffs had originally filed a putative class action in federal district court in New York ("*Schlesinger*"), alleging securities fraud claims against two defendants. *Id.* at 213-14. The New York district court denied class certification and the matter was voluntarily dismissed. *Id.* at 214. Over two years later, Leon Robbin, a former putative class member from the initial lawsuit, filed a class action complaint in the Central District of California, alleging the same class claims that the *Schlesinger* court had rejected. *Id.*

With limited analysis, the *Robbin* court over-characterized the *Salazar-Calderon* and

25

*Korwek* decisions as "squarely rejecting" the proposition that "the tolling doctrines of *American Pipe* and *Crown, Cork* should be extended to include class members who file subsequent class actions." *Id.* at 214 (emphasis added). The *Robbin* court purported to "agree with the Second Circuit that to extend tolling to [subsequent] class actions 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options.'" *Id.* (quoting *Korwek*, 827 F.2d at 879). The court then held that Robbin's class claims, which asserted the same class that had previously been rejected by the district court in New York, did not benefit from tolling relative to *Schlesinger* and, therefore, were time-barred. *Id.* at 214.

In sum, although *Salazar-Calderon*, *Korwek*, and *Robbin* each contained some broad language concerning the application of *American Pipe* to follow-on class actions, they arose in specific procedural contexts that led to relatively narrow case-specific holdings. In *Salazar-Calderon*, the Fifth Circuit held that, after an initial class certification denial, the *Zuniga* plaintiffs were not entitled to wait for the results of separate follow-on class actions (*Salazar/Primero*) before filing individual lawsuits. In *Korwek* and *Robbins*, the Second Circuit and Ninth Circuit held that, after an initial denial of class certification, putative class members could not benefit from *American Pipe* tolling for class claims relating to the *same class* that the previous court had found did not satisfy Rule 23. Under the specific circumstances presented in each of these cases, the circuit courts understandably viewed the follow-on actions as potentially seeking to abuse the *American Pipe* tolling rule.

Moreover, in *Salazar-Calderon*, the Fifth Circuit specifically permitted the district court on remand to revisit its denial of class certification in *Salazar* and *Primero*, which were follow-on putative class actions on behalf of the same class that the *Lara* court had previously rejected on the merits. Similarly, the Second Circuit in *Korwek* explicitly "left for another day" whether a

26

follow-on class action asserting a subclass could benefit from *American Pipe* tolling.

    **D.**     ***Andrews v. Orr* (Sixth Circuit)**

Following *Salazar-Calderon*, *Korwek*, and *Robbin*, the Sixth Circuit confronted the issue of extending *American Pipe* tolling to a follow-on subclass action in *Andrews v. Orr*. As with the preceding circuit court cases, the procedural history in *Andrews* was complex and merits a detailed explanation before addressing the Sixth Circuit's ultimate holding.

*Andrews* was the third in a succession of class action racial discrimination lawsuits against the government relating to the use of the Professional Administrative Career Examination (the "PACE") in government hiring and/or promotion. The first lawsuit was filed in 1979, when a group of named plaintiffs filed a class action complaint on behalf of all blacks and Hispanics who suffered from discrimination in government hiring by the government's use of the PACE. *Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981). *Luevano* was ultimately resolved through a consent decree that bound all class members except those who had opted out.[15] *Id.*

Following *Luevano*, Joan Brown, a black employee of the Air Force Logistics Command ("AFLC") at the Wright Patterson Air Force Base ("WPAFB"), filed a putative class action complaint against the government related to the PACE examination ("*Brown*"). *Brown v. Orr*, 99 F.R.D. 524, 524 (S.D. Ohio 1983). Her complaint alleged that the government's use of the PACE had a disproportionate impact on black employees seeking promotion within the AFLC, in violation of Title VII.[16] *Id.* The PACE was utilized by the AFLC with respect to promotional

---

    [15]The *Luevano* court informed the opt-out plaintiffs that they would be entitled to *American Pipe* tolling with respect to their individual claims. 93 F.R.D. at 91-92.

    [16]The claims at issue in *Luevano* related only to discriminatory failure to hire, not to discrimination in promotion. *See Brown*, 99 F.R.D. at 525 n.2.

opportunities at the WPAFB (located in Dayton, Ohio) and at bases located in Oklahoma, Utah, Texas, California, and Georgia, and Brown purported to sue on behalf of all black employees denied promotions at any of those six bases. *Id.* at 524-25. After Brown moved to certify this broad class of AFLC employees, the district court held that Brown had not satisfied the commonality requirement of Rule 23(a)(2) or the typicality requirement of Rule 23(a)(3), nor had she shown that the defendant had acted on grounds generally applicable to the class as required by Fed. R. Civ. P. 23(b)(2).[17] *Id.* at 528. With respect to the commonality requirement, the district court appeared to construe each putative class member's claim as necessarily requiring an individualized inquiry. *See id.* at 526 ("Plaintiff's individual claim for relief will then depend on an examination of the facts particular to her situation . . . . The substantial questions of fact related to a showing of proximate cause and damages are unique to each proposed class member.")

Eight days after the *Brown* court denied certification of the broad class, Brown informed the district court that she intended to file a motion under Rule 23 to certify a *narrower* putative class consisting only of employees at the WPAFB (the Ohio base) – *i.e.*, a subclass of the six-base class that the *Brown* court had previously rejected. *Andrews*, 851 F.2d at 149. On March 23, 1983, two days after that conference, the court ordered Brown to file the motion to certify a narrower class within 30 days, which Brown did. *Id.* While this second class certification motion was pending, Brown (the only named plaintiff) settled her claim with the defendants, at which point the court dismissed the case with prejudice, thereby mooting the pending subclass

---

[17]The district court's opinion in *Brown* does not state whether the parties had conducted any class discovery. However, given that the opinion makes several references to Brown's "allegations", cites to the complaint, and does not reference any evidentiary materials, it appears that the district court ruled on the pleadings.

certification motion. *Id.* at 148.

Following the district court's dismissal of *Brown*, multiple members of the WPAFB subclass (*i.e.*, the class subject to the second class certification motion that was mooted by Brown's settlement in *Brown*) filed administrative charges, after which they filed a putative class action complaint against the government. *Id.* at 148. Their complaint alleged the same claims at issue in *Brown* and sought certification of the same putative subclass (*i.e.*, the subclass restricted to the WPAFB in Ohio) that the *Brown* court had not addressed. *See Andrews*, 851 F.2d at 148 (citing *Andrews*, 614 F. Supp. at 691 n.1) ("This second motion to certify in *Brown* limited the class to employees at WPAFB, precisely the same class as the Plaintiffs seek to represent herein [in *Andrews*].")

