UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHERYL PHIPPS AND SHAWN GIBBONS, On Behalf of Themselves and all Others Similarly Situated, | ) ) ) | CLASS ACTION CASE NO. 3:12-cv-01009 |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | JUDGE LAWSON |
| WAL-MART STORES, INC. | ) ) | MAGISTRATE JUDGE FRENSLEY |
| *Defendant.* | ) ) ) | |

**OPPOSITION OF DEFENDANT WAL-MART STORES, INC. TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .............................................................................................. 3

    A.    Wal-Mart's Legal Department Hires The Hay Group To Assist With Its Response To The Nationwide *Dukes* Allegations. ........................................... 3

    B.    The Supreme Court Decertifies The Nationwide *Dukes* Class And Plaintiffs' Counsel Files "Regional" Cases ................................................. 4

    C.    Wal-Mart Withholds The Hay Group Documents In *Dukes* ....................................... 4

    D.    Plaintiffs Seek Production Of The Privileged Hay Group Documents Withheld in *Dukes* ................................................................................... 6

III. ARGUMENT .................................................................................................. 9

    A.    This Court Should Reject Plaintiffs' Attempt to Circumvent This Court's Prior Ruling on Discovery ......................................................... 9

    B.    The Hay Group's Communications And The Information It Collected Are Protected From Disclosure ......................................................... 13

    C.    The Work Product Doctrine Also Protects The Hay Group Documents from Disclosure ................................................................. 16

    D.    The Disclosure Of Non-Privileged Documents Relating To The Hay Group Does Not Support Subject Matter Waiver ........................... 20

IV. CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ........................................................................... 11

*Armouth Int'l, Inc. v. Dollar Gen. Corp.*,
    2015 WL 6696367 (M.D. Tenn. Nov. 2, 2015)................................... 13

*Bard v. Brown County*,
    No. 15-00643, 2017 WL 3129802 (S.D. Ohio July 21, 2017) ........... 18

*Broessel v. Triad Guar. Ins. Corp.*,
    238 F.R.D. 215 (W.D. Ky. 2006) ...................................................... 13

*China Agritech v. Resh*,
    No. 17-432 (U.S. Dec. 8, 2017)......................................................... 12

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) ........................................................................... 11

*Dublin Eye Assocs., P.C. v. Mass. Mut. Life Ins. Co.*,
    No. 5:11-cv-128, 2013 WL 653541 (E.D. Ky. Feb. 21, 2013)..... 13, 16

*Dukes v. Wal-Mart Stores, Inc.*,
    222 F.R.D. 137 (N.D. Cal. 2004) ........................... 3, 5, 6, 7, 11, 15

*Dukes v. Wal-Mart Stores, Inc.*,
    964 F. Supp. 2d 1115 (N.D. Cal. 2013).............................................. 4

*Edwards v. Whitaker*,
    868 F. Supp. 226 (M.D. Tenn. 1994) ................................................ 21

*First Horizon Nat'l Corp.*,
    2013 WL 11090763 ........................................................................... 16

*Genesco, Inc. v. Visa U.S.A., Inc.*,
    302 F.R.D. 168 (M.D. Tenn. 2014) ................................................... 19

*Graff v. Haverhill North Coke Co.*,
    No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio Nov. 13, 2012) ......... 13, 14, 16, 18

*Guifu Li v. A Perfect Day Franchise, Inc.*,
    270 F.R.D. 509 (N.D. Cal. 2010) ..................................................... 15

*Ledbetter v. Goodyear Tire & Rubber Co.*,
    550 U.S. 618 (2007) ........................................................................... 12

*In re Lott*,
    424 F.3d 446 (6th Cir. 2005) ............................................................ 10

Page(s)

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
    2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ................................................................ 15

*Phipps v. Wal-Mart Stores, Inc.*,
    792 F.3d 637 (6th Cir. 2015) ..................................................................................... 11

*Roach v. Hughes*,
    No. 13-00136, 2015 WL 13022807 (W.D. Ky. Jan. 8, 2015) ............................................ 19

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-MD-1000, 2009 WL 3747130 (E.D. Tenn. Nov. 3, 2009) .................................... 15

*Toledo Edison Co. v. G A Techs., Inc.*,
    847 F.2d 335 (6th Cir. 1988) ................................................................................. 17, 18

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ..................................................................................... 10

*United States v. Collis*,
    128 F.3d 313 (6th Cir. 1997) ..................................................................................... 21

*United States v. Nobles*,
    422 U.S. 225 (1975) ................................................................................................ 16

*United States v. Roxworthy*,
    457 F.3d 590 (6th Cir. 2006) ..................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................ 3, 4, 11

**Statutes**

42 U.S.C. § 2000e–5(e) .............................................................................................. 12

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 13, 17, 19

Fed. R. Evid. 502 ................................................................................................... 20

**Other Authorities**

Comm. Notes to Fed. R. Evid. 502 ............................................................................... 20

# I.  INTRODUCTION

In permitting this case to proceed to discovery, the Court relied on Plaintiffs' pledge that their allegations differed from the nationwide class rejected by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*.  Dkt. 111 at 17-18.  Plaintiffs assured the Court that the claims here focused on "a number of discrete policies" and pay and promotion decisions made by a "discrete group" of core decisionmakers in Wal-Mart's Region 43.  Dkt. 124.  That repeated assurance has guided the scope of discovery in this case, and undergirds this Court's order limiting Plaintiffs' prior broad request for discovery of Wal-Mart's nationwide pay and promotion policies to "any information known by or communicated to the [Region 43 core] decision makers."  Dkt. 136 at 2.

