IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHERYL PHIPPS and SHAWN GIBBONS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-01009 |
| | ) | Judge Lawson/Frensley |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court upon Plaintiffs' Motion to Compel Production of Documents. Docket No. 152. Plaintiffs have also filed a Supporting Memorandum of Law. Docket No. 153. Defendant has filed a Response in Opposition. Docket No. 163. Plaintiffs have filed a Reply as an integrated part of a document titled "Opposition to Defendant Wal-Mart's Motion to Quash the Subpoena to the Hay Group, Inc. and Reply in Support of Plaintiffs' Motion to Compel Production of Documents." Docket No. 174. For the reasons discussed below, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.

I.  THE DISCOVERY MATTERS AT ISSUE

In this employment discrimination class action, Plaintiffs allege that Defendant discriminated against them because of their gender. *See* Docket No. 1. Among other claims, Plaintiffs claim that "[Defendant's] compensation policies, including its failure to require managers to base pay decisions for individual employees on job-related criteria, such as

experience or documented performance, have had an adverse impact upon its female employees in Region 43."[1] *Id.* at 12.

The instant Motion seeks to compel Defendant to produce:

> [A]ll documents related to its analysis of and changes to the job descriptions, compensation policies, and performance evaluations used for [Defendant's] retail positions, in response to Plaintiff's Requests for Production of Documents 5, 6, and 7. [Defendant] worked closely with a third party consultant called the Hay Group on this project, and thus Plaintiffs refer to this collection of documents as "Hay Group documents" although that is not intended to limit the request to documents created by the Hay Group.[2]

Docket No. 153, p. 5.

Defendant responded to Requests for Production Nos. 5, 6, and 7 by objecting on the basis of the attorney-client privilege and attorney work product doctrine, among other, more general objections. Docket No. 124-3, p. 9-11. Further, in response to Requests for Production Nos. 5 and 7, Defendant stated that "[i]n addition, [Defendant] objects to this Request on the grounds that it is overbroad, not proportionate to the needs of this case, and to the extent it seeks documents that are not relevant to Plaintiffs' allegations regarding the challenged practices or the alleged 'core group of decisionmakers' in Region 43." *Id.* at 9.

Plaintiffs contend that these documents are "highly relevant to Plaintiffs' disparate impact claims." *Id.* at 5. Defendant has withheld some of the Hay Group documents from production, and argues that Plaintiffs are not entitled to discover them because: 1) Plaintiffs are attempting to circumvent the Court's prior Order mandating production only of responsive

---

[1] The Plaintiffs in this matter all allege gender discrimination by Defendant in Defendant's stores located in an area of the country defined as "Region 43," which includes Middle and Western Tennessee, as well as portions of Alabama, Arkansas, Georgia, and Mississippi. Docket No. 1, p. 2.
[2] For convenience, the Court will also refer to the documents as "the Hay Group documents," without implication that Plaintiffs' request is limited to documents created by the Hay Group.

documents that were provided to the Region 43 decision makers; 2) the Hay Group documents are protected by attorney-client privilege; and 3) the Hay Group documents are protected by the work product doctrine. *See* Docket No. 163. Plaintiffs dispute that the documents are protected by either privilege or the work product doctrine, but assert that even if they were, Defendant has waived those protections by producing "some Hay Group documents but not similar, related documents . . . ." Docket No. 153 at 13.

## II. LAW AND ANALYSIS

### A. Discovery Under the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(5) sets out the steps that a party must take if it withholds information otherwise discoverable based upon a claim of privilege or a claim that the information is protected by the work product doctrine. The party asserting the privilege or work product protection has the burden of showing that those protections apply. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Fed. R. Civ. P. 37(a) provides that the Court may compel the disclosure or discovery of documents improperly withheld after a request has been made under Fed. R. Civ. P. 34.