Thus, the *Andrews* district court was presented with the following issues: (1) whether the named plaintiffs' individual claims benefitted from *American Pipe* tolling; (2) if so, when that tolling period began to run and whether it had elapsed; (3) if the tolling period had elapsed, whether the named plaintiffs were entitled to equitable tolling; and (4) whether *American Pipe* tolling extended to the class claims, as well as the individual claims. First, the district court found that (a) the plaintiffs individually benefitted from *American Pipe* tolling only through the date on which the *Brown* court denied the *first* class certification motion, and (b) the plaintiffs failed to file timely administrative charges within 30 days of that date. *See Andrews*, 614 F. Supp. at 692-93. Accordingly, the court found that the individual claims were time-barred. *Id.* at 694. Second, as to the class claims, the district court stated that, because "the tolling principle in *American Pipe* and *Crown, Cork, & Seal* applies only to the initiation of a new personal action and not a new class action," the class claims were also time-barred. *Id.* at 694. Thus, it found that "the time limitation, imposed upon Plaintiffs by the regulations [requiring a timely

29

administrative charge] for requesting classwide relief, as opposed to merely personal relief, was *not* tolled during the pendency of the [second] motion to certify in *Brown*." *Id.* Accordingly, it concluded that "the Plaintiffs' claims for classwide relief were long ago time barred." *Id.* (emphasis added).

On appeal, the plaintiffs argued that *American Pipe* tolling should have extended to their class claims, which related to the viability of the WPAFB subclass that the *Brown* court had not addressed. The plaintiffs also argued that, even if the class claims were time-barred, their individual claims should benefit from equitable tolling. The Sixth Circuit affirmed the district court as to dismissal of the class claims, but found that the plaintiffs' individual claims benefitted from equitable tolling and, therefore, were not time-barred. *Id.* at 149, 152. In reaching these holdings, the Sixth Circuit first held that the *Andrews* district court was "clearly correct" that the pendency of the *Luevano* and *Brown* class actions tolled the limitations periods for the named plaintiffs' individual claims in *Andrews*. *Andrews*, 851 F.2d at 148. However, with respect to the class claims, the Sixth Circuit stated, without analysis, that "[t]he courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does not toll the statute of limitations for additional class actions by putative members of the original asserted class." *Id.* (citing *Korwek*, 827 F.2d at 879; *Salazar-Calderon*, 765 F.2d at 1351; and *Robbin*, 835 F.2d at 214). The Sixth Circuit added that "[t]hese decisions reflect the concern expressed by Justice Powell, concurring separately in *Crown, Cork & Seal*: 'The tolling rule of *American Pipe* [] is a generous one, inviting abuse.'" *Andrews*, 851 F.2d at 149 (quoting *Crown, Cork*, 414 U.S. at 354 (Powell, J., concurring)).

As this court's analysis of *Salazar-Calderon*, *Korwek*, and *Robbin* makes clear, this court views the holdings in those cases as reflecting narrower principles than certain broad language

contained therein might otherwise have suggested. Indeed, in relying on *Korwek*, the Sixth

Circuit in *Andrews* appears to have misconstrued *Korwek* as highly persuasive authority on the

very issue that the Second Circuit explicitly left open: namely, whether *American Pipe* tolling

should extend to a follow-on putative class action on behalf of an otherwise "proper subclass" of

the broader class rejected by a previous court. *See Korwek*, 827 F.2d at 879.

At any rate, the Sixth Circuit held that the district court should have equitably tolled the

individual claims. *Id*. at 152. The Sixth Circuit found that the *Andrews* named plaintiffs

reasonably believed that the *Brown* district court's March 23 order permitting Brown to file a

motion to certify a subclass – of which the named plaintiffs in *Andrews* were originally a part –

"kep[t] open the class action question" pending Brown's timely filing of that Rule 23 motion. *Id.*

at 151. Accordingly, "the circumstances appear to justify the plaintiffs' belief that *the question of*

*whether* Brown *could proceed as a class action was not finally determined until that case was*

*settled and dismissed*" in July 1985. *Id*. at 152 (emphasis added). Because "[t]he plaintiffs acted

promptly" to file an administrative charge after receiving a notice sent to all affected class

members, and because of the "lack of prejudice to the defendant," the Sixth Circuit found that the

named plaintiffs' individual claims benefitted from equitable tolling and were not time-barred.

*Id.* at 152.

The Sixth Circuit has not squarely revisited its holding in *Andrews*[18] and the plaintiffs

here appear to concede that, unless the court finds that *Andrews* is no longer good law, it bars the

class claims here. Indeed, the circumstances in *Andrews* are analogous to the circumstances

---

[18]In an unpublished opinion in *Guy v. Lexington-Fayette Urban Cnty. Gov't*, 488 F.
App'x 9, 21 (6th Cir. May 2, 2012), the Sixth Circuit reiterated the *Andrews* rule in a non-
analogous context in which the viability of the *Andrews* rule was not at issue. Aside from *Guy*,
this court has located no Sixth Circuit authority addressing the *Andrews* rule.

presented here in several respects: (1) named plaintiffs in an initial putative class action lost on

the merits a motion to certify a broad geographic class (military bases in six states in *Brown*;

nationwide Wal-Mart operations in *Dukes*), on grounds suggesting that, at least based on the

proof provided, individual issues would trump common issues as to the broad putative class; (2)

the court that issued that denial did not address the potential viability of a narrower geographic

subclass (the WPAFB in *Brown*; Region 43 in *Dukes*); (3) the former putative class members

received notice of the adverse decision, at which point certain members of the (rejected) former

broad class promptly filed administrative charges; and (4) those former putative class members

then filed a putative class action on behalf of a geographic subclass that the earlier court had not

addressed on the merits (the WPFAB employees in *Andrews*, the Region-specific subclasses in

this case, *Dukes*, *Odle*, and *Love*).[19]

Accordingly, unless this court finds that *Andrews* is no longer good law, the court is

constrained to apply the holding in *Andrews* to this case.