Plaintiffs' motion to compel represents an undisguised attempt to make an end-run around the limitations that this Court previously imposed on discovery in this case, while at the same time abrogating the protections afforded by the attorney-client privilege and attorney work product doctrine.  Specifically, Plaintiffs seek documents related to the work of the Hay Group, a third-party consultant retained during the course of the **nationwide** *Dukes* litigation to assist Wal-Mart's counsel in evaluating the allegations in that case and to provide advice regarding Wal-Mart's pay structure.  Dkt. 152.  Wal-Mart has made multiple offers to search for and produce non-privileged documents relating to the Hay Group so long as they are limited to the scope set out in the Court's prior order.  Plaintiffs have rebuffed Wal-Mart's reasonable offers, insisting instead on receiving all Hay Group documents regardless of whether they have any connection to Region 43 and regardless of whether they are privileged.  And that is what they seek in the present motion.

Plaintiffs now assert that the restrictions imposed by this Court limiting discovery to documentary evidence involving core decisionmakers should not apply because the Hay Group documents relate to Plaintiffs' disparate impact theory.  Dkt. 153 at 8-9.  But the nationwide *Dukes* case involved both disparate treatment and disparate impact theories.  To distinguish this case from

*Dukes*, Plaintiffs must focus on the discrete group of decisionmakers in Region 43 because Plaintiffs have made clear they are *not* challenging the decisions made on a national basis. Dkt. 1 (Compl. ¶¶ 30, 32-33, 39, 41-43); Dkt. 104 at 17-19. That is true regardless of whether Plaintiffs proceed under a disparate treatment theory or a disparate impact theory. Indeed, Plaintiffs did not even allege in their Complaint a disparate impact claim based on any policies implemented as a result of the Hay Group's work in 2004 (*see* Dkt. 1)—a fact Plaintiffs glaringly fail to mention. Neither of the named Plaintiffs (nor any of the plaintiffs in the original *Dukes* action) ever exhausted administrative remedies regarding the compensation structure implemented in 2004. And any claim based on the implementation of that structure is long since time-barred and not subject to any *Dukes*-related tolling, because it was not raised in *Dukes* itself.

That lack of any valid basis to pursue these documents is all the more troubling because the documents Plaintiffs seek are protected by the attorney-client privilege and work product doctrine. Wal-Mart asserted privilege and work production protection over the requested documents more than four years ago during discovery in the California regional class action in *Dukes*. The *Dukes* plaintiffs (represented by the same counsel as Plaintiffs here) never challenged that assertion. To the extent they are now claiming waiver, Plaintiffs' counsel never disclosed to Wal-Mart upon review of those documents that the production included documents Wal-Mart had clearly intended to claim privilege over, as reflected in its privilege log. There can be no legitimate assertion that Wal-Mart's production was anything but inadvertent. Plaintiffs' assertion of waiver is, at best, misplaced.

The Court should deny Plaintiffs' motion in its entirety.

## II. BACKGROUND

### A. Wal-Mart's Legal Department Hires The Hay Group To Assist With Its Response To The Nationwide *Dukes* Allegations

Betty Dukes and five other women filed a complaint in the Northern District of California on June 19, 2001. They sought to represent a class of "[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346 (2011) (alteration in original; internal quotation marks omitted). The original *Dukes* suit alleged that Wal-Mart delegated "employment decisions such as assignments, promotions, pay and training" to its managers and allowed them to make decisions based on "unweighted, arbitrary and subjective criteria" including "gender stereotypes." Dkt. 25-4, *Dukes* Third Am. Compl. ¶ 29 (*Dukes*, No. 01-cv-02252, Dkt. 82 (N.D. Cal. Sept. 12, 2002)); *see also* Dkt. 53 (taking judicial notice of *Dukes* Third Amended Complaint).

During the *Dukes* litigation, Wal-Mart's in-house legal department decided to utilize the Hay Group, a consulting firm, to assist in responding to the allegations in the lawsuit and to provide advice concerning Wal-Mart's pay system. Scott Decl. ¶ 4; Rowley Decl. ¶ 2. The Hay Group specializes in human resources solutions and job evaluation implementation. Scott Decl. ¶ 4. During the course of its work, the Hay Group consulted with, and provided regular reports to, both Wal-Mart's in-house legal team and their then-counsel of record in *Dukes*. Rowley Decl. ¶ 3.

The *Dukes* plaintiffs moved for class certification on April 25, 2003. *Dukes*, No. 01-cv-2252, Dkt. 99 (N.D. Cal. Apr. 25, 2003). On June 21, 2004, the Northern District of California certified the nationwide class challenging the pay and promotion systems pre-dating those changes. *See Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 188 (N.D. Cal. 2004). Shortly thereafter, in mid-2004, Wal-Mart implemented a new pay system.

**B.    The Supreme Court Decertifies The Nationwide *Dukes* Class And Plaintiffs'
          Counsel Files "Regional" Cases**

Almost seven years passed as the *Dukes* case proceeded through the appellate courts.  In 2011, the Supreme Court reversed the Northern District of California's class certification order due to, among other problems, the plaintiffs' inability to satisfy the commonality requirements of Rule 23(a); the plaintiffs could not identify any "specific employment practice" let alone "one that tie[d] all their 1.5 million claims together."  *Dukes*, 564 U.S. at 357-59.

The *Dukes* plaintiffs' counsel then filed this action, along with other follow-on suits in Wisconsin, Florida, and Texas, on behalf of putative "regional" classes.  The *Dukes* plaintiffs also filed an amended complaint, over Wal-Mart's objection, on behalf of their own putative "regional" California classes.  *Dukes*, No. 01-cv-2252, Dkt. 767 (N.D. Cal. Oct. 27, 2011).  The *Phipps* case differs from *Dukes* only in that Plaintiffs have narrowed the class geographically to Wal-Mart's Region 43; just like the *Dukes* plaintiffs, Plaintiffs challenge the alleged lack of objective "job-related compensation and promotion criteria" provided to local managers to guide their decisions.  Dkt. 1 (Compl. ¶¶ 39-41, 43, 45-48, 51-55, 70-71, 151, 153); *see also* Dkt. 25-6 (chart comparing allegations in *Dukes* and *Phipps*).  Plaintiffs contend that the *Phipps* case is distinct from *Dukes* because they have "challenge[d] the role of a discrete group of managers in Region 43 who engaged in a 'common mode of exercising discretion'" and because the *Phipps* complaint "rel[ies] on analyses conducted at a narrower and more refined level than that presented in support of the nationwide class, including promotion data analyzed according to the regional structures in which promotion decisions are made."  Dkt. 35 at 32-33.