### B. The Attorney-Client Privilege

Plaintiffs contend that the Hay Group documents are not protected by the attorney-client privilege because they were not created for the purpose of seeking legal advice, but rather for business purposes: "to create a new compensation structure applicable to [Defendant's] retail store employees . . . ." Docket No. 153, p. 11. Plaintiffs point to categories on Defendant's privilege log as further proof that the Hay Group documents had a business purpose. *Id.*

Plaintiffs also assert that "there is, as of yet, no evidence that the Hay Group was retained at the direction of counsel, or for litigation purposes . . . ." *Id.* at 12. Plaintiffs assert that Defendant has withheld documents that "include facts, not mental impressions of counsel." *Id.* at 12.

Defendant responds that it hired the Hay Group to "assist it in responding to the *Dukes* allegations," and that the documents that Plaintiffs seek "were compiled and created in conjunction with Hay Group's advising the company through its attorneys during the course of the *Dukes* litigation."[3] Docket No. 163, p. 18. According to Defendant, "[t]he Hay Group's work facilitated [Defendant's] counsel's ability to advise the company." *Id.* at 20 (internal quotation marks and citation omitted). Defendant claims that Plaintiffs have had notice that Defendant was withholding some Hay Group documents on the grounds of privilege "at least since April 29, 2013 when [Defendant] served its privilege log in *Dukes II*" yet never challenged that withholding until now, and thus, "[t]he challenge has long since been waived or forfeited." *Id.*

The Sixth Circuit has established the following elements with regard to attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.

---

[3] *Dukes* is a previous employment discrimination case brought against Defendant in California, that sought to be a nation-wide class action. *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004). After the Supreme Court failed to uphold class certification in *Dukes*, "[t]he original Dukes plaintiffs amended their complaint in the Northern District of California, narrowing the scope of the proposed class to gender discrimination within four Wal-Mart regions covering mostly California." Docket No. 111, p. 5, *citing Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 4329009, *2 (N.D. Cal. Sept. 21, 2012) ("*Dukes II*"). A full discussion of these two cases and their relationship to the current litigation can be found at Docket No. 111.

*Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co.*, No. 93-3084, 1994 U.S. App. LEXIS 3828, at *17-18 (6th Cir. Feb. 25, 1994), *quoting U.S. v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964).

The Sixth Circuit has further held that "[i]t is, of course, well established that attorney-client communications related to areas other than legal counseling, such as business advice, are not privileged." *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 U.S. App. LEXIS 3861, at *4-5 (6th Cir. Mar. 5, 1999), *citing In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984).

As Defendant has asserted the attorney-client privilege, it has the burden of demonstrating that the privilege applies. Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). Defendant's argument that each document "compiled and created" by the Hay Group is privileged because the Hay Group was working in conjunction, or even at the behest of, Defendant's counsel is unavailing. Even if these documents were compiled and created by counsel itself, they would not necessarily be privileged; rather, they would only qualify for that protection if they met the criteria discussed above. *Arkwright*, 1994 U.S. App. LEXIS at 17-18. In those cases, if any, where Defendant can establish by reference to these criteria that a document is privileged, then Defendant may protect the document from production. Otherwise, the Court finds that the Hay Group documents are not, as a group, protected by the attorney-client privilege.

**C. <u>The Work Product Doctrine</u>**

The work product doctrine states that a party may obtain discovery of documents otherwise discoverable, and prepared in anticipation of litigation or for trial by or for another party, or by or for that other party's representative, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the

5

party is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3).

The Sixth Circuit has articulated the "because of" test as the standard for determining whether documents were prepared "in anticipation of litigation." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). There is a subjective component to this inquiry. *Id.* at 593-94. A document is not protected by the work product doctrine "if it would have been prepared in substantially the same manner irrespective of the anticipated litigation." *Id.*

The Court has further clarified that if a document has more than one purpose, "the fact that it also serves an ordinary business purpose does not deprive it of protection, but the burden is on the party claiming protection to show that anticipated litigation was the driving force behind the preparation of each requested document." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (internal quotation marks and citation omitted). Such documents do not lose work product protection unless the documents would have been created in essentially similar form irrespective of the litigation. *Id.*

The Federal Rules make clear that work product protection can extend not only to documents produced by a party's attorney, but also to documents produced by a third party:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party *or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)*.