### III.  Post-*Andrews* Decisions

#### A.    Pre-*Bayer* Circuit Court and District Court Decisions

Subsequent to *Andrews*, several circuit court decisions have construed *Andrews* (and other

early circuit court decisions) as articulating a categorical rule that the pendency of a previously

filed class action does not toll the statute of limitations period for additional separately filed class

actions by putative members of the original asserted class.  *See, e.g., Griffin v. Singletary*, 17

---

[19]Moreover, in *Andrews*, the original court (*Brown*) was considering a motion to certify the same subclass later at issue in *Andrews*, but never reached its merits.  Again, the Sixth Circuit in *Andrews* held, in the context of its equitable tolling analysis, that the putative class members in *Brown* reasonably believed that the issue of class certification had not been "finally determined" while that motion to certify a subclass was pending and that, as a consequence, they had reasonably waited to a file a follow-on action.

F.3d 356, 359 (11th Cir. 1994); *Catholic Social Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1147-48

(9th Cir. 2000); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 564 (7th Cir.

2011) (construing *Andrews* as asserting that *American Pipe* tolling "never" extends to subsequent

class actions).  Notably, several of these decisions have criticized the application of a categorical

rule and/or extended *American Pipe* tolling to follow-on class actions in certain contexts.  *See*

*Catholic Social Servs.*, 232 F.3d at 1149 (extending *American Pipe* tolling to follow-on class

action, where the plaintiffs "are not attempting to relitigate an earlier denial of class certification,

or to correct a procedural deficiency in an earlier would-be class"); *McKowan Lowe & Co., Ltd.*

*v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002) (class of intervening class members tolled,

where class certification had been denied for reasons "unrelated to the appropriateness of the

substantive claims for certification"); *Yang v. Odom*, 392 F.3d 97, 111 (3d Cir. 2004) (extending

*McKowan* rule to subsequent class actions by former putative class members); *Sawyer*, 642 F.3d

at 564 ("[I]f the reason why class certification is denied in the first suit is that the plaintiff was

not an appropriate class representative, then there is no basis for binding other members of the

putative class, who have yet to receive a judicial decision on the question whether a class is

certifiable under Rule 23.")

    For example, in *Yang*, the Northern District of Georgia had denied a motion to certify

three putative subclasses based on defects in the class representatives, without addressing

whether the underlying class would otherwise satisfy Rule 23 with appropriate class

representatives.  392 F.3d at 99-100.  Following that ruling, several former members of those

putative subclasses filed an identical class action complaint in the Northern District of New

Jersey against the same defendants, seeking to certify the same three subclasses.  *Id.* at 100.  The

New Jersey district court dismissed the class claims, finding that *American Pipe* tolling did not

extend to new class actions filed in a different district court.  *Id.* at 101.

On appeal, the Third Circuit reversed.  The court carefully examined *American Pipe*, *Crown, Cork*, and the various circuit court decisions concerning the extension of *American Pipe* tolling, recognizing that the circuit courts had formulated multiple approaches to the issue, some of which appeared to categorically bar the extension of tolling, some of which did not.  *Id.* at 104-108.[20]  The Third Circuit noted that, in *Catholic Social Services*, the Ninth Circuit had backed away from the categorical rule it had previously articulated in *Robbin* "by allowing certification of a subsequent class comprised of individuals whose individual claims were tolled by an earlier class action."  *Yang*, 392 F.3d at 106-107.  The Third Circuit also severely criticized the Eleventh Circuit's decision in *Griffin*, which had purported to construe *Korwek* and *Robbin* as establishing a categorical rule precluding the extension of *American Pipe* to follow-on class actions:

> While *Griffin*'s denial of tolling for all sequential class action plaintiffs has the virtue of clarity and ease of application, it is also characterized by a rigidity which we reject for at least three reasons.  First, by its terms, *Korwek* invited refinement, and *Griffin* in effect bootstrapped *Korwek*'s limited holding to be a blanket prohibition on sequential class actions.  Moreover, it did so without analysis.  Second . . . , to the degree *Griffin* relied on *Robbin*, that foundation has eroded because the Ninth Circuit has since held that at least in certain circumstances, individuals whose claims were tolled by an earlier class action can aggregate their claims in a subsequent class suit.  Third, . . . it would be at odds with the policy undergirding the class action device, as stated by the Supreme Court, to deny

---

[20]In a parenthetical, the Third Circuit stated that *Andrews* did not reference the basis for the denial of class certification by the district court.  *See Yang*, 392 F.3d at 105 (citing *Andrews*, 851 F.2d at 149).  However, as discussed above, the district court in *Brown* (the class action that preceded *Andrews*) had found substantive defects in the broad proposed class itself, as well as defects in the class representatives, a finding that the *Andrews* district court did not revisit.  Thus, to the extent that the Third Circuit grouped *Andrews* with other circuit decisions in which class certification was denied only because of defects in the class representatives, rather than a merits-based rejection of the proposed class itself, *see Yang*, 392 F.3d at 105, that categorization may not have been entirely accurate.

plaintiffs the benefit of tolling, and thus the class action mechanism, when no
defect in the class itself has been shown.

*Id.* at 106.

In light of these considerations, the Third Circuit held that, where class certification was

denied because of a defect in the class representatives only, *American Pipe* tolling would extend

to putative class members who sought to file a separate action on behalf of the same class. *Id.* at

111. In reaching this holding, the Third Circuit stated as follows:

> [B]ecause we can discern no principled reason to hold otherwise, we hold that
> where class certification has been denied solely on the basis of the lead plaintiffs'
> deficiencies as class representatives, and not because of the suitability of the
> claims for class treatment, *American Pipe* tolling applies to subsequent class
> actions.  Since *American Pipe*, it has been well-established that would be class
> members are justified – even encouraged – in relying on a class action to represent
> their interests with respect to a particular claim or claims, and in refraining from
> the unnecessary filing of repetitious claims.  The policy objectives of the class
> action device – efficient deployment of court resources and the ability to
> consolidate claims which would otherwise be too small to warrant individual
> lawsuits – continue to obtain after the rejection by a court of the proposed class
> representatives.
>
> Drawing the line arbitrarily to allow tolling to apply to individual claims but not to
> class claims would deny many class plaintiffs with small, potentially meritorious
> claims the opportunity for redress simply because they were unlucky enough to
> rely upon an inappropriate lead plaintiff.  For many, this would be the end result,
> while others would file duplicative protective actions in order to preserve their
> rights lest the class representative be found deficient under Rule 23.  Either of
> these outcomes runs counter to the policy behind Rule 23 and, indeed, to the
> reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork &
> Seal*.
>
> Nor would the objectives of limitations periods be better served were we to hold
> otherwise.  The defendants were on notice of the nature of the claims and the
> generic identities of the plaintiffs within the required period, eliminating the
> potential for unfair surprise and prompting them to preserve evidence which might
> otherwise have been lost.
>
> Allowing tolling to apply to subsequent class actions where the original class was
> denied because of the lead plaintiffs' deficiencies as class representatives will not
> lead to the piggybacking or stacking of class action suits "indefinitely" as

35

Defendants argue and as the Eleventh Circuit found in *Griffin*. Rather, applying tolling under these circumstances will allow subsequent classes to pursue class claims *until a court has definitively determined that the claims are not suitable for class treatment* . . . . Rather than arbitrarily eliminate the possibly meritorious claims of countless class members, *we prefer to see careful case management employed to avoid the prospect of indefinite tolling*.