**C.    Wal-Mart Withholds The Hay Group Documents In *Dukes***

Class certification discovery proceeded in the California *Dukes* litigation.  *See Dukes v. Wal-Mart Stores, Inc.*, 964 F. Supp. 2d 1115, 1118 (N.D. Cal. 2013) ("*Dukes II*") (denying motion

to certify regional classes). During a three-month period, a team of more than 300 contract attorneys logged more than 55,000 hours to search approximately 26 million Wal-Mart documents (about 2.85 terabytes of data) and review about two million documents for responsiveness, confidentiality, and privilege. *Dukes*, No. 01-cv-2552, Dkt. 917 ¶¶ 15-16 (N.D. Cal. May 31, 2013). Wal-Mart's efforts resulted in the production of more than 100,000 documents, comprising some 828,000 pages. *Id.* ¶ 15; *see also* Dkt. 128 (Maryott Decl. ¶ 11). Although the plaintiffs ultimately sought certification of a class through 2002 in *Dukes II*, the discovery focused on a time period from 1998 through at least 2004, and as to some areas of discovery, through 2013. Dkt. 128 (Maryott Decl. ¶ 11).

In *Dukes II*, Wal-Mart withheld as privileged and protected work product those Hay Group documents that were created at the direction of Wal-Mart's counsel. Scott Decl. ¶¶ 5-6; Rowley Decl. ¶¶ 4-5. By agreement of the parties regarding the structure and contents of the privilege log in *Dukes II*, Wal-Mart identified these documents by general category (rather than document-by-document) on its April 29, 2013 log. Maryott Decl. ¶ 3. Given that categorical format, it is not clear how many Hay Group documents were withheld. *Id.*

The *Dukes* litigation concluded on July 15, 2016, when the parties filed a joint stipulation dismissing plaintiffs' claims with prejudice. *Dukes*, No. 01-cv-2252, Dkt. 1162 (N.D. Cal. July 15, 2016). In the three years between the service of the privilege log and the stipulated dismissal, the *Dukes II* plaintiffs' counsel (the same attorneys representing Plaintiffs here) never challenged the privilege or work product protection Wal-Mart asserted over any of the Hay Group documents and never asked Wal-Mart for a more detailed privileged log. Maryott Decl. ¶ 3. Nor did they discharge their obligation to disclose to Wal-Mart that the production included a small number of Hay Group documents even though it should have been apparent that those documents were

subject to a claim of privilege or work product and that they were inadvertently produced.[1]  *Id.*

Prompted by Plaintiffs' disclosure of the confidential documents filed under seal with their motion, Wal-Mart sent Plaintiffs letters on January 6, 2018 and on January 10, 2018 requesting the return of its protected material pursuant to the Stipulation Regarding Inadvertent Disclosure of Privileged Material, filed in *Dukes* on February 25, 2013 (*Dukes*, No. 01-cv-02252, Dkt. 856 (N.D. Cal. Sept. Feb. 25, 2013)), which governed the production from which those documents came. Maryott Decl. Re Resp. to Mot. to Seal ¶¶ 2-3; Ex. A; Ex. B.

## D.    Plaintiffs Seek Production Of The Privileged Hay Group Documents Withheld in *Dukes*

In an effort to avoid duplicative discovery between this case and *Dukes*, counsel for Plaintiffs and Wal-Mart made several agreements.  The parties agreed that Plaintiffs could use in this case documents *produced* by Wal-Mart in *Dukes II*, as long as Plaintiffs specifically identified the documents they intended to retain and use.  Maryott Decl., Ex. A (April 14 Letter).  Plaintiffs' counsel agreed that Wal-Mart would not need to produce in this case corporate-level documents created before June 1, 2004.  Wal-Mart agreed that if Plaintiffs filed a motion to compel on grounds of privilege or work product, Wal-Mart would not argue that it has no obligation to produce any additional documents created before June 1, 2004.  *Id.*; *id.*, Ex. B (June 12 Letter); *see also* Dkt. 153 at 3.

On June 12, 2017, Plaintiffs filed a motion to compel documents responsive to their Requests for Production Nos. 5 and 6 (two of the three Requests at issue in this motion) seeking all documents regarding the creation and implementation of Wal-Mart's pay and promotion

---

[1] This is not the first time the *Dukes* plaintiffs' counsel has unabashedly sought Wal-Mart's privileged materials. The *Dukes* plaintiffs sought disclosure of a memorandum prepared in 1995 by Wal-Mart's counsel at Akin Gump Straus Hauer & Field and prominently marked Privileged and Confidential / Attorney Client Privilege. *See Dukes*, No. 01-cv-2552, Dkt. 840 (N.D. Cal. Jan. 16, 2013), which the California court denied. *See id.*, Dkt. 881 (Mar. 26, 2013).

policies. Dkt. 124; Dkt. 153 at 10-12. Wal-Mart opposed, arguing that the scope of discovery must be circumscribed by Plaintiffs' own Region 43-specific allegations. Dkt. 126 at 14-15, 21; *see also* Dkt. 128-1 at 6. The Court agreed, ordering that the scope of documents responsive to these two Requests be limited to "any information known by or communicated to the [Region 43 core] decision makers." Dkt. 136 at 2; *see also id.* at 3 ("The court finds [Wal-Mart]'s meet-and-confer proposals (Docket No. 128-2) to be sufficient and adequate responses to request numbers 5 and 6 . . . [D]efendant shall produce all responsive documents provided to the decision makers."). Subsequently, Wal-Mart has produced thousands of documents relating to pay and promotion guidelines and policies shared with the Region 43 core decisionmakers. Maryott Decl. ¶ 15.