Fed. R. Civ. P. 26(b)(3) (emphasis added).

The Sixth Circuit employs a burden-shifting process in order to determine whether a party may obtain documents that are claimed as attorney work product:

> The party seeking discovery must show that the documents are relevant. The resisting party then must show that it or

> its agent prepared the document in anticipation of litigation. The discovering party must then show that it (1) has a substantial need for the information, but (2) is unable to obtain the substantial equivalent of the materials without undue hardship.

*Stampley v. State Farm Fire & Cas. Co.*, 23 F. App'x 467, 471 (6th Cir. 2001), *citing Toledo Edison Co. v. G A Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988); *In re Air Crash Disaster at Detroit Metro Airport on August 16, 1987*, 130 F.R.D. 641, 644 (E.D. Mich. 1989).

## 1. Relevance

Plaintiffs contend that the Hay Group documents are relevant because:

> [I]n response to a claim of disparate impact focused on this specific compensation practice, [Defendant] may defend the policy by showing it is justified by business necessity. 42 U.S.C. § 2000e-2(k). The documents sought are those which would be central to evaluating any claims by [Defendant] that its policy was job related, valid, and consistent with business necessity. The documents would also provide critical information about the implementation of a "neutralization adjustment" that attempted to eliminate racial and gender disparities in pay, but only if measured by the new pay structure, not the prior pay structure.

Docket No. 153, p. 9.

Defendant vigorously disputes that the Hay Group documents are relevant. Docket No. 163, p. 13-16. Specifically, Defendant responds that:

> Plaintiffs' own formulation assumes that the restructuring had an "adverse impact"; they would have to prove this fact at trial, yet they do not even suggest that the requested Hay Group documents are necessary to discharge their evidentiary burden. Instead, they suggest that the Hay Group documents would pertain to [Defendant's] defense of business necessity. But [Defendant] need not mount any defense if Plaintiffs cannot prove a disparate impact, and will not rely on documents withheld as privileged to defend itself in any event.

*Id.* at 14.

7

Defendant asserts that Plaintiffs' Complaint does not contain any factual allegations related to "*nationwide* policies implemented in 2004 that could be alleged to have had a disparate impact on women in Region 43," and thus, documents related to any such nationwide policy are not relevant. *Id.* (emphasis in original). Defendant argues that "[t]he complaint contains no allegations based on [Defendant's] 2004 pay system changes because any claim based on those changes would clearly be time-barred." *Id.* at 15. Further, Defendant contends that Plaintiffs have not connected their claims to the 2004 nationwide pay policy changes. *Id.* at 16.

After considering the Parties' arguments, the Court finds that the Hay Group documents are relevant for the purposes of discovery in this matter. The Court finds that if, as Plaintiff alleges, compensation system changes that affected the pay of employees within Region 43 were the result of decisions were made above the level of the Region 43 decisionmakers, with no discretion left to those decisionmakers to modify or otherwise deviate from the upper-level decisions, then documents reflecting those decisions are relevant to Plaintiffs' claims of disparate impact, regardless of whether they were shared with Region 43 decisionmakers

**2.  Preparation in Anticipation of Litigation**

Plaintiffs dispute that the Hay Group documents were created in anticipation of litigation, arguing that they were created in the course of business for business purposes. Docket No. 153, p. 11-13. Plaintiffs contend that they are "not seeking to obtain discovery of the thought processes of [Defendant's] counsel, but only factual information that purports to underlay [Defendant's] major change in compensation policies, and the analyses and recommendations of human resources consulting professionals retained for normal business purposes." *Id.* at 12-13.

Defendant responds that the Hay Group documents were not prepared in the course of business, but rather:

> At the instruction of [Defendant's] legal department, the Hay Group was retained in July 2003 to consult in connection with the nationwide *Dukes* litigation, including providing advice on [Defendant's] pay and promotion practices. Throughout their engagement, the Hay Group reported to, and worked in close collaboration with, [Defendant's] in-house legal department and outside counsel. Plaintiffs' contrary assertion is simply incorrect and unfounded.
>
> . . .
>
> The documents and communications created by the Hay Group exist because [Defendant] retained the Hay Group to assist in responding to the *Dukes* allegations and to provide advice to [Defendant's] counsel concerning the company's pay and promotion systems.