*Id*. at 111-112 (emphases added).

Notably, Judge Alito offered an opinion in *Yang* concurring in part and dissenting in part. *Id.* at 112-114. In that opinion, he concurred in the court's opinion regarding the extension of *American Pipe* tolling to situations involving defects in the original class representatives, but simply dissented with respect to its application to one of the subclasses at issue, which he believed that the Northern District of Georgia had already rejected on substantive grounds "in a substantively identical suit." *Id.* at 113. He also noted that, if plaintiffs were permitted to relitigate substantively identical suits before other district courts, "lawyers seeking to represent a plaintiff class could extend the statute of limitations almost indefinitely until they find a district court judge who is willing to certify the class. The lawyers could simply file a new, substantively identical action with a new class representative as soon as class certification is denied in the last previous action." *Id.* at 113.

Subsequent to *Andrews*, various district courts have also criticized the "categorical" approach as unduly rigid, finding that extending tolling to follow-on class actions is consistent with the principles of *American Pipe* and *Crown, Cork* under appropriate circumstances. *See, e.g.*, *Gomez v. St. Vincent Health, Inc.*, 622 F. Supp. 2d 710 (S.D. Ind. Dec. 16, 2008) (extending *American Pipe* tolling to follow-on class action seeking to certify same class, where previous court denied certification because of atypicality of proposed class representatives' claims and lack of diligence in prosecuting case by class counsel, and where "individual plaintiffs' claims

are not viable without a class action"); *Hershey v. ExxonMobil Oil Corp.*, 278 F.R.D. 617, 621 (D. Kan. 2011) (acknowledging categorical language in *Andrews*, *Basch*, *Korwek*, *Salazar-Calderon*, and *Griffin*, but finding that "more recent, and more persuasive, decisions have supported the application of class action tolling to subsequent class actions, rejecting the view that the doctrine only protects individual lawsuits"); *In re Farmers Ins. Co., Inc., FCRA Litig.*, 738 F. Supp. 2d 1180, 1210 (W.D. Okla. 2010) (extending *American Pipe* tolling to follow-on class action lawsuit, where "there has never been a definitive determination on class certification"); *Villanueva v. Davis Bancorp, Inc.*, No. 09 CV 7826, 2011 U.S. Dist. LEXIS 103473, at *6-*12 (N.D. Ill. Sept. 13, 2011) (extending *American Pipe* tolling to follow-on class action, where "[t]here was no determination in [prior action] as to the propriety of the [proposed] class," and "plaintiffs have not tried to circumvent an adverse ruling by filing a repetitive complaint").

Furthermore, at least one district court within the Sixth Circuit has attempted to construe *Andrews* narrowly in order to reach a result it considered fair and just. *See In re Vertrue Mktg. & Sales Practices Litig.* 712 F. Supp. 2d 703 (N.D. Ohio 2010). There, the named plaintiffs in an initial putative nationwide class action ("*Sanford*") did not receive a ruling on the merits of their class claims. *Id.* at 709. Thereafter, the named plaintiffs in *Sanford* and certain former putative class members filed several follow-on class actions mirroring the claims at issue in *Sanford*, which were consolidated into MDL proceedings in the Northern District of Ohio. *Id.* at 710. The defendants argued to the Ohio district court that, under *Andrews*, the plaintiffs' claims in these cases were time-barred because *American Pipe* tolling did not apply to follow-on class actions under any circumstances. *Id.* at 712. However, the district court distinguished *Andrews*, construing it as relating only to a situation in which the previous court had denied a class

37

certification motion. *Id.* at 712-713 ("There is a clear distinction between the subsequent filing of an otherwise stale class action where a prior court ruled that class certification is improper and one where no court has spoken on the class certification issue.")[21]  Because there had not been any ruling on class certification in *Sanford*, the *In re Vertrue* court found that *Andrews* did not apply and that, therefore, extending *American Pipe* tolling to the class claims was appropriate. *Id.* at 716.

In sum, more recent cases have found that *American Pipe* tolling can and should extend to subsequent class actions under appropriate circumstances.  These cases have typically focused on two related considerations: (1) whether affording class action tolling would further the key principles articulated in *American Pipe* and *Crown, Cork*, namely judicial economy and adequate notice to defendants; and (2) whether the specific named plaintiffs in the case were attempting either to (a) "abuse" the benefit of *American Pipe* tolling by perpetually re-litigating stale issues or by asserting claims not previously asserted in the earlier action, in which case *American Pipe* tolling would not apply, or (b) obtain a definitive merits-based ruling concerning the suitability of a particular proposed class (or subclass) under Rule 23, which would favor the application of *American Pipe* tolling until a definitive determination was made.  As *In re Vertrue* demonstrates, the *Andrews* rule invites refinement and tailoring to particular factual situations so as to balance these considerations.

At any rate, based on the cases cited by the parties here, it does not appear that any of

---

[21]As discussed above, as this court understands the procedural history in *Andrews*, the *Andrews* action actually concerned the viability of a subclass that the previous court in *Brown* had not addressed.  Accordingly, this court does not construe *Andrews* quite as narrowly as *In Vertrue*.  Nevertheless, in *In re Vertrue*, the circumstances were distinguishable from *Andrews*, because there had been no class certification determination of any kind in *Sanford*.

38

these post-*Andrews* cases specifically addressed the issue presented in this case: whether a certification denial of a broad geographic class prevents the extension of *American Pipe* tolling to putative class members who file a subsequent class action complaint seeking to certify a narrower geographic subclass.