Just two weeks after the Court expressly limited discovery to documents related to the Region 43 decisionmakers, Plaintiffs' counsel sent a letter to Wal-Mart's counsel concerning the Hay Group documents withheld more than four years earlier in the *Dukes II* litigation. Maryott Decl., Ex. C (Aug. 31 Letter); Dkt. 153 at 3. The parties discussed these documents during a September 28, 2017 telephonic meet and confer discussion about ESI search terms. *Id.* ¶ 7. During that call, Wal-Mart reiterated its claim of privilege over the Hay Group documents. *Id.* Wal-Mart followed up with a written response on October 3, 2017, explaining that "[w]hether the Hay Group documents . . . were properly withheld is irrelevant to any issues in this litigation" and that Plaintiffs' counsel "provided no explanation for why Wal-Mart should be required to scrutinize privilege decisions made in a separate action four years ago." *Id.*, Ex. D (Oct. 3 Letter). Plaintiffs responded on October 5, 2017, threatening to move to compel and arguing that the Hay Group documents were "highly relevant" and responsive to their Requests for Production Numbers 5, 6, and 7. *Id.*, Ex. E (Oct. 5 Letter); Dkt. 153 at 14-16. Wal-Mart replied on October 10, 2017, pointing out that the Court's August 14, 2017 order limited discovery to pay or promotion policies

that were communicated to the discrete group of core decisionmakers in Region 43. *See* Dkt. 136 at 3. In other words, regardless of any assertion of privilege, "any Hay Group documents that relate to increases and decreases in compensation (RFP 5) or changes to pay practices (RFP 6) are only responsive if they were communicated to a core Region 43 decisionmaker." Maryott Decl., Ex. F (Oct. 10 Letter). Wal-Mart also noted that it had not agreed to produce any documents responsive to Request for Production Number 7. Dkt. 153 at 14-16.

Knowing that not all documents mentioning the Hay Group would be privileged, and in an effort to cooperate, Wal-Mart offered to search the ESI of Region 43 core decisionmakers and produce responsive, non-privileged documents that hit upon the terms: (1) "hay group"; (2) "haygroup"; and (3) "hay adjustment." Maryott Decl., Ex. F (Oct. 10 Letter). Wal-Mart further offered to meet and confer concerning additional searches targeting whether the Region 43 core decisionmakers had received any responsive, non-privileged Hay Group documents "by other means." *Id.* Plaintiffs never responded. *Id.* ¶ 12. Wal-Mart repeated its offer on November 17, 2017, adding that it would also "serve a privilege log that reflects any privileged documents related to the Hay Group that were shared with the core decisionmakers." *Id.*, Ex. G (Nov. 17 Letter. Again, Plaintiffs did not respond. *Id.* ¶ 12. Instead, Plaintiffs served a third-party document subpoena to the Hay Group on November 21, 2017. *See* Dkt. 149-1. The Hay Group has refused to produce any documents to Plaintiffs, and it served timely objections on December 13, 2017, including objections on privilege and relevance grounds. Maryott Decl., Ex. H (Hay Group Objection). Wal-Mart is also filing contemporaneously with this opposition a motion to quash Plaintiffs' subpoena to the Hay Group based on the subpoena's requests for Wal-Mart's privileged and protected material.

The parties participated in a telephonic conference with Magistrate Judge Frensley on

December 21, 2017.  Maryott Decl. ¶ 2.  During that call, Plaintiffs raised the argument that the Hay Group documents are relevant to their disparate impact theory – specifically, their claim that changes to Wal-Mart's compensation structure made in 2004 had a disparate impact on women. *Id.*

## III.  ARGUMENT

### A.    This Court Should Reject Plaintiffs' Attempt to Circumvent This Court's Prior Ruling on Discovery

Plaintiffs previously argued to this Court "they are 'entitled to documents regarding the creation and implementation of pay and promotion policies generally and, cannot be limited to the core decisionmakers.'"  *See* Dkt. 136 at 3 (quoting Dkt. 131 at 10-11).  And this Court has already rejected Plaintiffs' argument that documents with no connection to Region 43 decisionmakers are relevant.  Dkt. 136 at 1-2 ("[I]n order for a document, policy or practice to be relevant[,] the decision maker has to be aware of that document, policy or practice."); *see id.* at 3 ("The court finds the defendant's meet-and-confer proposals . . . to be sufficient and adequate responses to request numbers 5 and 6 . . . [Defendant] shall produce all responsive documents provided to the decision makers.").  While Plaintiffs' earlier motion to compel did not include Request Number 7, Hay Group documents responsive to this request cannot change the fact that the as-written request is not limited to Region 43.  *See* Dkt. 153 at 15.  Plaintiffs' attempt to make an end-run around this Court's prior rulings should be rejected.