Docket No. 163, p. 21-22 (internal citations omitted).

The Sixth Circuit has identified two factors to consider when assessing whether a document was prepared in anticipation of litigation: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009), *citing Roxworthy*, 457 F.3d at 594. The party resisting discovery bears the burden of demonstrating that the document was prepared "in anticipation of litigation or for trial." *Toledo Edison Co. & Cleveland Electric Illuminating Co. v. G A Technologies, Inc.*, 847 F.2d 335, 339 (6th Cir. 1988). A party may satisfy this burden "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories," and the proof can be "opposed or controverted in the same manner." *Id.* "Where an 'undisputed affidavit . . . is specific and detailed to indicate that the documents were

9

prepared in anticipation of litigation or trial,' then the party claiming work product protection has met its burden." *Roxworthy*, 457 F.3d at 597, *quoting Toledo Edison Co.*, 847 F.2d at 341. This burden is not met "where the 'only basis' for the claim is an affidavit containing 'conclusory statement[s].'" *Id.*, *quoting Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn.*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002).

Defendant refers to two sworn Declarations in support of its contention that the Hay Group documents are protected attorney work product. Docket No. 163, p. 21-22, *citing* Docket No. 168 (Declaration of Craig Rowley) and Docket No. 169 (Declaration of Derek Scott). Mr. Rowley declares that he is a Senior Client Partner employed by the Hay Group and has personal knowledge about the Hay Group's work for Defendant. Docket No. 168, p. 1. Mr. Scott declares that he is Defendant's Senior Associate General Counsel and has personal knowledge "about the circumstances surrounding [Defendant's] hiring of the Hay Group to assess the *Dukes* lawsuit." Docket No. 169, p. 1. Sworn Declarations are one of "the traditional ways in which proof is produced in pretrial proceedings." Taken together, they indicate that the Hay Group documents were prepared "in anticipation of litigation or trial," that litigation and potential trial being the *Dukes* litigation.

Plaintiffs have filed the sworn Declaration of Christine Webber, who declares that she is counsel for Plaintiffs in this action and was also Plaintiffs' counsel in *Dukes*. Docket No. 175, p. 1. Ms. Webber's Declaration discusses Plaintiffs' review of documents produced by Defendant that reference the Hay Group and its work, as well as correspondence between the Parties regarding these documents; however, the Declaration does not controvert Defendant's Declarations in their assertions that the Hay Group documents were prepared in anticipation of litigation or trial, save for Ms. Webber's statement that "[i]n 2017 when I and my colleagues

10

reviewed these documents, none appeared to us to be privileged or work-product, and thus there was nothing to which we believed we needed to alert [Defendant]." Docket No. 175, p. 3. This document does not undermine Defendant's contention that the Hay Group documents were prepared in anticipation of litigation or trial.

In their Reply, Plaintiffs attach further support for their argument that the Hay Group documents were not prepared in anticipation of litigation: the contract between Defendant and the Hay Group (Docket No. 178); emails and memoranda (Docket Nos. 179, 180), and excerpts from the deposition of Defendant's former Board Vice Chairman, Thomas Coughlin (Docket No. 176-2). Docket No. 174, p. 14. While the first of these (Docket Nos. 178, 179, 180), perhaps unsurprisingly, do not refer directly to the *Dukes* or any other litigation, because they show that the Hay Group was involved with Defendant's actions regarding pay and promotion decisions, they tend to substantiate Defendant's claim that the Hay Group was assisting Defendant in assessing and responding to the allegations in *Dukes*; allegations relating to pay and promotion decisions. *See, e.g.*, Docket No. 180, p. 2.