### B. The United States Supreme Court decisions in *Shady Grove* and *Bayer*

In *Shady Grove*, which post-dated most of the relevant circuit court precedent referenced by the parties here, the Supreme Court considered whether New York law prohibiting class actions with respect to certain types of claims could preclude a federal court from applying Rule 23 to certify a class action involving those state law claims.

In a plurality opinion, the Court held that Rule 23 trumped New York law, preventing New York from preempting the application of Rule 23 in a federal district court sitting in diversity. In reaching this holding, the court conducted a traditional analysis of potential conflicts between state law and the Federal Rules of Civil Procedure pursuant to *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5, 107 S. Ct. 967, 94 L. Ed. 2d 1 (1987), which requires a threshold determination as to whether Rule 23 governs the issue in dispute, in which case the federal rules govern and an *Erie* analysis is unnecessary. *Shady Grove*, 130 S. Ct at 1437. The Court found that Rule 23 did govern the issue, because it "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.* The Court characterized Rule 23 as "provid[ing] a one-size-fits-all formula for deciding" whether a plaintiff can maintain a class action, thereby preempting New York state law purporting to address the same question in a case in federal court on diversity grounds. *Id.*[22]

---

[22]This relevant portion of the Court's opinion was joined by a majority of the Court.

In *Smith v. Bayer*, the Court considered a different preclusion-related issue.  That case concerned claims against Bayer related to an allegedly defective drug, Baycol.  *Smith*, 131 S. Ct. at 2373.  In August 2001, George McCollins filed a class action complaint against Bayer concerning Baycol in West Virginia state court ("*McCollins*"), seeking to certify a class of West Virginia residents.  *Id.*  One month later, without knowledge of *McCollins*, Keith Smith and Shirley Sperlazza (collectively, "Smith"), filed a substantially identical class action complaint in another West Virginia state court, seeking to certify the same putative class at issue in *McCollins*. *Id.*  Bayer removed the *McCollins* action to federal court on diversity grounds, after which the case was consolidated into MDL proceedings in the District of Minnesota.  *Id.*  However, Bayer was unable to remove the *Smith* action because the parties were not diverse.  *Id.* at 2373-74.[23] Following removal of the *McCollins* action, both cases proceeded through parallel pretrial paths, and the plaintiff(s) in both cases filed motions for class certification.  *Id.* at 2374.

The federal district court acted on its pending certification motion first, finding that the class proposed in *McCollins* did not meet the requirements of Rule 23 because individual issues of fact predominated.  *Id.*  Immediately following that decision, Bayer moved the federal district court to enjoin the West Virginia state court in *Smith* from acting on Smith's pending motion to certify pursuant to the federal Anti-Injunction Act, 28 U.S.C. § 2283, *id.*, which permits a federal court to enjoin state proceedings "to protect or effectuate [the federal court's] judgments."  *Id.* at 2375.  The district court granted the injunction and the Eighth Circuit affirmed.  *Id.* at 2374.

On appeal, the Supreme Court reversed.  The Court found that the "relitigation exception"

_____

[23]Because the case was filed before 2005, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which provides for removal of class action complaints involving non-diverse parties under certain circumstances, did not apply.  *See Bayer*, 131 S. Ct. at 2373 n.1.

in the Anti-Injunction Act was a "strict and narrow" exception to the usual deference to state courts, grounded in the concepts of claim and issue preclusion. *Id.* at 2375. Noting that the preclusive effect of a judgment was typically the province of the second court, not the first, the Court stated that an injunction under the Act's relitigation exception "can only issue if preclusion is clear beyond peradventure." *Id.* at 2376. Thus, the Court construed the specific question presented as "whether the federal court's rejection of McCollins' proposed class precluded a later adjudication in state court of Smith's certification motion." *Id.* For preclusion to apply, the issue decided by the federal court in *McCollins* had to be the same as that presented to the state court in *Smith*, and Smith must either have been a party to *McCollins* or subject to one of several narrow exceptions against binding nonparties. *Id.*

With respect to the first question, the Court concluded that the class certification motion before the *Smith* court (*i.e.*, the West Virginia state court) did not present identical considerations to those previously addressed by the *McCollins* court, because West Virginia applied West Virginia's Rule 23 in a manner substantively different from the manner in which federal courts apply Fed. R. Civ. P. 23. *Id.* at 2376-2379. As to the second question – and in more relevant part here – the Court held that Smith was *not* a "party" to the *McCollins* suit for purposes of preclusion. *Id.* at 2379. It reasoned that, while a putative class member becomes a party to a suit after certification of that class, the putative class member is not a party to a putative class action before certification of the class. *Id.* at 2379-80. Accordingly, it found that "neither a proposed class action nor a rejected class action may bind nonparties." *Id.* at 2380.

The Court also addressed and rejected what it characterized as Bayer's "strongest argument," which "comes not from established principles of preclusion, but instead from policy concerns relating to use of the class action device." *Id.* at 2381. Bayer complained that, "under

[the Court's] approach[,] class counsel can repeatedly try to certify the same class by the simple expedient of changing the named plaintiff in the caption of the complaint," which, "in this world of serial relitigation of class certification ," would force defendants "in effect to buy litigation peace by settling." *Id*. (internal citations omitted). The Court dismissed this concern, finding that "principles of *stare decisis* and comity among courts" would "mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." *Id.* The Court also stated that, to the extent class actions raise special problems of relitigation, Congress had passed CAFA, federal courts could consolidate multiple overlapping suits through federal statutory MDL procedures, and the Court "would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute." *Id.* at 2381-82. In a footnote, the Court also indicated that, to the extent relitigation of the class certification posed a continuing policy concern, the Court's opinion did not foreclose Congress from altering established principles of preclusion by appropriate legislation, nor did it foreclose changes to Rule 23. *Id.* at 2382 n.12.

### C. Impact of *Shady Grove* and *Smith* on *Andrews*

Here, the plaintiffs argue that the Sixth Circuit decision in *Andrews* is no longer good law in light of *Shady Grove* and *Smith*. As the Court understands the argument, plaintiffs contend that *Shady Grove* establishes a bright line rule that, where a putative class action satisfies Rule 23, a federal court must certify that class regardless of any countervailing considerations. The plaintiffs also argue that *Smith* specifically undermined the apparent policy rationale behind *Andrews* and the circuit court decisions on which *Andrews* relied: namely, those courts' reluctance to permit plaintiffs to engage in serial relitigation of class claims.