1.    Wal-Mart has made multiple offers to search for and produce all non-privileged documents relating to the Hay Group so long as they are limited to the scope set out in the Court's prior order.  Plaintiffs have ignored every one.  Maryott Decl., Ex. E (Oct. 10 Letter); Ex. G (Nov. 17 Letter).  Instead, they now insist that the Hay Group documents pertaining to nationwide pay system changes in 2004 are "highly relevant to Plaintiffs' disparate impact claims, as they would

9

be central to the question of whether the adverse impact that Wal-Mart's method of restructuring its compensation system had on its female workers can be defended as job related, valid and thus a business necessity." Dkt. 153 at 1. Plaintiffs' own formulation assumes that the restructuring had an "adverse impact"; they would have to prove this fact at trial, yet they do not even suggest that the requested Hay Group documents are necessary to discharge their evidentiary burden. Instead, they suggest that the Hay Group documents would pertain to Wal-Mart's defense of business necessity. But Wal-Mart need not mount any defense if Plaintiffs cannot prove a disparate impact, and will not rely on documents withheld as privileged to defend itself in any event. *See In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

More generally, simply invoking the disparate impact theory does not expand discovery beyond Region 43. Plaintiffs have repeatedly assured this Court that their *causes of action*—which are pleaded under both disparate treatment and disparate impact theories—focus on "a number of discrete policies" and pay and promotion decisions made by a "discrete group" of core decisionmakers in Wal-Mart's Region 43. Dkt. 124. They *had* to do so in order to distinguish their case from *Dukes*. Indeed, their Complaint does not contain a single factual allegation regarding any *nationwide* policies implemented in 2004 that could be alleged to have had a disparate impact on women in Region 43. *See* Dkt. 1. And Plaintiffs cannot allege such a claim because neither of the named Plaintiffs exhausted her administrative remedies regarding any policies implemented in 2004. *See* Dkt. 1-1 (Ms. Phipps' EEOC charge); Dkt. 1-7 (Ms. Gibbons' EEOC charge).

2.  The complaint contains no allegations based on Wal-Mart's 2004 pay system changes because any claim based on those changes would clearly be time-barred.  The Sixth Circuit has allowed Plaintiffs to bring the otherwise-untimely claims of absent persons based on its conclusion that the nationwide *Dukes* litigation tolled those claims.  *See Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 644-45 (6th Cir. 2015).  But it is axiomatic that only those claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit" receive the benefit of tolling.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 562 (1974) (Blackmun, J., concurring); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring) (calling it "important to make certain . . . *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit").  There is no overlap between the "discretionary decisionmaking" theory at the heart of the *Dukes* allegations and the 2004 pay plan adopted more than a year after the *Dukes* plaintiffs moved for class certification.  *See Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004).  As the Supreme Court made clear, the "basic theory" of *Dukes* was "that a strong and uniform 'corporate culture' permit[ted] bias against women to infect . . . the discretionary decisionmaking of each one of Wal-Mart's thousands of managers."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Even Plaintiffs admit that *Dukes* concerned events prior to 2002 and that the 2004 pay changes were not a "focus of discovery;" accordingly, there is no possibility that *Dukes* tolled these claims.  *See American Pipe*, 414 U.S. at 562 (Blackmun, J., concurring); *Crown, Cork*, 462 U.S. at 354-55 (Powell, J., concurring) ("The [*American Pipe*] rule should not be read, however, as leaving a plaintiff free to

raise different or peripheral claims following denial of class status."). Thus, even under the Sixth Circuit's previous tolling decision, any claims based on the 2004 pay adjustments are untimely.[2]

Separate and apart from *American Pipe* tolling, these claims are time-barred. Cheryl Phipps has not worked for Wal-Mart since 2006, and any challenge that she could have brought lapsed long ago. *See* Dkt. 1 (Compl.) ¶ 11. Shawn Gibbons worked for Wal-Mart until March 3, 2017, but her EEOC charge contains no allegations about the 2004 pay change, (Dkt. 1-7), and more than 300 days have passed since her last day at Wal-Mart. *See* 42 U.S.C. § 2000e–5(e). Any claim she might attempt to bring now related to pay discrimination based on the 2004 changes would therefore be untimely. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007) ("In addressing the issue whether an EEOC charge was filed on time, we have stressed the need to identify with care the specific employment practice that is at issue.").

3. Plaintiffs' assertion of relevance based on the 2004 nationwide pay policy changes is a subterfuge, as they have not tied it in any way to the Region 43 claims they assert. So much is clear from the exhibits to their own motion. All four exhibits in support of Plaintiffs' motion to Compel were inadvertently produced despite being protected under the attorney-client privilege and/or the work product doctrine, as should have been obvious to Plaintiffs' counsel upon review in light of the entries on Wal-Mart's privilege log. Wal-Mart has requested that Plaintiffs' counsel return or destroy those documents. *See* Dkt. 156-1; 156-2; 156-3; 156-4; Maryott Decl. Re Resp. to Mot. to Seal ¶¶ 2-3. In any event, these documents are not discovery under this Court's order because they were *not* shared with core decisionmakers in Region 43. The fact that they were produced in *Dukes II* does not make them discoverable in this case.

---

[2] The Supreme Court is currently considering a challenge to the approach to tolling adopted by the Sixth Circuit in Phipps. See *China Agritech v. Resh*, No. 17-432 (U.S. Dec. 8, 2017). Wal-Mart reserves the right to challenge the timeliness of all of Plaintiffs' claims following the Supreme Court's decision.

**B. The Hay Group's Communications And The Information It Collected Are Protected From Disclosure**

Even if Plaintiffs could establish the requested documents are relevant, which they cannot, their motion should be denied to the extent that it seeks communications between the Hay Group and Wal-Mart's in-house or outside counsel, or documents concerning counsel's requests to the Hay Group to collect information. Whether or not a privileged document is relevant has no bearing on whether its disclosure can be compelled. *See Armouth Int'l, Inc. v. Dollar Gen. Corp.*, 2015 WL 6696367, at *2 (M.D. Tenn. Nov. 2, 2015) ("Neither party disputes that relevant documents may be withheld from discovery if the documents reflect privileged communications."). To the contrary, privileged documents enjoy absolute protection from discovery (absent limited exceptions not present here, such as where counsel assists a client with criminal activity). Fed. R. Civ. P. 26(b)(1); *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 218 (W.D. Ky. 2006).