Regarding Mr. Coughlin's testimony, the Court has reviewed the excerpts attached as Exhibit 5, and does not find that this testimony contradicts Defendant's assertion that the Hay Group documents were prepared in anticipation of litigation or trial. *See* Docket No. 176-2. Based on the portions chosen and attached by Plaintiffs, Mr. Coughlin seems to have had only a vague sense of the Hay Group's role and no personal involvement. *See i.d.* at 4-5, 14 ("I didn't deal directly with the Hay Group, I don't think, at all. I don't ever recall dealing with them myself.") Although Mr. Coughlin agreed with an email he was shown stating that the driving force for "employing the Hay Group [was] to develop a new job classification and pay structure that was (*sic*) internal equity and external competitiveness," this statement discusses the driving

force behind employing the Hay Group, not the driving force behind the creation of the particular documents that are at issue in this dispute. It is that driving force that is relevant. *Roxworthy*, 457 F.3d at 595. Further, Defendant has not taken the position that all documents relating to the Hay Group are protected work product; rather, "Defendant has already produced around 1,500 documents relevant to the Hay Group's work." Docket No. 174, p. 5.

### **3. Substantial Need and Undue Burden**

Once the resisting party has established that the document in question was prepared in anticipation of litigation, the burden then shifts to the party seeking discovery to prove that it has a substantial need for the material and is unable to obtain the substantial equivalent of the material by other means without undue hardship. *Stampley*, 23 F. App'x at 471. When deciding this issue, "attention is directed at alternative means of acquiring the information that are less intrusive to the lawyer's work and whether or not the information might have been furnished in other ways." *Toledo Edison*, 847 F.2d at 340.

In the present case, Plaintiffs have already received from Defendant "around 1,500 documents relevant to the Hay Group's work." Docket No. 174, p. 5. Plaintiffs have not shown that they have a substantial need for these particular documents; instead, they assert that ". . . [Defendant] *may* defend the policy by showing it is justified by business necessity," and if so, "[t]he documents sought are those *which would be* central to evaluating any claims by [Defendant] that its policy was job related, valid, and consistent with business necessity." Docket No. 153, p. 9 (emphasis added). Plaintiffs present a hypothetical, and although the Court has found that the documents are relevant, in a general way, to Plaintiffs' claims, Plaintiffs have not made the more particular showing that would demonstrate substantial need of these specific documents. Plaintiff contends that it faces undue hardship because "Plaintiffs cannot recreate or

otherwise obtain the documents used by the Hay Group and [Defendant] to set new pay scales and promotion criteria," but Plaintiffs do not need these documents, if such exist, to demonstrate that Defendant developed new pay scales and promotion criteria; they are entitled to the new pay scales and promotion criteria themselves. Further, to the extent that Plaintiffs seek information regarding Defendant's compensation structure, including changes to this structure over time, Plaintiffs can depose the relevant employees of Defendant and ask those questions. Similarly, while Plaintiffs contend that "[i]t is not possible, in 2018, to obtain appropriate samples of [Defendant] hourly associates and managers who worked for [Defendant] in 2003, to ask them about their job duties," Plaintiffs have not established or even argued that they have no source of evidence as to hourly associates' and managers' job duties, in 2003 or at any other time. Plaintiffs' argument that "[e]ven if there were enough people still working at [Defendant] with knowledge of 2003, [Defendant] would not permit Plaintiffs access to them with focus groups and questionnaires like the Hay Group used" is similarly unavailing. Docket No. 174, p. 23-24. Plaintiffs have not shown that current document production and deposition testimony does not provide "the substantial equivalent of the materials," rather that Plaintiffs would prefer to have such evidence in other formats. This is not a showing of undue hardship, and, particularly when coupled with Plaintiffs' failure to demonstrate substantial need for the materials, does not overcome work product protection.

### D. Waiver

Plaintiffs argue that Defendant has waived the protection of attorney-client privilege and work product (although Plaintiffs dispute that such protections apply) through production of a small number of documents (some of which are attached as Exhibits to Plaintiffs' Motion) that Plaintiffs contend prove that the Hay Group documents were prepared in the course of business,

13

and not in anticipation of litigation. Docket No. 153, p. 10-13. Plaintiffs assert that they sent Defendant a letter on August 31, 2017, "requesting that the parties meet and confer regarding these documents," and that the Parties "exchanged further letters and spoke by phone regarding this dispute" during the fall of 2017. Docket No. 153, p. 7.