The impact of *Shady Grove* and *Smith* on the *American Pipe* rule, if any, is not clear. As

an initial matter, neither *Shady Grove* nor *Smith* address the issue of the statute of limitations; indeed, in *Smith*, the lawsuits at issue were filed within one month of each other, not "stacked," meaning that the timeliness of the Smith's suit did not depend on *American Pipe* tolling. Furthermore, both cases directly concerned questions of federalism: in *Shady Grove*, whether New York state law could preempt a federal court's application of Rule 23; in *Smith*, whether the Anti-Injunction Act permitted a federal court to enjoin a state court from potentially relitigating its class certification decision. Thus, it is not clear whether the cases stand for broad principles that necessarily apply in all conceivable contexts or simply reflect narrow decisions based on particular aspects of federalism and/or the application of narrow federal preemption or preclusion doctrines.

Indeed, federal courts – among them the *Odle* and *Dukes* district courts – have reached varying conclusions concerning the scope and impact of the holdings in *Shady Grove* and *Smith*. *See, e.g., Thorogood v. Sears, Roebuck & Co.*, 678 F.3d 546, 551 (7th Cir. 2012) (concluding that, with respect to issue preclusion, *Smith* rule applied as between federal courts, not just to the Anti-Injunction Act's application to state courts); *Sawyer*, 642 F.3d at 562 (holding that, to the extent the Eleventh Circuit in *Griffin* articulated a categorical rule against applying *American Pipe* tolling, that holding "cannot be reconciled with the Supreme Court's later decision in *Shady Grove*, which holds that Rule 23 applies to all federal civil suits, even if that prevents achieving some other objective that a court thinks valuable."); *Odle*, 2012 WL 5292957, at *9 (N.D. Tex. Oct. 15, 2012) (finding that "*Smith* does not speak beyond the Anti-Injunction Act's relitigation exception" and interpreting *Shady Grove* as "not speaking more broadly beyond conflicts between state and federal procedure"); *Dukes*, 2012 WL 6115536 (stating, without analysis, that "the issues decided in *[Smith* and *Shady Grove]* are sufficiently distinct from those presented here

43

that little can be reliably inferred from their holdings.").

Given the substantial uncertainty concerning whether *Shady Grove* and *Smith* even apply outside their particular procedural contexts, this court does not find that either or both cases implicitly overruled *Andrews*. However, the combined impact of *Shady Grove* and *Smith* on *Andrews* is at least debatable.[24]

## IV. <u>Implications of Applying *Andrews* Rule Here</u>

Taking the analysis full circle, this court is constrained to find that the class claims are time-barred, but the court believes that *Andrews* merits refinement for several reasons.

### A. Continuing Reliability of *Andrews*

As an initial matter, this court does not construe the Court's decisions in *American Pipe* and *Crown, Cork* as necessarily precluding the application of *American Pipe* tolling to subsequent subclass actions. At most, the opinions in each case (both for the Court and in the concurrences) implicitly assume that, where a district court finds that a particular asserted class is not viable under Rule 23, the viability of that particular class is finally determined, and the plaintiffs must pursue individual relief through intervention or their own lawsuits. Neither case

---

[24]*Smith* could be interpreted as permitting serial relitigation of class claims only where the cases were initially filed within the statute of limitations period, *i.e.*, without the benefit of *American Pipe* tolling. However, as noted herein, the *Smith* court did not directly address the potential intersection between its holding and the *American Pipe* doctrine. Although the *Smith* case does reference *American Pipe* in a footnote, that reference was simply included to address Bayer's argument that the *American Pipe* tolling doctrine was inconsistent with the notion that putative class members are not a "party" unless and until certification is granted. *See Smith*, 131 S. Ct. at 2379 n.10. In response to that argument, the Court stated a principle that would be consistent with the result that this court urges should occur here: "[A] person not a party to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding. That result is consistent with a commonplace of preclusion law – that nonparties sometimes may benefit from, even though they cannot be bound by, former litigation." *Id.* (internal citation omitted).

44

seems to have contemplated the possibility of a follow-on subclass action, let alone how the *American Pipe* rule might apply in that type of follow-on lawsuit. Indeed, the Court and the concurring opinions seem to have recognized that future procedural contexts would test the limits of the *American Pipe* doctrine. Although Justices Blackmun in *American Pipe* and Justice Powell in *Crown, Cork* each outlined potential scenarios that could invite abuse of the *American Pipe* tolling rule, neither of their opinions purported to delineate the ultimate scope of the *American Pipe* rule, other than to remind courts to be vigilant that any application of *American Pipe* be consistent with notions of judicial economy (served by Rule 23) and adequate notice to defendants (served by the statute of limitations).

Furthermore, it appears to this court that broad language in certain early circuit court cases, including *Korwek* and *Salazar-Calderon*, may have obscured the limited nature of each holding. For example, as the Third Circuit observed in *Yang*, various circuits courts construed *Korwek* as adopting a bright line rule, even though *Korwek* explicitly left open the possibility of extending *American Pipe* tolling to follow-on subclass actions. Subsequent to *Andrews*, the Ninth Circuit also backed away from the bright-line rule it appeared to have articulated in *Robbin*. These considerations substantially undermine the reliability of the three cases on which the Sixth Circuit relied in *Andrews* for the proposition that circuit courts had unanimously found that *American Pipe* tolling does not extend to any follow-on class actions.

Also, after *Andrews* and before the Supreme Court decisions in *Shady Grove* and *Smith*, various circuit decisions and district court decisions had found that *American Pipe* tolling can and should apply to follow-on class actions under appropriate circumstances, such as where the initial certification denial did not address the viability of the underlying class. Thus, there appears to be

45

an increasing trend that case-specific considerations can merit application of *American Pipe* tolling to some follow-on class actions.

Finally, it may be that *Shady Grove* and *Smith* affect the *American Pipe* rule as applied to follow-on class actions, but the precise impact of those decisions seems to require further clarification from the appellate courts and the Supreme Court. *Shady Grove* held that Rule 23 provides a "one-size-fits-all formula" for determining whether a case merits class action treatment. *Smith* suggests that, at least in the context of timely filed actions, the problem of serial relitigation of class claims is best resolved through traditional notions of *stare decisis*, comity, case management (such as MDL procedures), federal legislation, and/or amendment to the Federal Rules of Civil Procedure, rather than through a categorical refusal to permit reconsideration under any circumstances. Of course, because of their procedural postures, neither case addressed whether countervailing considerations of judicial economy or repose would justify different rules with respect to the extension of *American Pipe* tolling to follow-on class actions.