The attorney-client privilege extends to in-house and outside counsel's communications with a third-party consultant retained for "the purpose of assisting counsel in providing legal advice." *Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *10 (S.D. Ohio Nov. 13, 2012); *see also Broessel*, 238 F.R.D. at 218-19 ("[C]onfidential communications disclosed to or made in the presence of certain agents of the attorney (e.g., accountants, engineers, or experts) to further the rendition of legal advice or in connection with the legal representation are subject to the attorney-client privilege."). Communications between an attorney and a third-party consultant maintain attorney-client privilege where "the third party's presence materially facilitates and improves the attorney-client communication process"; the presence of the consultant "facilitate[s] the communication between client and counsel and for the rendering of legal advice." *Dublin Eye Assocs., P.C. v. Mass. Mut. Life Ins. Co.*, No. 5:11-cv-128, 2013 WL 653541, at *8-*9 (E.D. Ky. Feb. 21, 2013) (quotation omitted). In *Graff*, the court held that attorney-

13

privilege applied to communications between counsel and a consultant where counsel had requested that the consultant perform an audit, making the consultant's "investigation, analyses, and opinions" useful to counsel "to provide legal advice to [the client]." 2012 WL 5495514 at *9 (observing that counsel and the consultant had agreed to the confidential treatment of the consultant's work and the client's information). The privilege also covered the consultant's "factual observations" because "the presence of an agent or consultant who provides information to the lawyer to enable the lawyer to give sound and informed legal advice does not destroy the confidential nature of the communication." *Id.* at *15.

There is nothing "astonishing," as Plaintiffs argue, in Wal-Mart retaining an expert human resources consultant like the Hay Group to assist it in responding to the *Dukes* allegations. Dkt. 153 at 12; *see* Scott Decl. ¶¶ 3-4; Rowley Decl. ¶ 2. The "factual information" and "analyses and recommendations of human resources consulting professionals" that Plaintiffs seek (Dkt. 153 at 13), were compiled and created in conjunction with Hay Group's advising the company through its attorneys during the course of the *Dukes* litigation. Scott Decl. ¶¶ 3-4; Rowley Decl. ¶¶ 2-3; *see also Graff*, 2012 WL 5495514, at *15. Plaintiffs' complaint that there can be no privilege because Wal-Mart produced blank questionnaires administered by the Hay Group, but not completed ones, has no merit. *See* Dkt. 153 at 12. Unlike the produced *blank* questionnaires, the *completed* questionnaires reflected the privileged fact-gathering conducted by the Hay Group to allow Wal-Mart's counsel to assess the *Dukes* allegations regarding the pay system and advise as to proposed modifications stemming from the *Dukes* lawsuit – *i.e.*, potential subsequent remedial measures. *See Graff*, 2012 WL 5495514, at *15. This is the same reason why Wal-Mart withheld the Hay Group's focus group notes and interviews. *See* Dkt. 153 at 12.

Plaintiffs also argue that Wal-Mart's assertion of privilege over the Hay Group's fact-gathering efforts would be "improper" because they assume that the Hay Group collected information from *Dukes* putative class members. Dkt. 153 at 12. But the Hay Group commenced its work in July 2003, and "[b]efore a class is certified . . . , counsel for both plaintiffs and defendants may communicate with the putative class, *ex parte*, about the lawsuit." *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. 2010); *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2009 WL 3747130, at *3 (E.D. Tenn. Nov. 3, 2009) (permitting communications between party and putative class members prior to certification). Unlike cases where courts have criticized a defendant's misleading or coercive communications with putative class members, not once in 14 years have the *Dukes* plaintiffs—or their counsel—complained of any improper communications between the Hay Group and putative or then-certified class members. *See, e.g.*, *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Courts have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made."); *In re Se. Milk Antitrust Litig.*, 2009 WL 3747130, at *3 (limits warranted for "communications that coerce prospective class members into excluding themselves from the litigation; communication[s] that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel") (internal citations and quotations omitted). Nor is it clear how Wal-Mart used the Hay Group to coerce putative class members; Wal-Mart did not retain the Hay Group until July 2003—after Wal-Mart had filed its June 12, 2003 opposition to the *Dukes* plaintiffs' first motion for class certification. Scott Decl. ¶ 4; *Dukes*, No. 01-cv-2552, Dkt. 223 (N.D. Cal. June 12, 2003).

15

Wal-Mart made the reasoned decision in the *Dukes* litigation to withhold Hay Group documents on privilege grounds, and informed plaintiffs' counsel in that case of that decision by categorically including such documents on its privilege log. Plaintiffs' counsel in *Dukes II*—the same attorneys who represent Plaintiffs here—have had notice that Wal-Mart had withheld privileged Hay Group-related documents at least since April 29, 2013 when Wal-Mart served its privilege log in *Dukes II*. Maryott Decl. ¶ 3. Yet they did not challenge that withholding until more than four years later, after the California litigation had concluded, and in a different case. *See id.*, Ex. C (Aug. 31, 2017 Letter). The challenge has long since been waived or forfeited.

In the end, Plaintiffs cannot dispute that the Hay Group assisted Wal-Mart's counsel in providing legal advice or that Wal-Mart's counsel used the information gathered by the Hay Group to respond to the *Dukes* lawsuit. Rowley Decl. ¶¶ 4-5. The Hay Group's work "facilitated" Wal-Mart's counsel's ability to advise the company. *See Dublin Eye*, 2013 WL 653541, at *8-9. These documents—whether reflecting communications between counsel and the Hay Group or the Hay Group's fact-gathering work performed at the direction of counsel—are privileged. *See Graff*, 2012 WL 5495514, at *15.