Defendant responds that it was unaware that these documents had been produced in the *Dukes* litigation until Plaintiffs raised the issue in the course of correspondence between the Parties in the fall of 2017, and that it was "[p]rompted by Plaintiffs' disclosure of the confidential documents filed under seal with their motion," filed on December 27, 2017, to send letters to Plaintiffs on January 6 and January 10, 2018, requesting return of the documents pursuant to the "Stipulation Regarding Inadvertent Disclosure of Privileged Material, filed in *Dukes* on February 25, 2013 . . . which governed the production from which those documents came." Docket No. 163, p. 9-12, *citing Dukes*, No. 01-cv-02252, Docket No. 856 (N.D. Cal. Sept. Feb. [*sic*] 25, 2013).

Plaintiffs reply at length in a 30-page document that is designated as an opposition to Defendant's Motion to Quash the Subpoena to the Hay Group as well as a reply to the instant Motion. Docket No. 174. Citing Federal Rule of Evidence 502(b), Plaintiffs argue that Defendant did not take reasonable steps to prevent disclosure of Hay Group documents during *Dukes II* because it produced "around 1,500 documents that reflect upon the Hay Group's work." *Id.* at 18. Plaintiffs further argue that Defendant did not promptly take steps to rectify the error, because it "did not take any steps to discover its inadvertent production or to claw any of these documents back until years after they were produced, and only did so after Plaintiffs alerted them to certain documents through their Motion to Compel." *Id.* Plaintiffs further assert that "[Defendant's] counsel did not object to or seek to claw back similar documents used as

14

deposition exhibits during a *Dukes I* deposition of Thomas Coughlin," and that "a brief, one-hour search of [Defendant's] production in the *Dukes* litigation yielded no fewer than ***fifteen*** documents that are near duplicates of the documents [Defendant] now says are privileged and has attempted to claw back." *Id.* at 18-19.

Waiver of the attorney-client privilege has been defined as follows:

> As a general rule, the "attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure." The prevailing view is that once a client waives the privilege to one party, the privilege is waived en toto.

*Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002) (internal quotation marks and citations omitted). Federal Rule of Evidence 502(b) further provides that:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> **(1)** the disclosure is inadvertent;
> **(2)** the holder of the privilege or protection took reasonable steps to prevent the disclosure; and
> **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following *Federal Rule of Civil Procedure 26(b)(5)(B)*.

In this instance, Defendant asserts that the documents at issue were not voluntarily disclosed to Plaintiffs; rather, they were inadvertently produced as part of a large production associated with the *Dukes* litigation. Docket No. 163, p. 8-10. As is customarily done in such actions, the Parties appear to have anticipated that inadvertent productions could occur and stipulated that such productions would be governed by an agreement that allowed the producing party to "claw back" the documents at issue. *See* Docket No. 174, p. 21 ("Plaintiffs recognize

15

that the parties entered into a stipulation regarding inadvertent disclosure of privilege[d] material in the *Dukes* litigation, Stipulation with Proposed Order, *Dukes et al. v. Wal-Mart Stores, Inc.*, No. 01-CV-2252 (N.D. Cal. Feb. 25, 2013), Dkt. 856, which governs the production of the *Dukes* documents in this case and includes a clawback provision.") Defendant contends that it followed the protocol established by that agreement. Docket No. 163, p. 10. As to whether Defendant took reasonable steps to prevent the disclosure, the Advisory Committee notes to Rule 502 state that:

> The stated factors (none of which are dispositive) are the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness.
>
> . . .
>
> Other considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production. Depending on the circumstances, a party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may be found to have taken "reasonable steps" to prevent inadvertent disclosure.

Fed. Rules Evid. R. 502, Advisory Committee Note, Subdivision (b).