### B. Policy Implications of Refusing to Extend *American Pipe* Tolling Here

As a policy matter, applying the *Andrews* rule here and in future cases could undermine the principles that animated *American Pipe* and *Crown, Cork* or, at least, strip plaintiffs of their ability to pursue an otherwise viable subclass action without filing a protective lawsuit.

Unlike the situations presented in some of the court circuit cases on which *Andrews* originally relied, the plaintiffs here do not seek to relitigate the same class definition rejected by a previous court. Instead, certain putative class members from the first lawsuit timely filed administrative charges, timely filed this lawsuit following receipt of their notices of right to sue, and now seek to sue on behalf of a *subclass* of the rejected nationwide class at issue in *Dukes* –

46

*i.e.*, a subclass that the original court did not address – supported by case-specific allegations. In this court's view, the fact that the *Phipps* named plaintiffs did not file this lawsuit until 11 years after *Dukes* was filed does not reflect any "abuse" or attempt to gain some untoward tactical advantage against Wal-Mart; indeed, the delay in filing this lawsuit was a product of (1) Supreme Court tolling rules that intentionally discouraged the class plaintiffs from filing additional "protective" lawsuits to preserve the timeliness of their claims; and (2) the peculiar circumstance that, unlike many cases, it took ten years for the nationwide class members to receive a definitive decision concerning suitability of a nationwide class under Rule 23. Indeed, between 2004 (when the California district court certified a nationwide class) and 2011 (when the Supreme Court reversed that determination in *Dukes*), the district court and the Ninth Circuit regarded female Wal-Mart employees within Region 43 as proper parties to a nationwide class.

Furthermore, because the initial *Dukes* lawsuit concerned a nationwide class, Wal-Mart was on notice that each Region within that nationwide class was potentially subject to the *Dukes* action; and in fact, when the district certified the nationwide class, each of those Regions – at least for a time – *was* subject to the *Dukes* lawsuit. Indeed, following the Supreme Court decision in *Dukes*, the California district court reaffirmed that the initial *Dukes* complaint placed Wal-Mart on notice of the sex discrimination claims nationwide and held that, by the same token, it placed Wal-Mart on notice of the Region 41 subclass claims that the *Dukes* plaintiffs are now seeking to certify. Thus, for purposes of *American Pipe* tolling, the "notice" function of the statute of limitations, about which Justice Powell expressed concern in *Crown, Cork*, has been achieved here.

Dismissing the *Phipps* plaintiffs' class claims here as untimely seems particularly unfair

when measured against the status of the remaining Region 43/California-based plaintiffs in *Dukes*. As the California district court has found, the California-based *Dukes* plaintiffs retain the ability to press their Region-specific class claims simply because they remain under the same case caption, whereas (under the rule applied here and by the Texas district in *Odle*) all remaining members of the former nationwide class have essentially been stripped of their ability to pursue parallel class relief under Rule 23, which would otherwise further both important substantive federal policy interests and the interests of judicial economy. The prejudice to Wal-Mart, which has been on notice all along that women within Region 43 (among the other Regions nationwide) believed that Wal-Mart had discriminated against them in pay and promotion in violation of Title VII, may be limited only to the fact that it has taken a long time to get to this point. In light of these considerations, it is unclear what overriding policy purpose is served by denying the named plaintiffs the ability to obtain a definitive ruling concerning their asserted geographic subclass, simply because they have filed a new action in a different (and geographically appropriate) district court. In this court's view, stripping these plaintiffs of the ability to pursue subclass relief *ab initio* is unfair relative to the *Dukes* plaintiffs and reflects a result not dictated by *American Pipe* or *Crown, Cork*.

### C.      The Same Claims or Different Claims?

Wal-Mart also argues that plaintiffs are taking inconsistent positions by arguing that, on the one hand, the claims at issue here are "the same" as those for which the initial *Dukes* filing placed Wal-Mart on notice but, on the other hand, are sufficiently "different" for purposes of a fresh look under Rule 23. Under the particular circumstances presented here, the court does not interpret these positions as incongruent with respect to the extension of *American Pipe* tolling.

48

Justice Powell's concurrence in *Crown, Cork* expressed concern that, after class certification had been denied, plaintiffs might attempt to take advantage of *American Pipe* tolling by asserting "different" or "peripheral" claims in a subsequent action. *Crown, Cork*, 462 U.S. at 354. Notably, in articulating this concern, Justice Powell did not distinguish between subsequent individual claims and subsequent requests for class relief. Indeed, from this court's perspective, the concern would be the same "regardless of the method class members choose to enforce their rights upon denial of class certification." *Crown, Cork*, 462 U.S. at 353 (quoting from majority opinion). Here and before the California district court in *Dukes*, Wal-Mart has not contested that *American Pipe* tolling extends to *individual claims* of putative class members following the Supreme Court's decision in *Dukes*. Thus, the California district court and Wal-Mart have essentially acknowledged that each potential individual Title VII sex discrimination claim against Wal-Mart by former putative class members – including all putative class members within Region 43 – falls within the ambit of sex discrimination claims for which *Dukes* originally placed it on notice. On the other hand, if the individual plaintiffs' claims were truly "different" from or "peripheral" to those asserted in *Dukes*, they would not fairly be subject to *American Pipe* tolling in the first place. The fact that some former putative class members have chosen to pursue class relief on behalf of a subclass does not negate the fact that *Dukes* placed Wal-Mart on notice of the subclass claims. Thus, the Title VII claims asserted in this lawsuit are not "different" or "peripheral" for notice purposes.