## C. The Work Product Doctrine Also Protects The Hay Group Documents from Disclosure

Plaintiffs' motion should also be denied to the extent it seeks documents protected by the work product doctrine. "The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified in Fed. R. Civ. P. 26(b)(3), protects documents and other tangible things prepared in anticipation of litigation by or for a party, or by or for a party's representative." *First Horizon Nat'l Corp.*, No. 2:11-cv-02608, 2013 WL 11090763, at *5 (W.D. Tenn. Feb. 27, 2013). The Supreme Court has previously held that the work product protection applies to documents created by consultants working for attorneys, provided that the documents were created in

connection with litigation.  *See United States v. Nobles*, 422 U.S. 225, 239 (1975).  There is no question that standard is satisfied here.

Under the Sixth Circuit's multi-step analysis for determining whether work product protection attaches, which Plaintiffs ignore (*see* Dkt. 153 at 10-11), Plaintiffs must first demonstrate that "the materials requested [are] 'relevant to the subject matter involved in the pending litigation' and not privileged," an analysis that fails for the reasons set forth above.  *See Toledo Edison Co. v. G A Techs., Inc.*, 847 F.2d 335, 339 (6th Cir. 1988) (directing courts to "go through the sequential steps set out in [Federal Rule] 26(b)(3)") (citing Fed. R. Civ. P. 26(b)(1)).[3]

Next, "the burden shifts to [Wal-Mart] to show that the material was 'prepared in anticipation of litigation or for trial' by or for that party or that party's representative, including that party's . . . consultant," which the record here confirms.  *Toledo Edison*, 847 F.2d at 339.  At the instruction of Wal-Mart's legal department, the Hay Group was retained in July 2003 to consult in connection with the nationwide *Dukes* litigation, including providing advice on Wal-Mart's pay and promotion practices.  Scott Decl. ¶¶ 3-4; Rowley Decl. ¶ 2.  Throughout their engagement, the Hay Group reported to, and worked in close collaboration with, Wal-Mart's in-house legal department and outside counsel.  Decl. ¶ 3.  Plaintiffs' contrary assertion, Dkt. 153 at 11, is simply incorrect and unfounded.

Plaintiffs' argument that the Hay Group documents are not protected attorney work product because they were purportedly "prepared in the course of business, for business purposes . . . and therefore are not protected by any privilege," Dkt. 153 at 11, is similarly and demonstrably wrong,

---

[3]  Plaintiffs' claim that Wal-Mart's inclusion Hay Group-related terms in its initial proposed list of ESI somehow "proves" the relevance of these documents is misplaced.  Wal-Mart's initial ESI list included many terms like "bonus" and "hay group" that it later amended in future proposals.  Maryott Decl. ¶ 14.  Wal-Mart amended and removed these terms from its proposed ESI list because, after conducting test searches of these terms across the agreed list of ESI custodians, it became apparent that the overwhelming majority of documents were non-responsive to Plaintiffs' requests for production (as narrowed by this Court) or contained privileged or protected material.  *Id.*

as both Wal-Mart and the Hay Group have attested. Scott Decl. ¶ 6; Rowley Decl. ¶¶ 4-5. The documents and communications created by the Hay Group exist because Wal-Mart retained the Hay Group to assist in responding to the *Dukes* allegations and to provide advice to Wal-Mart's counsel concerning the company's pay and promotion systems. *Id.* It is indisputable that the nationwide *Dukes* litigation was the "driving force behind the preparation of each requested document." *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006). The Hay Group also worked with other Wal-Mart departments, and—as established in non-protected documents Wal-Mart has produced—this work influenced pay changes that Wal-Mart made in 2004. The fact that documents drafted by the Hay Group may have also "serve[d] an ordinary business purpose does not deprive [them] of [work product] protection." *Graff*, 2012 WL 5495514, at *4; *see also Bard v. Brown County*, No. 15-00643, 2017 WL 3129802, at *4 (S.D. Ohio July 21, 2017) (work product protected documents of litigation consultant because "the driving force behind their creation is the lawsuit").[4]

Finally, there can be no real suggestion that Plaintiffs have satisfied their burden to demonstrate "that [they] (a) ha[ve] [a] substantial need of the materials in preparation of [their] case, and (b) that [Plaintiffs are] unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Toledo Edison*, 847 F.2d at 340. Nor could they, given that Wal-Mart has made multiple offers to search for and produce all non-privileged documents relating to the Hay Group so long as they are limited to the scope set out in the Court's prior order—offers Plaintiffs have elected to simply ignore. Maryott Decl., Ex. F (Oct. 10 Letter); Ex. G (Nov. 17 Letter) (offering to search Region 43 ESI for (1) "hay group"; (2) "haygroup"; and (3) "hay

---

[4] Plaintiffs also argue that the *Dukes II* privilege log reveals that the withheld documents had "a business purpose," thereby "support[ing] the conclusion that no attorney work-product protection applies." *See* Dkt. 153 at 11-12. But this is just a variant of the same argument—and wrong for the same reasons.

adjustment"). There is no reason for the Court to order discovery beyond what Wal-Mart has proposed, particularly given the thousands of documents available to them that Wal-Mart has produced in the past few months responsive to Plaintiffs' requests for "policies, practices, and directives concerning the compensation of hourly and salaried retail store employees" and documents relating to any "changes to th[ose] policies, practices and directives," including some non-privileged documents related to the Hay Group. Dkt. 153 at 14-15; Maryott Decl. ¶ 15.[5] This is in addition to the 350,000 documents (approximately 10 million pages) produced during discovery in the original *Dukes* case and over 100,000 documents (over 800,000 pages) produced in the *Dukes II* regional case. Dkt. 128 (Maryott Decl. ¶ 11). And even then, an attorney's or a representative's "mental impressions, conclusions, opinions, or legal theories" concerning the litigation remain protected. *Id.*; *see also* Fed R. Civ. P. 26(b)(3)(B). While Plaintiffs argue that "[t]he documents that Wal-Mart has withheld include facts, not mental impressions of counsel," Dkt. 153 at 12, the work product protection *extends* to any working papers or internal notes prepared by the Hay Group and shared with Wal-Mart. *See Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D. Tenn. 2014) ("The work product privilege . . . attaches to an agent's work under counsel's direction."); *Roach v. Hughes*, No. 13-00136, 2015 WL 13022807, at *3 (W.D. Ky. Jan. 8, 2015) ("Any opinions held by the investigator or any information communicated to the Defendants' attorney are subject to work product protection.").