The number of documents exchanged in discovery in the *Dukes* litigation is very high; Defendant contends that "[d]uring a three-month period, a team of more than 300 contract attorneys logged more than 55,000 hours to search approximately 26 million [Defendant] documents (about 2.85 terabytes of data) and review about two million documents for responsiveness, confidentiality, and privilege." Docket No. 163, p. 9. Defendant appears to have used analytical software applications and linguistic tools in screening documents for production. *See, e.g., i.d.* at 11 ("[t]he parties discussed these documents during a September 28,

2017 telephonic meet and confer discussion about ESI search terms.")[4] Plaintiff has only pointed to a small number of documents that Defendant claims are protected by privilege or work product but were nevertheless inadvertently produced. *See, e.g.*, Docket Nos. 176-2, 178-180. This represents only a tiny fraction of the overall production. The Court finds that under all the circumstances, including the very high volume of documents involved and the use of analytic software, Defendant took reasonable steps to prevent the disclosure of protected documents.

As to whether Defendant promptly took reasonable steps to rectify the error, the Court finds that Defendant acted reasonably in engaging in dialogue with Plaintiffs regarding the documents over the course of several months, before seeking to claw back the documents when they were attached to Plaintiffs' Motion to Compel. The Advisory Committee Notes further state that "[t]he rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake," although the party must "follow up on any obvious indications that a protected communication or information has been produced inadvertently." Fed. Rules Evid. R. 502, Advisory Committee Note, Subdivision (b). Plaintiffs argue that such obvious indications existed in the past, such as when "similar documents" were used during the Coughlin deposition during *Dukes*. Docket No. 174, p. 18. The Court finds that under all the circumstances, it is not unreasonable that Defendant did not discover the small number of inadvertently-produced documents at that time.

Plaintiffs' argument that Defendant's production also includes "no fewer than *fifteen* documents that are near duplicates of the documents [Defendant] now says are privileged and

---

[4] The term "ESI" stands for Electronically Stored Information, and a discussion about ESI search terms in the context of discovery almost certainly implies the use of analytical software applications and linguistic tools.

has attempted to claw back" is unpersuasive; fifteen "near duplicates" out of the voluminous production in this case is de minimis, and does not convince the Court that Defendant failed to exercise care in producing documents or in attempting to rectify the error of producing a small number of protected documents. Docket No. 174, p. 18-19.

Given that the Parties were engaged in ongoing discussion regarding the documents, the Court finds that Defendant proceeded reasonably in invoking the claw-back provision in early January 2018. In light of that, the Court finds that disclosure of these documents does not constitute a waiver of any protection to which the documents may be entitled.

### E. Court's Prior Ruling

Defendant argues that the Court's prior Order, addressing another Motion to Compel filed by Plaintiffs, restricts production to documents connected to the "Region 43 decisionmakers." Docket No. 163, p. 13, *citing* Docket No. 136, p. 1-3. While the Court found in that dispute that "in order for a document, policy or practice to be relevant the decision maker has to be aware of that document, policy or practice" (Docket No. 136, p. 1-2), here, Plaintiffs argue that the decisions regarding Defendant's new compensation structure were not made by Region 43 decisionmakers, "the new structure did not permit regional or local managers to assign an individual or position to a different pay level than that dictated by the new compensation structure," and thus, "whether the core group of Region 43 decisionmakers saw these documents is not determinative of their relevance to the claims here." Docket No. 153, p. 5. To the extent that these decisions were made above the level of the Region 43 decision makers, as Plaintiff asserts, the Court agrees that whether documents were provided to Region 43 decision makers is irrelevant, and therefore finds that its prior Order (Docket No. 136) does not restrict Plaintiffs' ability to discover Hay Group documents.

## III. CONCLUSION

For the foregoing reasons, the instant Motion (Docket No. 152) is GRANTED IN PART and DENIED IN PART. Defendant is ORDERED to produce non-privileged, non-protected documents responsive to Plaintiffs' Requests for Production Nos. 5, 6, and 7, without regard to whether such documents were shared with the "core decisionmakers" of Region 43.

IT IS SO ORDERED.

_____
Jeffery S. Frensley
United States Magistrate Judge