On the other hand, the new tailored allegations concerning Region 43 are designed to demonstrate that the Region 43 claims for which Wal-Mart was placed on notice by *Dukes* are suitable for class treatment. Rule 23 does not itself confer substantive rights – but Rule 23 is,

*inter alia*, a method for vindicating aggregated causes of action in an efficient manner. Thus, here, the plaintiffs' choice to assert class claims on behalf of a Region 43 subclass, rather than just their own individual claims, concerns "*the method* class members choose to enforce their rights upon denial of class certification," *Crown, Cork*, 462 U.S. at 353 (emphasis added), not the nature of those rights. In the *Dukes* action, the plaintiffs were unable to show that, relative to a nationwide class, Rule 23 provided an appropriate method for aggregating Title VII sex discrimination claims on behalf of all subject female Wal-Mart employees nationwide. Without changing the underlying causes of action – *i.e.*, in asserting sex discrimination claims for which *Dukes* placed Wal-Mart on notice – the named plaintiffs here seek to show that Rule 23 provides an appropriate method for vindicating their Region 43 subclass claims, with respect to which they have provided tailored allegations. Where the notice function has plainly been satisfied, the court does not view the introduction of subclass-specific allegations as inconsistent with the application of *American Pipe* tolling.[25]

### D. Other Policy Considerations

Precluding *American Pipe* tolling for follow-on subclass actions might also have negative or perverse implications for future class actions involving any type of geographic class capable of further subdivision for class action purposes. First, members of a divisible geographic class would be encouraged to file a multiplicity of protective lawsuits relative to each potential geographic subdivision thereof, rather than await a definitive ruling as to whether the broader

---

[25]Wal-Mart also argues that extending *American Pipe* tolling here to extend the statute of limitations would violate the Rules Enabling Act, 28 U.S.C. § 2072, which provides, in relevant part, that the Federal Rules of Civil Procedure "shall not abridge, enlarge, or modify any substantive right." The Supreme Court rejected a substantially similar argument by the defendants in *American Pipe*. *American Pipe*, 414 U.S. at 559.

geographic class satisfies Rule 23. Second, if *American Pipe* tolling does not apply to follow-on class actions, defendants (and the named plaintiffs) could effectively strip the putative class members of their ability to pursue class relief by settling before the court ruled on the merits of a proposed class at some point after the statute of limitations had otherwise run.[26] Furthermore, if the value of individual claims is relatively low – *i.e.*, the claims would only be worth litigating if aggregated – stripping the plaintiffs of their ability to pursue class relief under Rule 23 might be tantamount to stripping them of any viable means of relief.

The refusal to extend *American Pipe* tolling under the circumstances presented here could have (or, in this case, could have had) other inefficient effects. Assume *arguendo* that, if this court were to address the issue on the merits, it would find that the proposed Region 43 subclass satisfies Rule 23 – *i.e.*, that the Region 43 subclass is appropriate for class treatment. Accordingly, if *American Pipe* tolling applied here, the claims of the putative class members would be timely and the court would certify a Region 43 class. On the other hand, assume that *American Pipe* tolling does not apply and that, in compliance with the California District court's *post-Dukes* order, every former putative class member within Region 43 (presumably thousands of women) had timely filed an EEOC charge and timely brought properly venued individual lawsuits spread across the multiple federal judicial districts encompassed by Region 43. The courts would be faced with thousands of lawsuits that otherwise would have been appropriate for class treatment, at which point the federal system would presumably utilize MDL procedures to aggregate the individual claims before one court. By precluding putative class members *ab*

---

[26]As this court construes the relevant procedural history, this was essentially the result in *Andrews* with respect to the WPAFB subclass.

*initio* from pursuing subclass relief with the benefit of *American Pipe* tolling (and precluding federal courts from handling the claims pursuant to Rule 23), the federal courts would thereby be forced to deal with thousands of individual lawsuits and thousands of consolidation motions (among other issues) simply to arrive at essentially the same place: consolidated handling of substantially similar claims that should rise and fall based on sufficiently common facts, albeit without the efficiency of Rule 23.

Of course, plaintiffs could seek to abuse *American Pipe* tolling with respect to geographic classes. First, a named plaintiff could file a putative nationwide class action that is plainly an inappropriate candidate for classwide relief, simply to "buy time" by tolling the statute of limitations. Under that scenario, a subsequent court might be loath to extend *American Pipe* tolling to a follow-on subclass action. Second, after the denial of class certification in an initial putative class action, putative class members could seek to refile a new action with only aesthetic changes to the class allegations and/or the proposed class, thereby effectively seeking to relitigate the same issues the original court had addressed under the guise of avoiding that other court's previous ruling. However, in either of these scenarios, district courts have various means of discouraging abusive practices that could artificially and unreasonably seek to string out the statute of limitations. For example, based on a case-specific assessment, courts could refuse to extend *American Pipe* tolling in the first place and/or sanction plaintiffs (or their attorneys) for engaging in abusive practices. As the Third Circuit endorsed in *Yang* after canvassing the existing case law, "careful case management," rather than a rigid rule, might alleviate any concerns about potential abuse of the *American Pipe* tolling rule. *Id*. at 112.

In sum, whether or not the class claims asserted here will ultimately meet Rule 23's

requirements, this court is satisfied that the plaintiffs here are not attempting to "abuse" the availability of *American Pipe* tolling. Instead, the plaintiffs seek a definitive determination as to whether their proposed geographic subclass, in which this court sits, presents a viable basis for a class action lawsuit.[27] Indeed, for some of the reasons that the *Andrews* court found that equitable tolling should extend to the *Andrews* plaintiffs' individual claims, the court would favor extending *American Pipe* tolling to the subclass claims here.

Accordingly, absent the still-binding precedent articulated in *Andrews*, this court would at least address the viability of the class claims under the motion to dismiss standard and, assuming that Wal-Mart's other bases for dismissal are not viable, would be inclined to permit class discovery to proceed. However, under *Andrews*, the court must find that the class claims do not benefit from *American Pipe* tolling and, therefore, are time-barred. Because the court finds that the class claims are time-barred, the court need not reach the parties' remaining arguments, with respect to which the court makes no express findings.

## CONCLUSIONS

For the reasons set forth herein, Wal-Mart's Partial Motion to Dismiss will be granted and the class claims asserted in the Complaint will be dismissed with prejudice.

_____

[27]This court also agrees with the California district court's opinion (relative to the Region 41/California-based plaintiffs) that the Supreme Court decision in *Dukes* reflected a failure of proof, not a bar to addressing the viability of an appropriately discrete geographic subclass within Wal-Mart's nationwide operations. *Dukes*, 2012 WL 4329009, at *5. Also, although the district court in *Dukes* expressed a degree of skepticism that the plaintiffs would ultimately be able to demonstrate that Region 41 was an appropriate subclass – a skepticism this court shares with respect to the Region 43 class claims – it found that the plaintiffs would be entitled to present their evidence on that point in the context of a Rule 23 certification motion. *Id.* at 8-9.

Enter this 20th day of February 2013.

ALETA A. TRAUGER
United States District Judge