Plaintiffs have failed to establish that the documents they seek are not subject to attorney work product protection.

---

[5] At a minimum, any Hay Group documents must be limited to those non-privileged documents created on or after June 1, 2004. Plaintiffs have agreed that Wal-Mart has no obligation to produce non-privileged corporate-level documents created before June 1, 2004. Maryott Decl., Ex. A (April 14 Letter); Ex. B (June 12 Letter); *see also* Dkt. 153 at 3.

19

**D.** **The Disclosure Of Non-Privileged Documents Relating To The Hay Group Does Not Support Subject Matter Waiver**

Plaintiffs argue that "the disclosure of some Hay Group documents but not similar, related documents supports a finding of waiver." Dkt. 153 at 13. Plaintiffs are wrong. Waiver of privilege or work product protection occurs only where (1) "the waiver is intentional"; (2) "the disclosed and undisclosed communications or information concern the same subject matter"; and (3) "they ought in fairness to be considered together." Fed. R. Evid. 502(a). As a starting point, Plaintiffs cannot establish that any waiver is "intentional"; Wal-Mart has specifically asserted its view that documents related to the Hay Group are privileged and not subject to discovery as evidenced by its April 29, 2013 privilege log and continuing refusal to produce protected documents in this case. The Committee Notes to Rule 502(a) further explain that "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Comm. Notes to Fed. R. Evid. 502(a). Plaintiffs do not contend that Wal-Mart has done anything of the kind.

Plaintiffs point to Exhibits 1 and 2 to their motion to support their argument of waiver. Neither Exhibit aids them. Wal-Mart inadvertently produced these two documents during the California *Dukes* litigation. Maryott Decl. Re Resp. to Mot. to Seal ¶¶ 2-3. In accordance with the Stipulation Regarding Inadvertent Disclosure of Privileged Material, filed on February 25, 2013 (*Dukes*, No. 01-cv-02252, Dkt. 856 (N.D. Cal. Sept. Feb. 25, 2013)), Wal-Mart's counsel notified Plaintiffs on January 6 and January 10, 2018 that it had inadvertently disclosed these privileged documents. Maryott Decl. Re Resp. to Mot. to Seal ¶¶ 2-3; Ex. A; Ex. B. The parties have agreed, and this Court has ordered, that "[t]he inadvertent disclosure or production of any document in this action . . . shall not result in any waiver, including subject matter waiver, in any kind." Dkt. 125 at 13; *see also* Comm. Notes to Fed. R. Evid. 502(a) ("an inadvertent disclosure

20

of protected information can *never* result in a subject matter waiver") (italics added).  Wal-Mart's inadvertent disclosure of Exhibits 1 and 2 thus cannot result in waiver.

Plaintiffs' case law is easily distinguished.  In *United States v. Collis*, 128 F.3d 313, 319-20 (6th Cir. 1997), the defendant waived privilege over his communications with his attorney when he discussed those communications with government agents and signed a statement prepared by them.  And in *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994), the defendant waived privilege when he failed to object to the plaintiff's use in deposition of his letters to his attorney.  Unlike the parties in Plaintiffs' citations, upon learning that it had inadvertently disclosed Exhibit 1 and 2, Wal-Mart took action to claw back these documents.

Finally, the relief that Plaintiffs seek is extraordinary in light of their counsel's failure to challenge the privilege log provided by Wal-Mart at any time during the *Dukes II* litigation or even to request a more detailed privilege log so they could assess the claim of privilege as to each document.  Their attempt to take advantage of an agreed-upon categorical privilege log should not be countenanced.  At a minimum, if this Court were to entertain Plaintiffs' request to cast aside the protections afforded these documents, Wal-Mart should be given an opportunity to present a detailed privilege log and argument as to why specific documents should retain protection following *in camera* review.

## IV.  CONCLUSION

Plaintiffs cannot be allowed to circumvent their counsel's agreements with Wal-Mart's counsel, this Court's orders, or the unchallenged assertions of privilege in a different litigation made four years ago.  Wal-Mart respectfully requests that this Court deny Plaintiffs' motion to compel.

Dated: January 10, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Michele L. Maryott
Michele L. Maryott*
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
Telephone: 949.451.3945
Facsimile: 949.475.4668
mmaryott@gibsondunn.com

Theodore J. Boutrous, Jr.*
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
tboutrous@gibsondunn.com

Rachel S. Brass*
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306
rbrass@gibsondunn.com

J. Graham Matherne (BPR #011294)
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1400
Nashville, TN 37201
Telephone: 615.251.6708
Facsimile: 615.256.1726
gmatherne@wyattfirm.com

*Attorneys for Defendant Wal-Mart Stores, Inc.*

*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2018, the foregoing was filed electronically with the Clerk of the Court and served via ECF on the following:

Scott P. Tift
David. W. Garrison
Seth Marcus Hyatt
BARRETT JOHNSTON MARTIN & GARRISON, LLC
414 Union Street, Suite 900
Nashville, TN 37219
*Attorneys for Plaintiffs*

Joseph Sellers
Christine Webber
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue NW, Suite 500 West
Washington, DC 20005
*Attorneys for Plaintiffs*

Jocelyn D. Larkin
IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
*Attorney for Plaintiffs*

 /s/ Corey G. Singer
Corey G. Singer